### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| EDNA MCMANUS, *et al.*,<br><br><br>            Plaintiffs,<br><br>   v.<br><br>DISTRICT OF COLUMBIA, *et al.*,<br><br><br>            Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)    Civil Action No. 07-252-CKK<br>    Judge Colleen Kollar-Kotelly |

## DEFENDANT AFGE'S MOTION FOR SANCTIONS PURSUANT TO FED. R. CIV. P. 11

Pursuant to Federal Rule of Civil Procedure 11(c)(1)(A), Defendant American Federation of Government Employees ("AFGE") hereby respectfully moves this Court to impose sanctions, including payment of AFGE's attorney's fees, jointly and severally against Plaintiffs' counsel in the above-captioned case, James Q. Butler, Esq., and against plaintiffs' counsel's law firm, the Butler Legal Group, PLLP, a.k.a. the Butler Law Firm.

AFGE moves for these sanctions based on Plaintiffs' counsel's conduct in filing the Amended Complaint in the above case, and based on the points and authorities set forth in AFGE's memorandum accompanying this motion. More specifically, AFGE moves for these sanctions because Plaintiffs' counsel filed the Amended Complaint when he knew that the claims therein are unwarranted under existing law. Alternatively, AFGE also moves the Court to impose sanctions because Plaintiffs' counsel filed the Amended Complaint without first conducting a reasonable legal or factual inquiry into the claims raised by Plaintiffs therein.

Pursuant to paragraph 9 of the Court's March 6, 2007, order, a proposed order does not accompany this motion.

Respectfully submitted,

Mark D. Roth (D.C. Bar No. 235473)
General Counsel

Andres M. Grajales (D.C. Bar No. 476894)*
Staff Counsel, AFGE
80 F Street, NW
Washington, D.C. 20001
Tel.: (202) 639-6426
Agrajales@afge.org

*Attorney of Record

Counsel for AFGE

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| EDNA MCMANUS, *et al.*, )<br><br>)<br>Plaintiffs, )<br>v. )<br><br>)<br>DISTRICT OF COLUMBIA, *et al.*, )<br><br>)<br>)<br>Defendants. )<br>) | Civil Action No. 07-252-CKK<br>Judge Colleen Kollar-Kotelly |

## DEFENDANT AFGE'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION FOR SANCTIONS PURSUANT TO FED R. CIV. P. 11

Defendant American Federation of Government Employees ("AFGE") respectfully asks the Court to impose sanctions, including attorney's fees, against Plaintiffs' counsel, James Q. Butler, and Plaintiffs' counsel's law firm, the Butler Legal Group, PLLP, a.k.a. the Butler Law Firm, because Plaintiffs' counsel violated Fed. R. Civ. P. 11 (b) ("Rule 11") in this case.

As mentioned in AFGE's Motion for Sanctions, AFGE asks the Court to exercise its power under Fed. R. Civ. P. 11 (c) and impose sanctions against Plaintiffs' counsel and his firm for two reasons. First, AFGE asks the Court to impose sanctions because Plaintiffs' counsel violated Rule 11 by filing Plaintiffs' Amended Complaint in this case (the "Amended Complaint" or "*Amend. Compl.*") when he knew that the claims pursued by Plaintiffs therein are unwarranted under existing law. Second, and assuming *arguendo* that the Court finds that Plaintiffs' counsel did not knowingly pursue Plaintiffs' unwarranted claims, AFGE asks the Court to impose sanctions because, at a minimum,

3

Plaintiffs' counsel violated Rule 11 by filing the Amended Complaint without first conducting a reasonable legal or factual inquiry into the claims pursued by Plaintiffs therein.

## I.    BACKGROUND

As the Court is aware, Plaintiffs' counsel filed the original Complaint in this matter (the "Complaint" or "*Compl.*") on February 1, 2007.  The Complaint named sixteen plaintiffs and fourteen defendants, including AFGE, and contained eight counts. In order, these counts were: 1) "Breach of Employment Contract"; 2) "Breach of Collective Bargaining Agreement"; 3) "Breach of Duty of Fair Representation"; 4) "Violation of Right of Due Process"; 5) "Declaratory Judgment Action"; 6) "Request for Injunctive Relief"; 7) "Special Request for Judicial Notice, Injunctive Relief, Temporary Restraining Order and Pendant Jurisdictional Ruling Over Defendant Unun Providents [sic] Failure to Comply with the New York Settlement Agreement Already in Place, With a Request for a Criminal Referral to the Individual Attorneys General Who are Part of the Previous Settlement Referenced Herein"; and 8) "Restraining Order as Applied to Retaliation".  *Compl.*, pgs. 23-31.

Relevant to AFGE, these eight counts were all premised on the allegation that AFGE failed to represent Plaintiffs (in particular, Plaintiffs Nixon, Workcuff, Coe, Scott, and Mahoney - who were the only Plaintiffs who claimed any connection with AFGE) in a variety of past administrative proceedings, all of which were related to their employment.  *See Compl.*, ¶ 37.

Regarding Plaintiffs' request for a temporary restraining order ("TRO"), *see* Count 7, the Complaint was not accompanied by a motion for a TRO, nor was it

4

accompanied by any form of supporting memoranda or affidavits. It was also unclear as to which precise Defendants Plaintiffs intended Count 7 to apply. Moreover, despite the Complaint's admission that the harm involved (for the most part Plaintiffs' alleged loss of employment) flowed from long concluded administrative proceedings, Plaintiffs asserted that they were presently suffering irreparable harm. *Compare Compl.*, ¶ 43 (regarding the 20-year old vintage of Plaintiffs' claims) with *Compl.*, ¶ 90 (alleging that Plaintiffs were presently suffering irreparable harm). The Complaint did not explain this apparent contradiction nor did it explain exactly how Plaintiffs were allegedly suffering irreparable harm. In the same vein, in support of their TRO request Plaintiffs asserted that they are likely to prevail on the merits in this case, but failed to explain why or to identify which specific conduct they wished the Court to enjoin. *Compl.*, ¶¶ 86-90.

In addition to the eight enumerated counts, the Complaint raised two other claims that were not enumerated as counts. First, the Complaint contained what it referred to as the "Unum Provident Criminal Enterprise Claim." This claim did not assert any connection to AFGE, and appeared to allege that Defendant Unum Group had violated an earlier settlement that it had executed with, *inter alia*, New York State pertaining to the improper denial of disability claims. *Compl.*, ¶¶ 44-55.

The second non-count claim in the Complaint was the allegation that all of the defendants are engaged in a broad conspiracy to deprive Plaintiffs of various statutory and Constitutional rights. *Compl.*, ¶ 1 and *passim*. The Complaint did not offer any specific facts in support of this allegation, although it appeared to assert that the alleged conspiracy implicated the Fourteenth Amendment to United States Constitution, as well as sections 1981, 1983, 1986, 1988 and 2000e of Title 42 of the United States Code. *Id.*

AFGE received the Complaint on or about April 2, 2007. Thereafter, on or about April 17, 2007, the undersigned counsel contacted Plaintiffs' counsel by telephone, and asked that Plaintiffs voluntarily dismiss the Complaint as against AFGE. During this call, the undersigned counsel explained that Plaintiffs' various claims that AFGE failed or refused to represent them in some fashion were all in reality claims that AFGE had breached a duty of fair representation ("DFR") that it allegedly owed to Plaintiffs. The undersigned also went on to explain that such DFR claims could not be pursued in federal district court by operation of the District of Columbia Comprehensive Merit Personnel Act, D.C. Code § 1-601.01, *et seq*. (2001 Ed.) (the "CMPA"). Plaintiffs' counsel declined to voluntarily dismiss the original complaint.

Following this telephone conversation, on or about April 18, 2007, the undersigned sent Plaintiffs' counsel a letter, via facsimile and United States mail, memorializing the earlier telephone conversation, providing specific case citations in support of AFGE's statement that Plaintiffs' DFR claims were precluded by the CMPA, inviting Plaintiffs' counsel to perform his own independent inquiry into the controlling law, and explaining that if Plaintiff's counsel chose not to voluntarily dismiss the original complaint then AFGE would pursue Rule 11 sanctions against him. In addition, the undersigned enclosed two pertinent sanctions decisions with this letter in order to educate Plaintiffs' counsel regarding the requirements of Rule 11.[1]

Plaintiffs' counsel did not voluntarily dismiss the Complaint after his receipt of the undersigned's letter. Consequently, on April 23, 2007, AFGE timely moved to

---

[1] A copy of this letter is attached to this memorandum as Exhibit 1.

dismiss the Complaint ("Motion to Dismiss" or "*AFGE Mot. to Dismiss*").[2]  In pertinent part, AFGE moved to dismiss the Complaint pursuant to Fed. R. Civ. P. 12 (b) (1) and (6) because the Court lacked jurisdiction over Plaintiffs' DFR claims, and because, even assuming jurisdiction existed, the Complaint was so factually deficient that it failed to state a claim upon which relief could be granted.

In its Motion to Dismiss, AFGE provided specific case citations which contained the controlling law relevant to Plaintiffs' claims and explained, in detail, why dismissal of Plaintiffs' Complaint was required.  For example, AFGE's Motion to Dismiss discussed the history and scope of the CMPA, and how the CMPA operated to completely preempt the Court's jurisdiction over Plaintiffs' DFR claims.  *AFGE Mot. To Dismiss*, pgs. 6-10 (relying, in particular, on *Cooper v. AFSCME, Local 1038, 656 A.2d 1141* (D.C. 1995), for the rule that a plaintiff may not evade the CMPA's preemptive scope by mere artful pleading).  Further, AFGE explained that any possible avenue of judicial review of Plaintiffs' claims led exclusively to the Superior Court of the District of Columbia, and not to any federal court.  *Id* at 10.

Additionally, AFGE's motion provided specific citation and discussion explaining the basic requirements of a conspiracy claim, and explained how Plaintiffs' Complaint failed to satisfy these basic requirements.  *Id* at 15, *citing McCreary v. Heath*, 2005 WL 3276257 at *5 (D.D.C. 2005).  Likewise, AFGE provided specific citation and discussion outlining the basic requirements necessary for Plaintiffs to sufficiently plead their statutory claims, and explained how Plaintiffs' Complaint failed to satisfy these basic requirements.  *Id*, pgs. 14-16.

---

[2] AFGE was neither the first nor the last Defendant to move to dismiss the Complaint.  In all, 8 of the 16 defendants moved to dismiss the Complaint.  Each of these motions to dismiss discussed, at length, the Complaint's fatal flaws.  *See* Docket nos. 3, 5, 12, 15, 16, 18, 19 and 21.

AFGE's Motion to Dismiss also took the Complaint to task for its egregious lack of facts.  For example, AFGE pointed out to the Court that the Complaint lacked any genuine facts (such as the identities of any individuals, other than the plaintiffs, allegedly involved in this matter, relevant dates, conversations, or documents) that could conceivably support the Complaint's outlandish legal conclusions, and that the Federal Rules therefore required the Complaint's dismissal.  *Id* at 14.

By minute order entered May 22, 2007, and in response to an earlier request for an enlargement of time filed by Plaintiffs on April 18, 2007, the Court ordered Plaintiffs' to file their opposition, if any, to AFGE's Motion to Dismiss by June 11, 2007.  Rather than oppose AFGE's Motion to Dismiss, however, on the evening of June 11, 2007, Plaintiffs, again through their counsel James Q. Butler, moved to amend the Complaint. Along with their Motion to Amend, Plaintiffs simultaneously filed the Amended Complaint.  While Plaintiffs' Motion to Amend appeared at first blush to be cast as a motion to amend with leave of the court, the substance of the motion seemed to indicate that Plaintiffs were amending as of right pursuant to Fed. R. Civ. P. 15 (a).[3]  *See Plaintiffs' Mot. to Amend*, pgs. 4-5.

In any event, Plaintiffs' Motion to Amend contended that amendment of the Complaint would cure whatever deficiencies were alleged by Defendants in their various

---

[3] Plaintiffs' Motion to Amend was unclear on this issue.  On the one hand, Plaintiffs referred several times to their ability to amend the Complaint as of right. *See Plaintiffs' Mot. to Amend* at 5 ("Rule 15(a) allows a plaintiff to amend the complaint without filing a motion once as a matter of right before the defendant files a responsive pleading.")  On the other hand, Plaintiffs also argued, citing *Bell Atlantic Corp., et al., v. Twombly, et al.*, -- U.S. --, 127 S.Ct. 1955 (2007), that amendment would not be futile, an irrelevant consideration if Plaintiffs were indeed amending as of right. *Id* at 5-7.  Regardless of which choice Plaintiffs intended, their citation to *Twombly* was ill-advised given that the reasonable reading of *Twombly* is that it dilutes the familiar pleading standard of *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), on which Plaintiffs seemed to rely for the absence of futility, and grants lower courts more latitude to dismiss factually deficient complaints (like the Amended Complaint) pursuant to Fed. R. Civ. P. 12(b)(6)

motions to dismiss. *Id* at 2. Despite this contention, however, the Amended Complaint did not cure any of the Complaint's fatal deficiencies. More specifically, the Amended Complaint is a nearly verbatim repetition of the Complaint. The Amended Complaint does not improve, alter or add in any way to Plaintiffs' flawed statutory and common law claims. *Compare Amend. Compl.*, ¶¶ 18-100, *with Compl.* ¶¶ 18-100.

Indeed, the only new information contained in Plaintiffs' Amended Complaint is a series of dates that appear to predominantly pertain to Workers' Compensation claims previously filed by various Plaintiffs. *See Amend. Compl.*, ¶¶ 2, 3, 5, 6, 8, 9, 11 – 16. Far from curing Plaintiffs' deficiencies, however, the inclusion of these dates only serves to further emphasize the Court's lack of subject matter jurisdiction over the Amended Complaint. This is so because Workers' Compensation claims brought in the District of Columbia are governed exclusively by the District of Columbia Workers' Compensation Act, D.C. Code § 32-1501, *et seq.* (2001 Ed.), which does not provide for judicial review in federal court. *See* D.C. Code § 32-1522 (b) (3) (review of compensation orders lies with the District of Columbia Court of Appeals); *see also Lytes v. D.C. Water and Sewer Authority*, 2006 WL 890005 at *7 (D.D.C. 2006) ("It is well established that in the District of Columbia, the Workers' Compensation Act provides the *exclusive* remedy for claims arising out of work place injuries, including claims of retaliation for filing a claims under the Act.") (emphasis added).

In light of the Amended Complaint's failure to correct the deficiencies of the Complaint, AFGE moved to dismiss the Amended Complaint on June 29, 2007 ("Motion

to Dismiss the Amended Complaint' or "*AFGE Mot. to Dismiss Amend. Compl.*)[4]  The

instant sanctions motion and supporting memorandum followed.

## II.    LEGAL STANDARD FOR RULE 11 SANCTIONS

In relevant part, Fed. R. Civ. P. 11 provides:

> (b) Representations to Court.  By presenting to the court (whether by signing, filing, submitting, or later advocating) a pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, -
>
> > (1) It is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;
> >
> > (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;
> >
> > (3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery;
>
> (c) Sanctions.  If, after notice and reasonable opportunity to respond, the court determines that subdivision (b) has been violated, the court may, subject to the conditions stated below [regarding the form and timing of sanctions' motions], impose an appropriate sanction upon the attorneys, law firms, or parties that have violated subdivision (b) or are responsible for the violation.

Summarized, this rule imposes a two-fold obligation upon attorneys who file any

pleading or motion with the Court.  First, Rule 11 requires attorneys to conduct a

reasonable legal and factual investigation prior to filing any pleading or motion with the

Court.  If an attorney files a pleading or motion without conducting a reasonable pre-

---

[4] As of August 9, 2007, a least 10 defendants in addition to AFGE have also moved to dismiss Plaintiffs' Amended Complaint.

filing inquiry then the Court is free to impose Rule 11 sanctions against that attorney. *See Business Guides, Inc. v. Chromatic Communications Enter.*, 498 U.S. 533, 111 S.Ct. 922 (1991) (upholding the imposition of sanctions, including fees, where attorney failed to conduct reasonable factual investigation prior to filing TRO application with the district court). To determine whether an attorney has met his pre-filing obligation, the determinative question is whether the attorney acted reasonably under the circumstances. *Business Guides*, 498 U.S. at 551, 11 S.Ct. at 933.

The second obligation imposed by Rule 11 follows the first. Specifically, assuming a reasonable pre-filing inquiry has been conducted, Rule 11 further requires attorneys to refrain from filing any pleading or motion with the Court that is: 1) not well grounded in fact; 2) not warranted by existing law or a good faith argument for the modification, or reversal of existing law; or 3) interposed for any improper purpose such as harassment or delay. *See generally Westmoreland v. CBS, Inc.*, 770 F.2d 1168, 1174 (D.C. Cir. 1985) (abrogated as to mandatory nature of sanctions by 1993 amendment to Rule 11)

When the Court determines that an attorney has failed to comply with either of the two obligations cited above then the Court has an arsenal of weapons at its disposal to sanction the attorney's misbehavior, including ordering the payment of attorney's fees. *See Atkins v. Fischer, et al.*, 232 F.R.D. 116, 126 (D.D.C. 2005) (denying Rule 11 sanctions based in part on delay in bringing sanctions motion, but fining defendant and counsel pursuant to court's inherent power for failure to produce requested discovery materials); *see also Willy v. Coastal Corporation, et al.*, 503 U.S. 131, 139, 112 S.Ct. 1076, 1081 (1992) (affirming imposition of attorney's fees as Rule 11 sanction against

both plaintiff and his attorney based partially on attorney's reliance on non-existent

Federal Rule of Evidence, and holding that court may order such sanctions even where

court determines it lacks subject matter jurisdiction to hear case on merits); *see also*

*Geller v. Randi*, 40 F.3d 1300, 1302 (D.C. Cir. 1995) (affirming district court's

imposition of $149,000 in attorney's fees and costs to be paid, as Rule 11 sanction, by

plaintiff to defendant)

      Rule 11 grants the Court this power to sanction offending attorneys so as to,

"protect the [C]ourt from frivolous and baseless filings that are not well grounded, legally

untenable, or brought with the purpose of vexatiously multiplying the proceedings."

*Cobell v. Norton*, 157 F.Supp.2d 82, 86 n.8 (D.D.C. 2001) (denying motion for sanctions

where contested motion raised legitimate legal argument).  In other words, Rule 11 is

intended to regulate attorney conduct in order to prevent exploitation of the judicial

process.  *See Cooter & Gell v. Hartmarx Corp., et al.*, 496 U.S. 384, 397, 110 S.Ct. 2447,

2457 (1990) (upholding imposition of sanctions, including attorney's fees, following

plaintiff's voluntary dismissal of complaint based on plaintiff's filing inadequately

investigated and factually baseless conspiracy claim, and reiterating that Rule 11 is

"aimed at curbing abuses of the judicial system.")

      Moreover, in keeping with Rule 11's regulatory purpose, the Court is not limited

to mechanical application of Rule 11, but instead has significant discretion to weigh all of

the circumstances surrounding a motion for sanctions, and to then make a Rule 11

determination.  *See e.g.*, *Rafferty v. Nynex Corp.*, 60 F.3d 844, 852 n. 12 (D.C. Cir. 1995)

(under pre-1993 Rule 11, holding that district court erred in denying defendant's motion

for sanctions after court concluded plaintiff had egregiously abused judicial process.

Thus, other courts have exercised their discretion to sanction attorneys who ran afoul of Rule 11 in circumstances closely analogous to those confronted by the Court here. *See e.g. Hilton Hotels Corp. v. Banov*, 899 F.2d 40, 41-42 (D.C. Cir. 1990) (upholding imposition of monetary Rule 11 sanctions against plaintiff's attorney for attorney's failure to conduct a reasonable inquiry prior to filing amended complaint, where attorney filed amended complaint based solely on unverified hearsay statements of plaintiff); *Reynolds, et al., v. The U.S. Capitol Police Board*, 357 F.Supp.2d 19, 24-26 (D.D.C. 2004) (imposing joint and several Rule 11 sanctions where plaintiff and his attorneys filed amended complaint that continued to pursue time-barred claims); *Lucas v. Spellings*, 408 F.Supp.2d 8, 26-27 (D.D.C. 2006) (sanctioning plaintiff's attorney based on numerous misstatements of fact made by attorney in opposition to motion for summary judgment).

Finally, it is important to note that, in addition to requiring that a party's motion for Rule 11 sanctions be filed as a separate and independent motion, Rule 11 requires that sanctions motions be served upon the opposing party at least twenty-one days before being filed with or otherwise presented to the court. This "safe harbor" provision is intended to give the putative Rule 11 violator ample time to reconsider his actions, and to withdraw the contested pleading or motion without facing the possible severity of Rule 11 sanctions. *See Naegele v. Albers, et al.*, 355 F. Supp.2d 129, 143, *quoting* Fed. R. Civ. P. 11(c) (1) (A), (D.D.C. 2005).

Accordingly, AFGE serves this Rule 11 motion and supporting memorandum on Plaintiffs' counsel, James Q. Butler, this 9th day of August 2007, and as described in the accompanying Certificate of Service. If after twenty-one days from this date of service

13

Plaintiffs do not move to dismiss or withdraw the Amended Complaint as against AFGE then AFGE will file its Rule 11 motion and supporting memorandum with the Court.

## IV.    ARGUMENT

To begin with, there is no question that Plaintiffs' counsel subjected himself to the requirements of Rule 11 by filing the Amended Complaint with the Court. Filing an amended complaint is precisely the type of action that Rule 11 is intended to cover. *See* Fed. R. Civ. P. 11(b). Moreover, there is no question that Plaintiffs' counsel violated Rule 11 in two distinct ways when he filed the Amended Complaint with the Court. First, Plaintiffs' counsel violated Rule 11 by filing the Amended Complaint when he knew that the claims pursued by Plaintiffs' therein are unwarranted under existing law. *See* Fed. R. Civ. P. 11(b) (1) and (2). Second, assuming *arguendo* that the Court finds that Plaintiffs' counsel did not knowingly pursue Plaintiffs' unwarranted claims, Plaintiffs' counsel nevertheless violated Rule 11 when he filed the Amended Complaint without first conducting a reasonable legal or factual inquiry into the claims pursued by Plaintiffs therein. *See* Fed. R. Civ. P. 11(b).

Therefore, the Court should impose sanctions jointly and severally against Plaintiffs' counsel, John Q. Butler, and his law firm, the Butler Legal Group, PLLP, a.k.a. the Butler Law Firm.

A.    PLAINTIFFS' COUNSEL VIOLATED RULE 11 BY FILING THE AMENDED COMPLAINT WHEN HE KNEW THAT THE CLAIMS PURSUED BY PLAINTIFFS' THEREIN ARE UNWARRANTED UNDER EXISTING LAW

1. Plaintiffs' Claims Are Unwarranted Under Existing Law

For the reasons discussed in AFGE motions to dismiss the Complaint and the Amended Complaint as well as those reasons discussed in the motions to dismiss filed by

14

AFGE's co-defendants in this action (all of which AFGE incorporates herein by reference), AFGE believes it is abundantly clear that the various claims brought by Plaintiffs' counsel in the Amended Complaint are unwarranted under existing law.

For example, there is no legitimate dispute over the fact that Plaintiffs' common law claims are unwarranted under existing law. Specifically, it cannot be disputed that Plaintiffs' Breach of Employment Contract, Breach of Collective Bargaining Agreement and Breach of Duty of Fair Representation claims are completely preempted by the CMPA. *See AFGE Mot. to Dismiss Amend Compl.*, pgs 6-10. The law on this point is clear and mandates that these unfair labor practice claims in tort clothing be directed to the District of Columbia Public Employee Relations Board ("PERB"). *Id* at 6.

Moreover, it also appropriate to conclude that Plaintiffs' common law claims are unwarranted because the CMPA is not new and has been the publicly published law in the District of Columbia for over twenty years. *See* D.C. Code § 1-602.04 (making CMPA effective beginning January 1, 1980); *see also* D.C. Code § 1-201.01 (District of Columbia Home Rule Act, enacted Dec. 24, 1973). Likewise, the published and easily available cases explaining the CMPA's preemptive effect on Plaintiffs' claims are not new either. *See e.g Hawkins v. Hall*, 537 A.2d 571 (D.C. **1988**). Thus, for example, Plaintiffs' counsel cannot validly argue that Plaintiffs' common law claims should not be considered unwarranted because of an alleged change in the law following his filing of the Amended Complaint. *See Amend. Compl.*, ¶ 33 [G] ("The Plaintiffs are subject to an administrative remedy procedure, that is altered by fiat as it relates to each agency.")

Therefore, regardless of whether Plaintiffs ever had viable unfair labor practice claims that could have been pursued before PERB, Plaintiffs' pursuit of their common law claims in this Court is unwarranted under existing law.

Turning to Plaintiffs' conspiracy claim, this claim is no more warranted under established District of Columbia law than Plaintiffs' common law claims. It is settled law that the District of Columbia does not recognize an independent civil cause of action for conspiracy. *See e.g. Waldon v. Covington*, 415 A.2d 1070, 1074 n. 14 (D.C. 1980)("… there is no recognized independent tort action for civil conspiracy in the District of Columbia."). Thus, to the extent that the Amended Complaint can be read as advancing a pure conspiracy claim, this claim is simply unwarranted under existing law.

Further, even looked at solely as a mechanism to extend vicarious liability from one alleged conspirator to its alleged co-conspirators, Plaintiffs' conspiracy claim is still unwarranted because the Amended Complaint offers absolutely no legal or factual basis for this claim. More specifically, the Amended Complaint does not contain any actual facts tending to demonstrate the existence of a conspiracy. Instead, the Amended Complaint merely asserts that a conspiracy exists. This mere assertion is not enough to raise a facially sufficient conspiracy claim, and without a viable conspiracy claim in the first instance there can be no possible way to extend vicarious liability to AFGE under a conspiracy theory. *See AFGE Mot. to Dismiss Amend. Compl.*, pgs. 10-11. Therefore, under any interpretation of Plaintiffs' conspiracy claim, this claim is unwarranted under existing law.

Moving to Plaintiffs' statutory discrimination claims, the Amended Complaint (like the Complaint before it) states these statutory claims so inadequately and so

16

miserably that they travel through the looking glass into the realm of being unwarranted under existing law. For example, while Plaintiffs' cite numerous anti-discrimination statutes as jurisdictional bases for filing the Amended Complaint in federal court, the Amended Complaint does not plead any facts (such as why Plaintiffs were allegedly discriminated against) that would tend to satisfy the most basic jurisdictional requirements of these statutes. *See Amend. Compl.*, ¶¶ 1 and 98 (for statutory citations without accompanying discussion); *see also AFGE Mot. to Dismiss Amend Compl.*, pg. 11-12. Frankly, AFGE believes that based on the Amended Complaint's utter failure to expand on its statutory claims (after having two bites at the apple) it is appropriate to conclude that the Amended Complaint only contains these claims in order to bootstrap Plaintiffs' specious administrative claims into federal court. Because Plaintiffs' statutory claims are so clearly pre-textual, and for all the reasons discussed above, it is appropriate to conclude that they are unwarranted under existing law.

Lastly, AFGE believes that Plaintiffs' Request for a TRO is also unwarranted under existing law. A TRO is an extraordinary remedy, and the pre-requisites for obtaining one are settled law. *See e.g Miller v. District of Columbia, et al.*, 2006 WL 3361504 at *2-3 (D.D.C. 2006) (moving party "must demonstrate (1) a substantial likelihood of success on the merits, (2) that it would suffer irreparable injury if the injunction is not granted, (3) that an injunction would not substantially injure other interested parties, and (4) that the public interest would be furthered by the injunction.")

Here, while the Amended Complaint requests a TRO, it does not offer an iota of argument in support of its request. Instead, Plaintiffs' support for their TRO request is limited to the assertions that they will likely prevail and that they are being irreparably

harmed. *Amend. Compl.*, ¶ 90. Without any genuine attempt at discussion of its TRO request, or for that matter a formal motion and supporting memorandum, the Amended Complaint's assertions do not cut the mustard. *Cf. Guam Industrial Services, Inc. v. Rumsfeld,* 383 F.Supp.2d 112, 116 (TRO should not be granted lightly). Thus, it is appropriate to conclude that Plaintiffs' request for a TRO is unwarranted under existing law.

Therefore, and for all the reasons above, Plaintiffs' claims are unwarranted under existing law.

2.   Plaintiffs' Counsel Knew Plaintiffs' Claims Are Unwarranted Under Existing Law When He Filed the Amended Complaint

Just as there can be no dispute that Plaintiffs' claims are unwarranted under existing law, there can be little doubt that Plaintiffs' counsel knew full well that these claims are unwarranted under existing law when he filed the Amended Complaint.

More specifically, the Court should find that Plaintiffs' counsel knowingly filed the Amended Complaint's unwarranted claims because: 1) Plaintiffs' counsel filed the Amended Complaint after the undersigned spoke with Plaintiffs' counsel and informed him directly that the claims made in the original Complaint (which are identical to those made in the Amended Complaint) were unwarranted under existing law; 2) Plaintiffs' counsel filed the Amended Complaint after he received the undersigned's letter containing specific case citations that referenced, *inter alia*, the CMPA and explained that Plaintiffs' claims were unwarranted under existing law; and 3) Plaintiffs' counsel filed the Amended Complaint after he received **seven** motions to dismiss the Complaint that each gave him a roadmap to the controlling law in this case. *See e.g. AFGE Mot. to Dismiss.*

18

In particular, that Plaintiffs' counsel chose to file the Amended Complaint intact with the same flaws as the Complaint, despite having the benefit of Defendants' motions to dismiss the Complaint, demonstrates that Plaintiffs' counsel knew Plaintiffs' claims are unwarranted when he filed the Amended Complaint. Each motion to dismiss Plaintiffs' original Complaint informed Plaintiffs' counsel that Plaintiffs' claims were unwarranted and thoroughly explained, in detail, why and how Plaintiffs' claims were deficient. *See* Docket nos. 3, 5, 12, 15, 16, 18, 19, and 21 (collectively, covering everything from the Complaint's failure to allege Article III standing to Plaintiffs' counsel's failure to effect proper service of process). Given the detailed and explicit discussion of the Complaint's legal and factual flaws, it is simply inconceivable that Plaintiffs' counsel did not know precisely what he was doing when he filed the Amended Complaint, nearly a month and a half after receiving AFGE's Motion to Dismiss. *Compare* Docket no. 5 (Motion to Dismiss) *with* no. 23 (Plaintiffs' Motion to Amend). Therefore, the Court should find Plaintiffs' counsel knew that the claims raised in the Amended Complaint are unwarranted under existing law when filed the Amended Complaint with the Court.

Moreover, it is appropriate for the Court to impose sanctions, including AFGE's attorney's fees, against Plaintiffs' counsel because a reasonable attorney confronted with such undeniable flaws in his complaint would have either corrected those flaws or declined to amend the complaint. Rather than act reasonably under the circumstances, however, Plaintiffs' counsel chose to needlessly waste the Court's time and to unreasonably compound Defendants' substantial time and expenses incurred in defending this merit-less action by filing an identically deficient Amended Complaint.

19

Indeed, Plaintiffs' counsel's purpose in filing the Amended Complaint under the circumstances here is suspect because it appears to have been filed solely for the purpose of prolonging this litigation with an eye toward obtaining a favorable *in terrorem* settlement.   For example, the Amended Complaint seems to go so far as to threaten Defendants regarding the expense of discovery in this case. *Amend Compl*. ¶ 55 ("The premises [sic] alleged herein require expensive discovery and depositions whereupon the Plaintiffs are of the opinion this complaint will be amended to add additional defendants and counts.")  AFGE believes that Plaintiffs' counsel included this language in the Amended Complaint in an attempt to shoot a warning across Defendants' collective bows in hopes of inducing a favorable settlement through threat of cost.  This is not a proper purpose under Rule 11. *Cf. Twombly*, 127 S.Ct. at 1988 n. 13 (Stevens, J. dissenting) ("And should it become apparent over the course of a litigation that plaintiff's filings bespeak an *in terrorem* suit, the district court has at its call its own *in terrorem* device, in the form of a wide array of Rule 11 sanctions.")  Therefore, the Court should sanction Plaintiffs' counsel for his deliberate violation of Rule 11.

3.  <u>The Amended Complaint Does Not Contain A Non-Frivolous Argument For The Extension, Modification Or Reversal Of Existing Law Or For The Establishment of New Law</u>

This conclusion is easily reached because on its face the Amended Complaint does not contain any argument for the extension, modification or reversal of existing law of for the establishment of new law.  In fact, the Amended Complaint does not contain any reference at all to the laws that control Plaintiffs' claims (e.g. the CMPA), and because of this cannot be reasonably read as advocating the alteration of these laws. *See Amend. Compl.*, ¶ 33 (as to Plaintiffs' claims that they are unaware of the controlling

law). That is, any argument for a change must begin with an explanation of the status quo.

Further, the Amended Complaint's assertion that Plaintiffs are unaware of the controlling law in this case does not excuse Plaintiffs' counsel's conduct. Instead, the Amended Complaint's protestations of ignorance incontrovertibly prove Plaintiffs' counsel's misconduct and cannot pass Rule 11 muster, in light of the fact (discussed above) that Plaintiffs' counsel filed the Amended Complaint after having the benefit of Defendants' motions to dismiss the Complaint. *See Amend. Compl.*, ¶ 33 [J] – [L] (discussing Plaintiffs' alleged unawareness of the controlling law). Plaintiffs' counsel had ample opportunity to correct the Complaint's deficiencies or to raise a genuine argument in favor of a legal change, but he chose not to avail himself of this opportunity.

Moreover, to the extent that the Amended Complaint can be read as making an argument to alter existing law, any such argument is frivolous. The Amended Complaint is devoid of any reasoning or facts that suggest that the current law is inadequate or unfair, and does not provide any meaningful guidance as to what type of alteration Plaintiffs' seek. *Cf. Amend Compl.*, ¶ 33. Taken as a whole, the Amended Complaint merely evidences Plaintiffs' unhappiness with the outcomes of their alleged individual cases, and does not offer any genuine legal argument. *Cf. Hughs v. City of Fort Collins, Colorado*, 926 F.2d 986, 990 (10th Cir. 1991) ("[A] mere assertion that the controlling law is wrong should, **at the very least**, be viewed critically by the district court.") (emphasis added). Thus, the Court should find that the Amended Complaint does not contain a non-frivolous argument for the alteration of the controlling law in this case.

Therefore, and for all of the reasons above, the Court should find that Plaintiffs'

counsel violated Rule 11 by filing the Amended Complaint when he knew that the claims

therein are unwarranted under existing law, and should sanction Plaintiffs' counsel and

law firm accordingly.

B.    PLAINTIFFS' COUNSEL VIOLATED RULE 11 BY FILING THE
      AMENDED COMPLAINT WITHOUT CONDUCTING A REASONABLE
      PRE-FILING INQUIRY

Assuming *arguendo* that the Court finds that Plaintiffs' counsel did not

knowingly file Plaintiffs' unwarranted claims, on its face the Amended Complaint

demonstrates that Plaintiffs' counsel failed to conduct a reasonable pre-filing inquiry.

Once again, the Amended Complaint lacks any basic facts with which to support

its unwarranted legal conclusions. *See supra*, pgs. 8-9. Defendants' various motions to

dismiss the original Complaint, combined with the undersigned's correspondence with

Plaintiffs' counsel, alerted Plaintiffs' counsel to this problem. Indeed, AFGE alerted

Plaintiffs' counsel to the deficiencies in his pleadings early in this litigation in hopes of

expediting the resolution of this case, and in an effort to give Plaintiffs' counsel the

opportunity to either perfect his pleadings or to dismiss them without facing sanctions

and thereby saving Defendants' counsel the need to expend substantial time and expense

of defending against a blatantly frivolous action.

Nevertheless, and admitting of no proper purpose, Plaintiffs' counsel filed the

Amended Complaint without addressing, let alone correcting, a single one of the

problems identified by Defendants in their motions to dismiss. In so doing, Plaintiffs'

counsel acted unreasonably under the circumstances. This is so because a reasonable

attorney confronted with obvious flaws in his pleadings that could conceivably be cured

by something as fundamental as a conversation with his client would have investigated further (something which Rule 11 requires him to do) and either perfected or withdrawn his defective pleadings.

Thus, at a bare minimum, even if Plaintiffs' counsel did not knowingly pursue the Amended Complaint's unwarranted claims (which he clearly did by filing the Amended Complaint after being given numerous specific and on-point case citations by Defendants), his failure to address Defendants' arguments in favor of the Complaint's dismissal by correcting the Complaint's flaws in the Amended Complaint demonstrates that Plaintiffs' counsel failed to conduct a reasonable pre-filing inquiry prior to filing the Amended Complaint. *See Del Canto v. ITT Sheraton Corp., et al.*, 865 F.Supp. 934, 939-940 (D.D.C. 1994) (reiterating that a claim must not be filed when a reasonable pre-filing inquiry would have shown that it was not well grounded in fact, and sanctioning plaintiff's attorney where attorney failed to dismiss claim after learning (post-filing) that claim lacked merit).

Moreover, if Plaintiffs' counsel had undertaken an ounce of research prior to filing the Amended Complaint, and for the reasons explained *supra*, pgs. 14-18, he would quickly have learned that each of Plaintiffs' claims is unwarranted under existing law.

Therefore, and for all the reasons above, the Court should find that Plaintiffs' counsel violated Rule 11 by filing the Amended Complaint without conducting a reasonable pre-filing inquiry, and should sanction Plaintiffs' counsel and law firm accordingly.

## V.    CONCLUSION

While AFGE fully understands that Rule 11 sanctions are an extreme measure, Plaintiffs' counsel's deliberate and vexatious conduct in this case warrants the imposition of Rule 11 sanctions.  Therefore, based on all of the foregoing, AFGE respectfully asks that the Court impose Rule 11 sanctions, including the payment of all of AFGE's attorney's fees incurred in defending this action and in pursuing these sanctions, against Plaintiffs' counsel, James Q. Butler, and his law firm, the Butler Legal Group, PLLP, a.k.a. the Butler Law Firm.  Further, in the event that the Court chooses to award AFGE its attorney's fees in this matter, AFGE respectfully requests that the Court allow AFGE to submit an accounting of its attorney's fees incurred in this matter, including the total amount incurred, the number of hours expended and the controlling hourly rate.

Respectfully submitted,

Mark D. Roth (D.C. Bar No. 235473)
General Counsel

Andres M. Grajales (D.C. Bar No. 476894)*
Staff Counsel, AFGE
80 F Street, NW
Washington, D.C. 20001
Tel.:  (202) 639-6426
Agrajales@afge.org

*Attorney of Record

Counsel for AFGE

## **CERTIFICATE OF SERVICE**

I hereby certify and affirm under penalty of perjury that on this day, August 9,

2007, in accordance with Fed. R. Civ. P. 5 (a), I caused copies of Defendant AFGE's

Motion for Sanctions Pursuant to Fed. R. Civ. P. 11 and Memorandum in support thereof

to be served on the following:

VIA UNITED STATES FIRST CLASS CERTIFIED MAIL – RETURN RECEIPT
REQUESTED

James Q. Butler
Butler Legal Group, PLLP
818 18th Street, NW
Suite 1010
Washington, DC 20006
*Counsel for Plaintiffs*

VIA UNITED STATES FIRST CLASS MAIL

John W. Bramlette
Nixon Peabody, LLP
401 Ninth Street, NW
Suite 900
Washington, DC 20004
*Counsel for Defendants Genex Services & Unum Group*

Alison N. Davis
Ford & Harrison, LLP
1300 19th Street, NW
Suite 700
Washington, DC 20036
*Counsel for Defendant Concerta Inc.*

DOC/FOP
D.C. Dep't of Corrections
Fraternal Order of Police
711 4th Street, NW
Washington, DC 20001
(no appearance entered)

25

Rachel R. Hranitzky
Office of the Attorney General
441 4th Street, NW
6th Floor North
Washington, DC 20001
*Counsel for Defendant District of Columbia Government*

Laura E. Jordan
Law Offices of Laura E. Jordan, PC
4702 Wisconsin Avenue, NW
Washington, DC 20016
*Counsel for Defendant CLW/CDM*

Thomas V. McCarron
Semmes, Bowen & Semmes
250 West Pratt Street
16th Floor
Baltimore, MD 21201
*Counsel for Defendant CMI-Sedgwick*

John R. Mooney
Mooney, Green, Baker, & Saindon, PC
1920 L Street, NW
Suite 400
Washington, DC 20036
*Counsel for Defendant Int'l Brotherhood of Teamsters, Local 639*

Franklin C. Morris, Jr.
Epstein, Becker and Green, PC
1227 25th Street, NW
Suite 700
Washington, DC 20037
*Counsel for Defendant Corvel Healthcare*

Martha J. Mullen
Office of Corp Counsel
441 Fourth Street, NW
6th Floor South
Washington, DC 20001
*Counsel for Defendant District of Columbia Government*

Mark J. Murphy
Mooney, Green, Baker, & Saindon, PC
1920 L Street, NW
Suite 400
Washington, DC 20036
*Counsel for Defendant Int'l Brotherhood of Teamsters, Local 639*

Robert A. Smith, MD, PC
4701 Randolph Road
Suite 209B
Rockville, MD 20852
(no appearance entered)

Brian Wayne Steinbach
Epstein, Becker & Green, PC
150 North Michigan Avenue
35th Floor
Chicago, IL 60601
*Counsel for Defendant Corvel Healthcare*

Charles B. Wayne
DLA Piper, LLP
1200 Nineteenth Street, NW
Washington, DC 20036
*Counsel for Defendant Aon Risk Services, Inc.*

Brenda Zwack
O'Donnell, Schwartz & Anderson, PC
1300 L Street, NW
Suite 1200
Washington, DC 20005
*Counsel for Defendants AFSCME and WTU*

_____          _____ August 9, 2007
Andres M. Grajales                        Date
Staff Counsel
American Federation of Gov't Employees

27

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| EDNA MCMANUS, *et al*., | ) |
| | ) |
| Plaintiffs, | ) |
| v. | ) |
| | )    Civil Action No. 07-252-CKK |
| DISTRICT OF COLUMBIA, *et al*., | )    Judge Colleen Kollar-Kotelly |
| | ) |
| Defendants. | ) |
| | ) |

### DEFENDANT AFGE'S STATEMENT PURSUANT TO L. CIV. R. 7(m)

Pursuant to L. Civ. R. 7(m), and in support of its Motion for Sanctions Pursuant to Fed. R. Civ. P. 11 ("AFGE's Motion for Sanctions"), Defendant AFGE hereby states as follows:

1.    On September 5, 2007, counsel for AFGE discussed AFGE's Motion for Sanctions with Plaintiffs' counsel, James Q. Butler, by telephone.

2.    Plaintiffs' counsel opposes AFGE's Motion for Sanctions, filed this 5th day of September 2007.

Respectfully submitted,

_____/s/ Mark D. Roth_____
Mark D. Roth (D.C. Bar No. 235473)
General Counsel

_____/s/ Andres M. Grajales_____
Andres M. Grajales (D.C. Bar No. 476894)*
Staff Counsel, AFGE
80 F Street, NW
Washington, D.C. 20001
Tel.:  (202) 639-6426
Agrajales@afge.org
*Attorney of Record

Counsel for AFGE

# AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AFL-CIO

| John Gage | J. David Cox, Sr. | Andrea E. Brooks |
|---|---|---|
| National President | National Secretary-Treasurer | National Vice President for Women and Fair Practices |

**7y/McManus/210409**

**VIA FACSIMILE AND MAIL**

April 18, 2007

James Q. Butler, Esq.
Butler Law Firm
818 18th Street, Ste. 1010
Washington, DC 20006
(t) 202 223-6767
(f) 202 223-3039

> Re:    *McManus, et al v. District of Columbia, et al*, Case No. 07CV002525
> (D.D.C.)

Dear Mr. Butler:

This letter follows our telephone conversation yesterday, wherein I asked that you voluntarily dismiss the complaint you filed naming the American Federation of Government Employees (AFGE) as a defendant in the above-captioned case. Because the claims you raise in the above case are entirely without merit, AFGE renews its request that you voluntarily dismiss the above case, and that you do so by the close of business on April 19, 2007.

In the above captioned case, you allege, *inter alia*, that AFGE breached a duty of fair representation that it owed to the named plaintiffs. In the District of Columbia, claims that a union breached its duty of fair representation (DFR) are controlled by the District of Columbia Comprehensive Merit Personnel Act (CMPA). *See* D.C. Code §1-601 *et seq* (2005). Specifically, the CMPA makes a union's breach of its DFR an unfair labor practice that may only be pursued before the District of Columbia Public Employee Relations Board (PERB). *See* D.C. Code §§ 1-617.04 (b) (1), 1-617.11(a) (2005); *see also, Hoggard v. District of Columbia Public Employee Relations Bd.*, 655 A.2d 320, 321, n. 2 (D.C. 1995) ("breach of an employee's right to be fairly represented by the labor organization certified as the exclusive representative for the employee's collective bargaining unit is an unfair labor practice"); *see also Hawkins v. Hall*, 537 A.2d 571, 575 (D.C. 1988)("[P]rimary jurisdiction to determine unfair labor practice claims lies with the PERB, subject only to review by the courts under well-established principles of administrative law"). Thus, the sole remedy available to the plaintiffs in your case is to file a complaint with the PERB.

Please note that AFGE will vigorously defend itself against any allegations of illegal or improper activity. If you choose to litigate this case after April 19, 2007, AFGE will move to dismiss your complaint. Further, if the Court grants AFGE's motion to dismiss, AFGE will seek F.R.C.P.

DEFENDANT'S EXHIBIT 1

James Q. Butler
April 17, 2007
Page 2

Rule 11 sanctions against you, including AFGE's attorney's fees and costs expended in defending this case. Enclosed with this letter you will find two cases for your review where AFGE successfully obtained Rule 11 sanctions based on similar facts. These two cases are: *Morgan v. American Federation of Government Employees, AFL-CIO, Local 1647 and the United States Department of the Army*, No. 89-1832 (M.D. PA January 17, 1991); and *Bergin v. Sturdivant*, 936 F.Supp. 11 (D.D.C. 1996).

Again, I invite you to review the two above cases in conjunction with the relevant case law, and to reach your own conclusions regarding the viability of your case against AFGE. If you have any questions or if we may be of assistance, please call me at (202) 639-6426.

Sincerely,

Andres M. Grajales
Staff Counsel
AFGE

Enclosure

UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

RAYMOND MORGAN,
    Plaintiff

    v.                            Civil No. 89-1832

AMERICAN FEDERATION OF
GOVERNMENT EMPLOYEES,
AF of L-CIO, Local 1647 and
the UNITED STATES DEPARTMENT
OF THE ARMY,
    Defendants

FILED
SCRANTON

JAN 17 1991

PER _____
    DEPUTY CLERK

## MEMORANDUM

### FACTUAL BACKGROUND

Presently before the court is a motion under Fed.R.Civ.P. 11 for attorney's fees

and costs filed by Martin R. Cohen, Esq., (Cohen), counsel for defendant American

Federation of Government Employees, AFL-CIO, Local 1647, against Peter Loftus, Esq.,

(Loftus), counsel for the plaintiff. Briefs having been filed by both parties, the matter is

now ripe for disposition. The motion will be granted for the reasons that follow.

Cohen's sworn version of the facts, which has not been contradicted by Loftus, is,

as follows:

Loftus, on behalf of Raymond Morgan, filed a complaint against the union in the

Monroe County Court of Common Pleas alleging a breach by the union of its duty of fair

representation. Cohen advised Loftus promptly by mail that, under <u>Karahalios v. National</u>

AO 72A
(Rev 8/82)

Federation of Federal Employees, 109 S.Ct. 1282 (1990),[1] jurisdiction of a suit between a federal employee and his union lies exclusively with the Federal Labor Relations Authority (FLRA) and requested that he dismiss the action. Loftus refused and Cohen, for the union, filed Preliminary Objections. Loftus did not respond to the Preliminary Objections and, on November 22, 1989, Monroe County Judge James Marsh dismissed the case on jurisdictional grounds, holding that a complaint involving an alleged breach of the duty of fair representation by a federal employee's union must be filed with the Federal Labor Relations Authority.

Notwithstanding the ruling by Judge Marsh on December 21, 1989, Loftus commenced the action in this court against the union and added as another defendant, the United States Army, Tobyhanna Army Depot, plaintiff's employer. Jurisdiction was alleged to exist under 42 U.S.C. § 1983; 28 U.S.C. § 1337(a); the National Labor Relations Act, 29 U.S.C. § 151, et seq., and the Labor Management Relations Act, 29 U.S.C. § 401, et seq. In the complaint, plaintiff made the same allegations against the union as in the Monroe County Court that, while employed at the Depot, he was suspended for several days and later separated for "alleged offenses" and, that the union breached its duty of fair representation by failing to pursue his grievances.

Again, by letter dated January 5, 1990, Cohen advised Loftus "[t]he U.S. Supreme Court has recently stated unequivocally that duty of fair representation cases, such as Mr. Morgan's, must be filed exclusively with the Federal Labor Relations Authority. Karahalios

---

1.        Cohen also furnished Loftus with a copy of the Karahalios opinion.

v. National Federation of Federal Employees, 109 S.Ct. 1282 (1989). See enclosed copy".

He warned Loftus that failure to withdraw the action against the union would result in his

seeking fees and expenses under Fed.R.Civ.P. 11. Loftus rejected the request and the

union filed a motion to dismiss which was granted by this court on June 6, 1990, citing

Karahalios as controlling authority.[2] This Rule 11 motion followed, as promised by

Cohen.[3]

## DISCUSSION OF MERITS

It would be difficult to perceive a situation where a Rule 11 sanction would be

more appropriate. Indeed, failure to impose sanctions in this case would undermine the

very purpose of the rule inasmuch as, under the rule, when a violation occurs, the

imposition of sanctions is mandatory. Rule 11 provides, in pertinent part:

> The signature of an attorney or party constitutes a
> certificate by the signer that the signer has read the
> pleading, motion or other paper; that to the best of the
> signer's knowledge, information, and belief formed after
> reasonable inquiry it is well grounded in fact and is

---

2.    A motion to dismiss by the United States Army was granted for similar
reasons, viz., jurisdiction exists solely within the FLRA. The Army has
not sought sanctions.

3.    Loftus does not dispute the merits of the Rule 11 issue but merely
attacks the union's motion on procedural grounds. Middle District
Local Rule 804.2 states that requests for costs must be filed within 30
days after entry of judgment. Defendant filed its motion on June 20,
1990, but failed to file a brief and the motion was deemed withdrawn
and dismissed. Defendant resubmitted the motion on September 7,
1990 with an accompanying brief. Assuming a Rule 11 motion is
subject to the 30 day deadline, the original filing satisfied the local rule
and, under the circumstances, the renewed motion will be considered as
timely filed.

3

> warranted by existing law or a good faith argument for the
> extension, modification or reversal of existing law, and that
> it is not interposed for any improper purpose, such as to
> harass or to cause unnecessary delay or needless increase
> in the cost of litigation..... If a pleading, motion, or other
> paper is signed in violation of this rule, the court, upon
> motion or upon its own initiative, shall impose upon the
> person who signed it, a represented party, or both, an
> appropriate sanction, which may include an order to pay to
> the other party or parties the amount of the reasonable
> expenses incurred because of the filing of the pleading,
> motion, or other paper, including a reasonable attorney's
> fee.  (emphasis supplied)

The Supreme Court in Karahalios specifically held that a federal employee's only

remedy for breach of the duty of fair representation was before the FLRA.

> "...Neither the language nor the structure of the Act shows
> any congressional intent to provide a private cause of
> action to enforce federal employees union's duty of fair
> representation.  That duty is expressly recognized in the
> Act, and an administrative remedy for its breach is
> expressly provided for before the FLRA, a body created by
> Congress to enforce the duties imposed on agencies and
> unions by Title VII, including the duty of fair
> representation."  Karahalios v. Nat. Fed. of Federal Emp.,
> Local 1263, 109 S.Ct. 1282, 1287 (1989).

"Under § 7118, unfair labor practice complaints are adjudicated by the F.L.R.A.,

which is authorized to order remedial action to carry out the purposes of Title VII,

including an award of back pay against either the agency or the labor organization that has

committed the unfair practice."  Karahalios, at 1286.

"Because unfair representation claims most often involve a claim of breach by the

employer and since employers are suable under § 301, the implied fair representation cause

of action allows claims against an employer and a union to be adjudicated in one action.

4

Section 301 has no equivalent under Title VII; there is no provision in that Title for suing an agency in federal court." <u>Karahalios</u> at 1288.

The language in <u>Karahalios</u> is specific and unambiguous and leads to only one obvious conclusion, <u>viz.</u>, a claim against a union for breach of its duty of fair representation can only be brought before the FLRA - not in state court or federal court. Additionally, actions against a federal agency are similarly circumscribed. Plaintiff's counsel was put on notice of the controlling legal precedent and was even forwarded a copy of the <u>Karahalios</u> opinion. Under these circumstances, any contention that the certification of plaintiff's counsel that "to the best of the signer's knowledge, information and belief formed after reasonable inquiry, it is well grounded in fact and is warranted by existing law" would have a hollow ring.

The goal of Rule 11 is to impose on counsel "a duty to look before leaping and may be seen as a litigation version of the familiar railroad crossing admonition to 'stop, look, and listen.'" <u>Lieb v. Topstone Industries, Inc.</u>, 788 F.2d 151, 157 (3d Cir. 1986). The standard for testing an attorney's conduct under the Rule is "reasonableness under the circumstances." <u>Eavenson, Auchmuty & Greenwald v. Holtzman</u>, 775 F.2d 535, 540 (3d Cir. 1985), <u>cited in</u>, <u>Krushinski v. Roadway Express, Inc.</u>, 110 F.R.D. 11, 12 (M.D. Pa. 1985). To comply with the requirements of the Rule, counsel must conduct a reasonable inquiry into the facts and a normally competent level of legal research to support the presentation. <u>Mary Ann Pensiero, Inc. v. Lingle</u>, 847 F.2d 90, 94 (3d Cir. 1988).

Accordingly, the court concludes that, based on the information available to plaintiff's counsel, and the history of this litigation in state court, the certification of the

5

complaint for filing in federal court was unreasonable and in violation of Rule 11. Not only was there a failure to conduct a reasonable inquiry into the facts and exercise a normally competent level of legal research, but also a decision to go forward in the face of controlling authority demonstrating that jurisdiction was lacking. As a result, defendant union was forced to incur legal fees and expenses which it tried vigorously to avoid in advance. I am reluctant to impose sanctions against an attorney but a fair reading of this record allows for no other result.

## SANCTIONS

Once the court determines there has been a violation of Rule 11, it may impose an appropriate sanction, which may include reasonable attorney fees and other reasonable expenses incurred because of the filing of the pleading. Fed.R.Civ.P. 11. The union asked this court to order Loftus to pay the union $886.05, as calculated in its affidavit dated June 18, 1990. See document 22 of record, Affidavit [2], June 18, 1990. Loftus has not contested the figures submitted to this court by the union. Therefore, this court, in finding that Loftus has violated Rule 11, will sanction Loftus in the amount of $886.05 to be paid to the union within thirty (30) days of the date of the accompanying Order. An appropriate Order will enter.

United States District Judge

DATE: January 17, 1991

6

UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

RAYMOND MORGAN,
    Plaintiff

   v.                          CIVIL NO. 89-1832

AMERICAN FEDERATION OF
GOVERNMENT EMPLOYEES,
AF of L-CIO, Local 1647 and
the UNITED STATES ARMY,
TOBYHANNA ARMY DEPOT,
    Defendants

### ORDER

NOW, this   /7ᵗʰ day of January, 1991, IT IS HEREBY ORDERED THAT:

    (1)    Defendant Union's "Motion for Rule 11
             Sanctions Against Plaintiff's Attorney" is
             granted.

    (2)    Mr. Loftus shall pay defendant Union in the
             amount of $886.05 within thirty (30) days of
             the date of this Order.

United States District Judge

7

Westlaw.

936 F.Supp. 11

936 F.Supp. 11
(Cite as: 936 F.Supp. 11)

C
Bergin v. Sturdivant
D.D.C.,1996.

United States District Court,District of Columbia.
Edward BERGIN, et al., Plaintiffs,
v.
John N. STURDIVANT, et al., Defendants.
**Civil Action No. 94-1777 SSH.**

Aug. 14, 1996.

On motion by plaintiffs' counsel to vacate prior sanctions order, the District Court, Stanley S. Harris , J., held that motion to vacate Rule 11 sanctions, erroneously denominated as "Motion to Vacate Entry of Default Judgment," would be denied, since motion was untimely by several months, and plaintiffs' counsel advanced no credible explanation for lengthy delay in filing motion.

Motion denied.
West Headnotes
**Federal Civil Procedure 170A ⟲923**

170A Federal Civil Procedure
   170AVII Pleadings and Motions
      170AVII(I) Motions in General
         170Ak923 k. Time for Filing. Most Cited Cases
District court would not vacate prior order imposing Rule 11 sanctions against plaintiffs' counsel, where counsel's motion to vacate, which was erroneously denominated as "Motion To Vacate Entry Of Default Judgment" was untimely by several months, and plaintiffs' counsel advanced no credible explanation for lengthy delay in filing motion. Fed.Rules Civ.Proc.Rules 11, 59(e), 28 U.S.C.A.

Eleanor R. Jenkins, Silver Spring, MD, for plaintiffs. Joe Goldberg, Michael J. Schrier, AFGE, Washington, DC, for defendants.

*MEMORANDUM ORDER*
STANLEY S. HARRIS, District Judge.
On November 28, 1995, this Court issued an order to show cause why plaintiffs' counsel should not be held in contempt for her failure to obey the Court's order of July 19, 1995, which granted defendants' motion for sanctions. Now before the Court are plaintiffs' counsel's "Motion To Vacate Entry of Default Judgment" and her response to the Court's show cause order, defendants' motion for further sanctions, and plaintiffs' counsel's late-filed response to defendants' motion for further sanctions.

*Background*

A discussion of the history of this action is warranted. On August 15, 1994, plaintiffs filed a complaint and a motion for a temporary restraining order. Plaintiffs claimed that defendants violated the Labor-Management Reporting and Disclosure Act (LMRDA), 29 U.S.C. § 401 *et seq.* (1985), when they placed Local 12 of the American Federation of Government Employees (AFGE) in trusteeship and subsequently allegedly designated delegates to attend an AFGE convention in a manner not proper under the LMRDA. Plaintiffs' motion for a temporary restraining order was denied on August 17, 1994.[FN1]

> FN1. United States District Judge Thomas Penfield Jackson, sitting as motions judge in the absence of the undersigned (to whom the case initially was assigned), heard argument on and denied plaintiffs' motion for a temporary restraining order.

On October 20, 1994, defendants filed a motion to dismiss. Plaintiffs never responded to defendants' dispositive motion. On December 22, 1994, United States District Judge John Helm Pratt, to whom the case had been transferred, treated defendants' motion as conceded pursuant to Local

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

936 F.Supp. 11

Page 2

936 F.Supp. 11
**(Cite as: 936 F.Supp. 11)**

Rule 108(b) and dismissed plaintiffs' action on mootness grounds.

Three days before Judge Pratt dismissed plaintiffs' action, defendants filed a motion for sanctions against plaintiffs' counsel under Fed.R.Civ.P. 11. Defendants argued that had plaintiffs' counsel taken steps to check her facts and the applicable law, plaintiffs' counsel would not have filed a motion for a temporary restraining order, nor would she have persisted in arguing for a temporary restraining order in the face of facts and law that arrayed themselves unquestionably against her. (Defendants first advanced this argument at the hearing on plaintiffs' motion for emergency relief. Judge Jackson noted on \*12 the record that "the thought [of Rule 11 sanctions] had occurred" to him, but that the matter was best left to the judge to whom the case was assigned. *See* Tr. of Hr'g on Mot. for T.R.O., August 17, 1994, at 14, 18.)

Seven months passed, and there was no opposition to defendants' motion for sanctions. On July 19, 1995, the court granted defendants' motion for sanctions and directed that plaintiffs' counsel reimburse defendants for their attorney's fees in the amount of \$6,924.00.[FN2] *See Bergin v. Sturdivant*, Civil Action No. 94-1777 (D.D.C. filed July 19, 1995) (citing *Geller v. Randi*, 40 F.3d 1300 (D.C.Cir.1994), for the proposition that a motion for sanctions may be treated as conceded and granted if the party to be sanctioned fails to respond).

> FN2. At the request of Judge Pratt, who was ill, the undersigned was the judge who signed the July 19 Order. Judge Pratt died on August 11, 1995. This case formally was reassigned back to the undersigned on January 30, 1996.

On November 3, 1995, after making repeated attempts to discuss payment arrangements with plaintiffs' counsel, defendants filed a motion for an order to show cause why plaintiffs' counsel should not be held in contempt of court for her failure to obey the Court's Order granting sanctions. On November 28, 1995, the Court granted defendants'

motion and issued a show cause order. As noted above, plaintiffs' counsel responded on December 11, 1995, with a "Motion To Vacate Entry of Default Judgment."

On December 18, 1995, defendants filed a motion for further Rule 11 sanctions, in light of plaintiffs' counsel's response to the show cause order. On January 25, 1996, plaintiffs' counsel filed an out-of-time response to defendants' motion for further sanctions. (Plaintiffs' counsel moved for leave to late-file her response, and defendants did not oppose that motion.)

### Discussion

#### Motion To Vacate Default Judgment

Plaintiffs' counsel's motion to vacate the "default judgment" against her is without merit. First, no " default judgment" has been entered against plaintiffs or plaintiffs' counsel. When plaintiffs failed to respond to defendants' motion to dismiss, the motion was treated as conceded pursuant to Local Rule 108(b) and the complaint was dismissed with prejudice on mootness grounds on December 22, 1994. Plaintiffs' counsel never appealed the Court's Order dismissing the case; in fact, she apparently agrees that the case was rightly dismissed, since she notes in her response to the Court's show cause order that she "acquiesced in the dismissal." *See* Resp. to Order To Show Cause at 5. On July 19, 1995, also pursuant to Local Rule 108(b), the Court ordered sanctions against plaintiffs' counsel, after plaintiffs and plaintiffs' counsel failed to respond to defendants' motion for sanctions.[FN3] Neither of these orders constitutes a "default judgment."

> FN3. Plaintiffs' counsel contends in her " Motion To Vacate Entry of Default Judgment" that she "did not receive notice" of defendants' motion for sanctions, filed on December 19, 1994. Mot. To Vacate Entry of Default J. at 1. The Court notes that plaintiffs' counsel apparently did

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Page 3

936 F.Supp. 11
**(Cite as: 936 F.Supp. 11)**

receive defendants' motion to dismiss, filed two months earlier, and that defendants' counsel certified that they mailed their motion for sanctions to her at the same address. "Service by mail is complete upon mailing." Fed.R.Civ.P. 5(b); *see Greenspun v. Schlindwein*, 574 F.Supp. 1038, 1039 n. 1 (E.D.Pa.1983) (noting that "because service by mail is complete upon mailing, plaintiffs' denial that he received the government's responsive pleading is irrelevant"). Plaintiffs' counsel's claim of defective service or lack of proper notice is accordingly without merit. Moreover, in her December 11, 1995, pleading, plaintiffs' counsel readily acknowledges that she received the July 19 Order granting sanctions.

The Court will assume that what plaintiffs' counsel actually is requesting in her "Motion To Vacate Entry of Default Judgment" is vacating of the Court's ordering of sanctions. Her motion is denied. The Order granting sanctions against plaintiffs' counsel was filed on July 19, 1995. Any motion to reconsider or to vacate the Court's Order should have been filed within 10 days of entry of the Court's Order, *see* Fed.R.Civ.P. 59(e), and any appeal from the Court's Order should have been filed within thirty days thereafter, *see* Fed.R.App.P. 4(a)(1).

Plaintiffs' counsel has advanced no credible explanation for her lengthy delay. She erroneously asserts that she "was under no tight *13 time constraints" for filing a motion to vacate the judgment, based on her interpretation of Fed.R.Civ.P. 55(c) and 60(b). *See* Resp. to Order To Show Cause at 8. Rule 55(c), which applies to default judgments, is inapplicable, since no default judgment was entered against plaintiffs or their counsel. In addition, plaintiffs' counsel has advanced no legitimate reason why the Court should vacate its ordering of sanctions pursuant to Rule 60(b), which allows for motions for relief from judgment to be made within a "reasonable time" (and in some circumstances, up to one year) after entry of judgment.[FN4] The Court accordingly will not condone plaintiffs' counsel's current attempts to

relitigate the sanctions issue, much less her obvious attempts to relitigate the underlying case.

> FN4. The provisions of Rule 60(b)(1)-(3) allow for a motion for relief from judgment to be filed up to one year after the judgment. Plaintiffs' counsel has not put forward any evidence (nor could she) to support a contention of "mistake, inadvertence, surprise, or excusable neglect," as required under Rule 60(b)(1). Plaintiffs' counsel likewise has not suggested that any newly-discovered evidence exists, or that the judgment had been influenced by fraud or misrepresentation, as required under Rule 60(b)(2) and (3).

### *Defendants' Motions For Contempt Hearing and Further Sanctions*

While the Court agrees with defendants that the conduct of plaintiffs' counsel has, at the very least, bordered on contumacious, it declines at this time to hold a hearing on defendants' contempt motion and accordingly will not now find plaintiffs' counsel in contempt of court. Should plaintiffs' counsel continue to disobey the clear Order of this Court, however, the Court will return to the contempt issue upon a renewed motion from defendants, hold a hearing, and order appropriate sanctions (which may include incarceration). Likewise, the Court denies defendants' motion for further Rule 11 sanctions, again without prejudice to renewal. Accordingly, for the reasons stated herein, it hereby is

ORDERED, that plaintiffs' counsel's motion to vacate the Court's Order of sanctions is denied. It hereby further is

ORDERED, that within 21 days of the date of this Order, plaintiffs' counsel shall confer with counsel for defendants and shall file with the Court an agreed-upon plan of payment of the Court's sanctions. It hereby further is

ORDERED, that defendants' motion for a contempt

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

936 F.Supp. 11                                                    Page 4

936 F.Supp. 11
**(Cite as: 936 F.Supp. 11)**

hearing is denied without prejudice to renewal, if
plaintiffs' counsel fails to cooperate with counsel for
defendants in submitting to the Court a plan of
payment within the time specified. If defendants
are forced to renew their contempt motion, a
contempt hearing will be scheduled promptly. It
hereby further is

ORDERED, that plaintiffs' counsel's motion to
accept out of time her opposition to defendants'
motion for further Rule 11 sanctions is granted as
unopposed. It hereby further is

ORDERED, that defendants' motion for further
Rule 11 sanctions is denied, also without prejudice
to renewal.

SO ORDERED.

D.D.C.,1996.
Bergin v. Sturdivant
936 F.Supp. 11

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.