# UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

| | |
|---|---|
| **EDNA McMANUS, ET AL** | CASE NO: 1:07CV00252 (CKK) |
| Plaintiff | |
| v. | |
| **DISTRICT OF COLUMBIA GOVERNMENT, ET AL.** | **PLAINTIFF'S OPPOSITION TO DEFENDANT WASHINGTON TEACHERS' UNION LOCAL NO. 6 MOTION TO DISMISS** |
| Defendants | |

Plaintiff hereby opposes the Motions to Dismiss filed by Defendant Washington

Teachers' Union Local No. 6, pursuant to Rule 12(b)(1) and (6) of the Federal Rules of Civil

Procedure.  A memorandum in opposition is attached.

Respectfully submitted,

/s/ James Q. Butler
James Q. Butler
Attorney for Plaintiff
818 18th Street, N.W. - 10th Floor
Washington, D.C.  20006
Ph. 202-223-6767

### CERTIFICATE OF SERVICE

Plaintiff hereby certifies that each Defendant is hereby served with the foregoing Opposition to Defendants' Motions To Dismiss through this Court's electronic service.

/s/ James Q. Butler
James Q. Butler

**MEMORANDUM**
**I. INTRODUCTION**

Washington Teachers' Union Local No. 6 filed its Motion To Dismiss based upon Federal Rule of Civil Procedure Rule 8, and Rule 12(b)(1) (5) and (6) for a failure to state a claim upon which relief may be granted.

This Defendant's joint motion under Fed. R. Civ. P. 12(b) raised several defenses, including lack of jurisdiction over the person (Rule 12(b)(2)), insufficiency of service of process (Rule 12(b)(5)), and failure to state a claim upon which relief can be granted (Rule 12(b)(6)). Counsel for Defendant combined these objections in one motion because a party choosing to file a Rule 12(b) motion "must include all defenses and objections then available to him that Rule 12 permits to be made by motion," Charles Alan Wright, The Law of Federal Courts 434-35 (4th ed. 1983). If the Defendant had only raised a Rule 12(b)(6) objection, then the Defendant has waived insufficiency of service of process and lack of personal jurisdiction. Fed. R. Civ. P. 12(h)(1).

Contrary to the positions of the Defendants, the claims alleged in the complaint may be the subject of relief on Plaintiff's Complaint, Amended Complaint, based upon federal and state law claims. The allegations that Plaintiff raises meet the constitutional standards required to state a claim under 42 U.S.C. § 1983, and further state law claims. At paragraphs two through seventeen, each Plaintiff states in detail, the claims filed, and the date of each improper denial of their respective valid claims. It is disingenuous to claim that based upon the Amended Complaint, Plaintiffs have stated claims which lack the detail and specificity to withstand a

motion to dismiss. In fact, if Defendants truly believed that the Amended complaint is insufficient, Defendants should move for a more definite statement.

Plaintiffs brought this action against the named Defendants in this Court for the arbitrary and capricious denial of their disability claims, even though pursuant to an agreement voluntarily entered into, Defendants are under a duty to reexamine each and every claim that had been previously denied. Plaintiffs' claims are part of those claims that must be reviewed and reexamined.

Defendants each have moved to dismiss the complaint. For the reasons that follow, this Honorable Court must overrule this motion to dismiss and permit discovery as this case is prepared for trial.

At ¶ 22, the Amended Complaint states that Washington Teachers' Union Local No. 6 carries on business within the District of Columbia. Thus, jurisdiction and venue is proper.
.

## II. LAW AND ARGUMENT

In Plaintiff's Amended Complaint, each Plaintiff alleges the facts, which must be accepted as true for purposes of reviewing a dismissal under Fed. R. Civ. P. 12(b)(6); *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993).

In *Trollinger v. Tyson Foods, Inc*., 370 F.3d 602, 615 (6th Cir. 2004), the court stated that "Under the familiar rules of notice pleading in federal courts, a complaint should include merely 'a short and plain statement of the claim,' Fed. R. Civ. P. 8(a)(2), and a district court may dismiss a claim only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Some Defendants in this action claim that Plaintiffs have not stated with particularity the conduct of which they complain, while other defendants seem to claim that Plaintiffs have alleged too much information and facts. Either way, Plaintiff

have clearly set forth factual allegations upon which relief can be granted to them.

More prominently at issue in the case of ***Trollinger  v. Tyson*** case is the application of

claims based upon federal statutes, and the preemption of those claims by state law.  There, the

court addressed an application of the Racketeer Influenced and Corrupt Organizations Act

(RICO), 18 U.S.C. § 1961 et seq., to a wage-related dispute between Tyson Foods, Inc. and four

of its employees . The employees alleged that Tyson violated RICO by engaging in a scheme

with several employment agencies to depress the wages of Tyson's hourly employees by hiring

illegal immigrants.

Tyson moved to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(1) for

lack of subject-matter jurisdiction, arguing that the National Labor Relations Act preempts the

employees' RICO claims under the labor-preemption doctrine articulated in ***San Diego Building***

***Trades Council v. Garmon***, 359 U.S. 236 (1959).

Tyson also moved to dismiss the complaint under Rule 12(b)(6) for failure to state a claim,

arguing (1) that plaintiffs lack statutory standing under RICO to pursue this case because any

injury they suffered was derivative of an injury to their union, which served as plaintiffs'

exclusive representative in  negotiating wages, and (2) that Tyson's alleged misconduct did  not

proximately cause an injury to plaintiffs. The district court granted the Rule 12(b)(6) motion,

denied the Rule 12(b)(1) motion, and dismissed the case with prejudice. The appellate court

rejected the application of Garmon preemption in this context and because it could not say at an

early stage in the case that the allegations in the complaint are insufficient as a matter of law to

establish statutory standing, and reversed the district court's judgment.

The court stated that:

"As federal courts generally use the term, preemption does not describe the effect of
one federal law upon another; it refers to the supremacy of federal law over state law when
Congress, acting within its enumerated powers, intends one to displace the other. See U.S.
Const. art. VI, cl. 2 ('[T]he Laws of the United States . . . shall be the supreme Law of the
Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution
or Laws or any State to the Contrary notwithstanding.'). Preemption, moreover, does not
normally concern the subject-matter jurisdiction of a court to hear a claim, which is what is
relevant to the resolution of a Rule 2(b)(1) motion. Rather, the doctrine generally concerns
the merits of the claim itself—namely, whether it is viable and which sovereign's law will
govern its resolution. That is why litigants typically invoke preemption as a defense to
state-law claims asserted in state or federal court, not as a jurisdictional defect."

The court went on to that "Like many 'general' rules, however, this one contains

exceptions, the most important of which is that "federal courts may decide labor law questions

that emerge as collateral issues in suits brought under independent federal remedies." ***Connell***

***Constr. Co. v. Plumbers & Steamfitters Local Union No. 100***, 421 U.S. 616, 626 (1975).

Therefore, when a federal claim is based upon a basic constitutional violation, this "pre-

emption" does not apply.  The District of Columbia Comprehensive Merit Personnel Act does

not present an obstacle to Plaintiffs' constitutional causes of action in this case or to this Court.

By stating that the Defendants, including Washington Teachers' Union Local No. 6, had

violated the subject Settlement Agreement (Amended Complaint, ¶ 54, et seq.).  That entire

Settlement Agreement is incorporated by reference into the Complaint and Amended Complaint.

Plaintiff asks that this Court follow the "incessant command of the court's conscience that

justice be done in light of all the facts."  ***Griffin v. Swim-Tech Corp***., 722 F.2d 677, 680 (11ᵗʰ

Cir. 1984).  Plaintiff requests that this Court examine and "intensively balance" the numerous

factors and that the "court's conscience" be focused upon the goal that "justice be done in light

of all of the facts."

***Rodi, v. Southern New England School of Law*** 389 F.3d 5  (1ˢᵗ Cir. 2004) held that:

"In ruling on whether a plaintiff has stated an actionable claim, an inquiring court, be
it a trial or appellate court, must consider the complaint, documents annexed to it, and
other materials fairly incorporated within it. *In re Colonial Mortg. Bankers Corp*., 324
F.3d 12, 15-16 (1ˢᵗ Cir. 2003); *Cogan v. Phoenix Life Ins*. Co., 310 F.3d 238, 241 n.4
(1ˢᵗ Cir. 2002). This sometimes includes documents referred to in the complaint but not
annexed to it. See *Coyne v. Cronin*, ___ F.3d ___, ___ (1st Cir. 2004) [No. 03-2357,
slip op. at 11]; *Beddall v. State St. Bank & Trust Co.*, 137 F.3d 12, 17 (1ˢᵗ Cir. 1998);
*Fudge v. Penthouse Int'l, Ltd.*, 840 F.2d 1012, 1015 (1ˢᵗ Cir. 1988). Finally, the
jurisprudence of Rule 12(b)(6) permits courts to consider matters that are susceptible to
judicial notice. *Colonial Mortg. Bankers*, 324 F.3d at 15-16; *Boateng v. InterAmerican
Univ.*, 210 F.3d 56, 60 (1ˢᵗ Cir. 2000)."

Defendants have filed a motion to dismiss the complaint under Rule 12(b)(6) for failure to
state a claim upon which relief can be granted. A Rule 12(b)(6) motion to dismiss "should not be
granted unless it appears certain that the plaintiff can prove no set of facts which would support its
claim and would entitle it to relief." *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir.
1993). In considering the motions, "the court should accept as true all well pleaded allegations and
should view the complaint in a light most favorable to the plaintiff." *Mylan Labs*., 7 F.3d at 1134.
However, dismissal under 12(b)(6) is appropriate only if the plaintiff can prove no set of facts that
would support its claim. *Mylan Labs*., 7 F.3d at 1134.

Because Plaintiffs have alleged facts that would allow them to survive the Defendant
Washington Teachers' Union Local No. 6's motions to dismiss, there should be no dismissal under
Rule 12(b)(6). Plaintiff's complaint alleges both the existence a conspiracy, described in as much detail
as is available prior to discovery, at ¶¶ 56, 57, 60, 61, and 73, and the agreements between the parties.
Viewing these allegations in the light MOST favorable to Plaintiffs, the Amended Complaint states a
claim for a violation of Plaintiff's rights, upon which relief could be granted.

More particularly, the Amended Complaint alleges that Defendant Washington Teachers'
Union Local No. 6, had violated the Settlement Agreement, and the specific manner, as much as is
known at this stage of the litigation. Essentially, these allegations are adequate at this stage of the

litigation.

Defendants further claim that Plaintiffs fail to allege damages as the result of Defendants conduct. All of this, including the violation of that Settlement Agreement, is the basis for the irreparable damages that each Plaintiff has incurred. See Amended Complaint ¶ 85.  Additionally, Amended Complaint ¶ 76, states that Defendants have denied to Plaintiffs their rights to due process of law.  That denial of due process IS damage, and has led to further damage.  This denial of civil rights, embodied in the 14th Amendment to the Constitution of the United States, is basic and elementary to the fabric of American law.  Therefore, Plaintiffs have properly alleged a claim upon which relief can be granted, and dismissal under Rule 12(b)(6) is not appropriate.

In its Motion To Dismiss, the Defendant Washington Teachers' Union Local No. 6 claims that the complaint is void of any factual allegations from which these Defendants may be liable.  In fact, this a perversion of the facts stated in the Amended Complaint. Clearly, Count I of the Amended Complaint states the conduct by which Washington Teachers' Union Local No. 6 and its conspirator UNUM Provident employed their policy and practice  to deny these valid claims for disability insurance.  The Defendants , the Amended Complaint states, engaged in conduct which encourages and promotes denial of valid claims.   This is consistent with the testimony and evidence that was exposed in the case of *Merrick v. Paul Revere*, infra, for which the Plaintiffs request that this Court take judicial notice.  The Defendants  refused to train, and properly direct, supervise or control the employed claims adjusters to properly assess the merits of Plaintiff's claims.  See ¶ 54.

This Court must accept those facts alleged in the complaint and then determine whether, based on those facts, a reasonable person could not render judgment in favor of the Plaintiffs. To the extent the Defendants argue that the Amended Complaint, viewed in the light most favorable to Plaintiffs,  is insufficient to support the facts as articulated in the Amended Complaint, these

Defendants have an obligation to demonstrate that no set of fact could lead a reasonable person to conclude that Defendants violated the law with respect to the improper denial of Plaintiffs' disability claim.  This Court should conclude that there is evidence in the record thus far from which a trier of fact could conclude, inter alia, that Plaintiff did not receive an honest review and reexamination of her claims. This Court cannot consider Defendants' arguments that the complaint does not make the necessary allegations, based upon the information available to Plaintiffs at the time of the filing of the complaint.  Upon these facts alleged in the complaint, this Court should not dismiss the Amended Complaint.

The Amended Complaint alleges that these Defendants engage in unconstitutional conduct. Specifically, the complaint alleges that the Defendants acted together deprive Plaintiff , and persons like her, of their rights, through a custom, policy and practice, which was put into use in this instance by Defendant .  The Amended Complaint further alleges that this conduct was part of the conspiracy, which is further explained throughout the Amended complaint.  See Amended Comp.¶ ¶ 32, 57, 61, 65, 75, 78, and 81.   Viewing the complaint in the light most favorable to the Plaintiffs, Plaintiffs  have properly pleaded a claim for both violation of civil rights and state law violations, and can successfully oppose this motion to dismiss for failure to state a claim on which relief can be granted.

In ***Merrick v. Paul Revere Life Ins. UNUM Provident,*** Case no. 05-17059 (9th Cir. Aug. 31, 2007), defendants Paul Revere Life Insurance Company/Unum Provident Corporation appealed the district court's jury verdict awarding $1.65 million in compensatory and $10 million in punitive damages to plaintiff G. Clinton Merrick, Jr. for breach of contract and of the duty of good faith and fair dealing, stemming from the insurers' denial of Merrick's disability insurance claim.

Merrick  purchased a disability policy from defendant Paul Revere Life Insurance

Company in 1989, which was later acquired by UNUM Provident.  At trial, Merrick argued that

the denial of his claim was part of a larger scheme to "scrub" the company's liability for

expensive and noncancellable "own occupation" disability policies. Merrick relied largely upon

the testimony of Stephen Prater, an insurance industry expert who teaches insurance law at Santa

Clara University Law School.  Prof. Prater testified regarding Unum Provident's allegedly ag-

gressive and unethical claim closing practices. These practices included pressuring claimants to

settle for a fraction of total benefits, insisting upon "objective medical evidence" of a disability

even when the policy did not require such evidence, building a stable of biased Independent

Medical Examiners who would support claim denials, and holding regular "round table" meet-

ings with lawyers, doctors, and claims handlers designed to "triage"the most expensive claims.

Merrick also introduced a substantial number of internal Unum Provident memos showing the

evolution of this scheme during the early 1990s, and Prater testified regarding the tremendous

financial gains Unum Provident posted by adopting these "best practices."

Unum Provident began importing its "best practices" procedures to other insurance com-

panies that it had acquired in a purchase.  This included training its claims representatives in

"objectification" and "round tabling" of insurance claims.  Prater testified that Paul Revere

representatives received this training shortly before the company began re-evaluating Merrick's

claim (which it had initially paid out). Prater testified that the company's handling of Merrick's

claim was consistent with many of Unum Provident's improper practices, including attempting

to settle for a fraction of the total amount (and threatening to sue for reimbursement if Merrick

refused to settle), insisting upon "objective medical evidence" and seeking to get Merrick's

claim off the books before the end of the fiscal year. Merrick also argued that the explanations

Paul Revere gave Merrick for denying his claim were inconsistent with the company's internal

documentation, which largely supported the conclusion that Merrick suffered "significant

impairment."

The jury returned a verdict for Merrick, awarding him $1,147,355 in unpaid benefits and

$500,000 for mental and emotional distress, to be paid by the insurers jointly and severally.

It also imposed $2,000,000 in punitive damages on Paul Revere and $8,000,000 on Unum

Provident.

The appeals court found that the evidence at trial more than sufficient to support the

jury's bad faith verdict. Under Nevada law, "[b]ad faith is established where the insurer acts

unreasonably and with knowledge that there is no reasonable basis for its conduct." *Albert H.*

*Wohlers & Co. v. Bartgis*, 969 P.2d 949, 956 (Nev. 1998) (citation omitted). Viewing the

evidence in Merrick's favor, *Bains LLC v. Arco Prods. Co.*, 405 F.3d 764, 774 (9th Cir. 2005),

the jury could have found that the insurers conducted a biased investigation of Merrick's claim

as part of an improper companywide initiative to target and terminate expensive policies. It also

could have found that the insurers misrepresented the terms of the policy by requiring Merrick to

present "objective medical evidence" of his disability.  The court of appeals noted that it had

previously found that these defendants' improper claim-scrubbing supports a finding of bad faith

claim denial in a case decided under California law, which like Nevada anchors bad faith

liability in the reasonable- ness of the insurer's action. *See Hangarter v. Provident Life and*

*Accident Ins. Co.*, 373 F.3d 998, 1010-11 (9th Cir. 2004).  The Court also found that there was

substantial evidence before the jury that the insurers should be liable for punitive damages.  The

-10-

court found that the jury could have concluded that by subjecting Merrick's claim to improper

claim-scrubbing procedures, the insurers "undertook an intentional course of conduct designed

to ensure the denial" of the claim The Nevada Supreme Court and the Ninth Circuit have held

that such conduct could constitute "fraud and malice." See also ***Hangarter***, 373 F.3d at 1012-13.

Because the court could not say that there was a "complete absence of evidence" to support the

jury's verdicts, it affirmed the district court's denial of the insurers' motion for a new trial.

In ***Rosen v. TRW, Inc.***, 979 F.2d 191, 193-94 (11th Cir. 1992) the court reversed the dismis-

sal, for failure to state a claim, of a complaint against an employer not named in the plan docu-

ment as an administrator, and permitted the plaintiff to pursue "the claim that the company was

the de facto plan administrator and the committee was an inactive entity.". The court held that

"if a company is administrating the plan, then it can be held liable for ... violations, regardless of

the provisions of the plan document." Id. Similarly, in ***Garren v. John Hancock Mutual Life***

***Insurance Co.***, the court stated that "[t]he proper party defendant in an action concerning ...

benefits is the party that controls administration of the plan." 114 F.3d 186, 187 (11th Cir. 1997)

Because Washington Teachers' Union Local No. 6's conspiratorial conduct regarding

their joint  administration of the disability insurance plans, and their joint violation of the

settlement agreement, based upon their improper and unlawful denial of Plaintiffs' claims, is

both wrong and unreasonable.

### III. CONCLUSION

This case should proceed to the merits of the within matter.  Because Defendants

Washington Teachers' Union Local No. 6's denial of valid claims for benefits was arbitrary and

capricious, under the facts pleaded in  Plaintiffs' version of the events giving rise to this case,

which will be supported at trial by competent evidence, Plaintiffs could reasonably have a trier of

fact clearly conclude that a Due Process violations occurred and that the state law claims for bad

faith and conspiracy could be proven by the requisite standards of proof.

Based upon the authorities cited, and for the reasons fully stated above, Plaintiffs have stated a

cause of action upon which relief can be granted.   Accordingly,  Defendant's Motions To Dismiss

should be denied.

Dated: September 5,  2007

Respectfully submitted,


/s/ James Q. Butler
James Q. Butler
Attorney for Plaintiff
818 18th Street - 10th Floor
Washington, D.C.  20006
Ph. 202-223-6767