# UNITED STATES DISTRICT COURT
# DISTRICT OF COLUMBIA

| | |
|---|---|
| **EDNA McMANUS, ET AL** | CASE NO: 1:07CV00252 (CKK) |
| Plaintiff | |
| v. | |
| **DISTRICT OF COLUMBIA GOVERNMENT, ET AL.** | PLAINTIFF'S OPPOSITION TO DEFENDANT S' |
| Defendants | MOTIONS FOR SANCTIONS |

Plaintiff hereby opposes the Motion For Sanctions filed by Defendant American Federation of Government Employees and Concentra Corporation, filed September 5, 2007, and October 19, 2007, respectively, pursuant to Rule 11 of the Federal Rules of Civil Procedure. A memorandum, affidavit and documents in opposition is attached.

Respectfully submitted,

/s/ James Q. Butler
James Q. Butler
Attorney for Plaintiff
818 18th Street, N.W. - 10th Floor
Washington, D.C. 20006
Ph. 202-223-6767

### CERTIFICATE OF SERVICE

Plaintiff hereby certifies that each Defendant is hereby served with the foregoing Opposition to Defendants' Motions To Dismiss through this Court's electronic service.

/s/ James Q. Butler
James Q. Butler

**MEMORANDUM**
**I. INTRODUCTION**

The Amended Complaint in this case was filed February 1, 2007, and the collective Defendants filed again several Motions To Dismiss, based upon Federal Rule of Civil Procedure 12(b)(6) for a failure to state a claim upon which relief may be granted, in July, 2007. Defendant American Federation of Government Employees filed a Motion for Sanctions on September 5, 2007; and, Defendant Concentra Corporation filed a Motion For Sanctions on October 19, 2007. Both Motions should be overruled. Plaintiffs have not yet received any documents provided in discovery, as no discovery has been exchanged. Claims files have yet to be provided on any, or all, of the Plaintiffs. No documents have been reviewed. Nothing has been provided to Plaintiffs.

Contrary to the positions of the Defendants, the claims alleged in the complaint may be proven beyond a preponderance of the evidence once the claims files are reviewed by Plaintiff's and Plaintiff's experts.

At this point in the litigation, Plaintiff's attorneys are only supplied information from the several clients, which Plaintiff's attorney is obligated to believe. Based upon the past litigation of these defendants who have a direct relationship with UNUM Provident, the facts as told to the undersigned attorney are far more likely to have occurred in the manner expressed by the Plaintiffs than not.

Plaintiffs brought this action against the named Defendants in this Court for the arbitrary and

capricious denial of their disability claims, even though pursuant to an agreement voluntarily entered into, Defendants are under a duty to reexamine each and every claim that had been previously denied. Plaintiffs' claims are part of those claims that must be reviewed and reexamined.

These two Defendants each have moved to impose sanctions. For the reasons that follow, this Honorable Court must overrule their respective motions and permit discovery as this case is prepared for trial. ¶

## II. LAW AND ARGUMENT

Federal Rule of Civil Procedure 11 provides that a district court may sanction Attorneys or parties who submit pleadings for an improper purpose or that contain frivolous arguments or arguments that have no evidentiary support.

> Rule 11. Signing of Pleadings, Motions, and Other Papers; Representations to Court; Sanctions
>
> (a) Signature. Every pleading, written motion, and other paper shall be signed by at least one attorney of record in the attorney's individual name . . . .
>
> (b) Representations to the Court. By presenting to the court (whether by signing, filing, submitting, or later advocating) a pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,-
>
> (1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;
>
> (3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and
>
> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.

(c) Sanctions. If, after notice and a reasonable opportunity to respond, the court determines that subdivision (b) has been violated, the court may, subject to the conditions stated below, impose an appropriate sanction upon the attorneys, law firms, or parties that have violated subdivision (b) or are responsible for the violation.

*   *   *

Even if the district court finds evidence to be insufficient for purposes of summary judgment, that "does not mean that appellants' claims were factually unfounded for purposes of Rule 11." **Stitt v. Williams**, 919 F.2d 516, 527 (9th Cir. 1990).

While the following case relates to a Title VII case, the reasoning is applicable. A district court may impose monetary sanctions, in the form of attorneys' fees, upon plaintiffs who file Title VII claims that are "frivolous, unreasonable, or without foundation." See **EEOC v. Bruno's Restaurant**, 13 F.3d 285, 287 (9th Cir. 1993) (quoting **Christiansburg Garment Co. v. EEOC**, 434 U.S. 412, 421-22 (1978)). However, "[b]ecause Congress intended to `promote the vigorous enforcement of the provisions of Title VII,' a district court must exercise caution in awarding fees to a prevailing defendant in order to avoid discouraging legitimate suits that may not be `airtight.' " Id. (quoting **Christiansburg**, 434 U.S. at 422); see also **EEOC v. Consolidated Serv. Sys.**, 30 F.3d 58, 59 (7th Cir. 1994) (suggesting that the "frivolous" standard is much more stringent than merely "not substantially justified"). Courts must heed "the Supreme Court's warning in **Christiansburg** against the `temptation to engage in post hoc reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation.' " **Bruno's Restaurant**, 13 F.3d at 290 (quoting **Christiansburg**, 434 U.S. at 421-22); see also **Forsberg v. Pacific Northwest Bell Tel. Co.**, 840 F.2d 1409, 1422 (9th Cir. 1988) (applying the same "frivolous, unreasonable, or without foundation" standard to request

for sanctions under Rule 11 and 42 U.S.C. S 2000e-5(k)).*Kizer v. Children's Learning Ctr.*, 962 F.2d 608, 613 (7th Cir. 1992) affirms a district court's decision not to impose Rule 11 sanctions on a plaintiff who had failed to make out a prima facie case under Title VII because the claim was not filed with improper motives or inadequate investigation.

In the case of *G. Clinton Merrick, Jr. v. Paul Revere Life Ins., et. al.*, case no CV-S-00-0731-JCM-RJJ, in the Nevada District Court, document no. 143 was filed. That document is attached hereto, along with the deposition of the former medical director, Dr. William Feist. Those two documents, when read in conjunction with the subject Regulatory Settlement, which is also attached, demonstrates that there is ample justification for the Plaintiffs filing their complaint against UNUM Provident Corporation and Paul Revere Life. The *Merrick* verdict against UNUM Provident, *Merrick v. Paul Revere Life Ins. UNUM Provident,* Case no. 05-17059 (9th Cir. Aug. 27, 2007), exposes UNUM Provident's pattern and practice of administering these insurance programs in a very dishonest and bad-faith manner.

In *Merrick* Doc. No. 143, attached, there is an affidavit from Julie Mersch, attorney for Merrick. She discloses all of the documents in the file, including the claim file, which demonstrates the methods and bad-faith methods which UNUM Provident employs to deny the legitimate and valid claims of policyholders.

Also included in that document in the *Merrick* case is the affidavit of Stephen Prater and his Expert Report. It is anticipated that Mr. Prater will become an expert witness in the case at bar. Mr. Prater's knowledge and statement of UNUM Provident's bad faith method of claims practice is included in Plaintiff's Opposition to the Motions to Dismiss. Mr. Prater's affidavit speaks for itself, and in itself, provides ample justification for filing the within matter on behalf of the

Plaintiffs, along with the documents that Mr. Prater has attached.   All of this is ample justification for Plaintiffs, and their undersigned counsel, to file this case against these Defendants.

In Plaintiff's Amended Complaint, each Plaintiff alleges the facts, which, when viewed in light of the exhibits attached demonstrate the pattern and practice in which the Defendants engaged, when working with UNUM Provident, to administer the disability insurance programs.

Plaintiff's counsel had investigated the facts of the complaints brought by the individual Plaintiffs and weighed them in light of the evidence revealed by the attached exhibits.

In light of the fact that the jury verdict in *Merrick v. Paul Revere Life Ins. UNUM Provident,* Case no. 05-17059 (9th Cir. Aug. 31, 2007) has been upheld and affirmed, these moving Defendants have filed their motions for sanctions in bad faith in a manner equal to that of their clients.   When defendants Paul Revere Life Insurance Company/Unum Provident Corporation appealed the district court's jury verdict awarding $1.65 million in compensatory and $10 million in punitive damages to plaintiff G. Clinton Merrick, Jr. for breach of contract and of the duty of good faith and fair dealing, stemming from the insurers' denial of Merrick's disability insurance claim.

Merrick purchased a disability policy from defendant Paul Revere Life Insurance Company in 1989, which was later acquired by UNUM Provident.  At trial, Merrick argued that the denial of his claim was part of a larger scheme to "scrub" the company's liability for expensive and noncancellable "own occupation" disability policies. Merrick relied largely upon the testimony of Stephen Prater, an insurance industry expert who teaches insurance law at Santa Clara University Law School.  Prof. Prater testified regarding Unum Provident's allegedly aggressive and unethical claim closing practices. These practices included pressuring claimants to settle for

a fraction of total benefits, insisting upon "objective medical evidence" of a disability even when the policy did not require such evidence, building a stable of biased Independent Medical Examiners who would support claim denials, and holding regular "round table" meetings with lawyers, doctors, and claims handlers designed to "triage" the most expensive claims. Merrick also introduced a substantial number of internal UNUM Provident memos showing the evolution of this scheme during the early 1990s, and Prater testified regarding the tremendous financial gains UNUM Provident posted by adopting these "best practices."

UNUM Provident began importing its "best practices" procedures to other insurance companies that it had acquired in a purchase. This included training its claims representatives in "objectification" and "round tabling" of insurance claims. Prater testified that Paul Revere representatives received this training shortly before the company began re-evaluating Merrick's claim (which it had initially paid out). Prater testified that the company's handling of Merrick's claim was consistent with many of Unum Provident's improper practices, including attempting to settle for a fraction of the total amount (and threatening to sue for reimbursement if Merrick refused to settle), insisting upon "objective medical evidence" and seeking to get Merrick's claim off the books before the end of the fiscal year. Merrick also argued that the explanations Paul Revere gave Merrick for denying his claim were inconsistent with the company's internal documentation, which largely supported the conclusion that Merrick suffered "significant impairment."

The jury returned a verdict for Merrick, awarding him $1,147,355 in unpaid benefits and $500,000 for mental and emotional distress, to be paid by the insurers jointly and severally. It also imposed $2,000,000 in punitive damages on Paul Revere and $8,000,000 on UNUM

Provident.

The appeals court found that the evidence at trial more than sufficient to support the jury's bad faith verdict. Under Nevada law, "[b]ad faith is established where the insurer acts unreasonably and with knowledge that there is no reasonable basis for its conduct." ***Albert H. Wohlers & Co. v. Bartgis***, 969 P.2d 949, 956 (Nev. 1998) (citation omitted). Viewing the evidence in Merrick's favor, ***Bains LLC v. Arco Prods. Co.***, 405 F.3d 764, 774 (9th Cir. 2005), the jury could have found that the insurers conducted a biased investigation of Merrick's claim as part of an improper companywide initiative to target and terminate expensive policies. It also could have found that the insurers misrepresented the terms of the policy by requiring Merrick to present "objective medical evidence" of his disability. The court of appeals noted that it had previously found that these defendants' improper claim-scrubbing supports a finding of bad faith claim denial in a case decided under California law, which like Nevada anchors bad faith liability in the reasonable- ness of the insurer's action. *See **Hangarter v. Provident Life and Accident Ins. Co.***, 373 F.3d 998, 1010-11 (9th Cir. 2004). The Court also found that there was substantial evidence before the jury that the insurers should be liable for punitive damages. The court found that the jury could have concluded that by subjecting Merrick's claim to improper claim-scrubbing procedures, the insurers "undertook an intentional course of conduct designed to ensure the denial" of the claim The Nevada Supreme Court and the Ninth Circuit have held that such conduct could constitute "fraud and malice." See also ***Hangarter***, 373 F.3d at 1012-13. Because the court could not say that there was a "complete absence of evidence" to support the jury's verdicts, it affirmed the district court's denial of the insurers' motion for a new trial.

In ***Rosen v. TRW, Inc***., 979 F.2d 191, 193-94 (11th Cir. 1992) the court reversed the dismis-

sal, for failure to state a claim, of a complaint against an employer not named in the plan document as an administrator, and permitted the plaintiff to pursue "the claim that the company was the de facto plan administrator and the committee was an inactive entity.". The court held that "if a company is administrating the plan, then it can be held liable for ... violations, regardless of the provisions of the plan document." Id. Similarly, in *Garren v. John Hancock Mutual Life Insurance Co.*, the court stated that "[t]he proper party defendant in an action concerning ... benefits is the party that controls administration of the plan." 114 F.3d 186, 187 (11th Cir. 1997)

American Federal Government Employees and Concentra Corporations joined with UNUM Provident to engage in conspiratorial conduct regarding their joint administration of their respective insurance plans. This joint violation of the settlement agreement, based upon their improper and unlawful denial of Plaintiffs' claims, is both wrong and unreasonable and is the basis of the complaint.

In *Harlyn Sales Corp. v. Investment Portfolios*, 142 F.R.D. 671 (N.D.Ill. 1992), the court established guidelines which protect the attorney and the client from Rule 11 sanctions. The guidelines are as follows:

   1. Make a reasonable inquiry into the facts of the case before filing a pleading, motion, or any paper.
   2. Make a reasonable investigation into the law applying to the case.
   3. Do not submit any pleading to harass, delay, or increase the cost of litigation for the opposing party.
   4. Do not include unnecessary parties.
   5. Do not sign any document that could mislead the court.
   6. Make sure every document explains the matter without a requirement for qualification.

Plaintiff's counsel has followed these steps. Counsel has undertaken the research that has led to the discovery of the *Merrick* case. That case, and the expert witness who may testify in

this case, if it is not timely settled, will demonstrate the frivolous Rule 11 motions filed by Defendants Concentra Corp., and American Federation of Government Employees.

Defendants' respective Rule 11 Motions has no basis, and that Defendants themselves have failed to undertake the proper and necessary research prior to filing their motions to dismiss and their motions for Rule 11 sanctions. Sanctions are not warranted, as a dismissal is similarly not warranted. At the conclusion of this case, Plaintiff will suggest ways, including punitive damages, in which these Defendants, and their counsel, should be deterred from exploiting policy holders such as the Plaintiffs, and Mr. Merrick. When the punitive damages are assessed by the jury and when the attorney fee bills are included, Defendants herein will understand that they can't sweep under the rug the unethical, illegal, and bad-faith conduct exposed by the jury's verdict in Merrick, and now complaint that because Plaintiffs assert similar rights and expose identical conduct, that Plaintiffs and their counsel should somehow be sanctioned.

It is apparent that the attorneys for Defendants have adopted their client's style of handling matters that disrupt Defendants' business practices. Defendants' antagonistic, excessive, and voluminous style of practice easily suggests that Defendants' strategy is to exhaust their opponent's financial resources by needlessly increasing the costs of litigation. This is the recipe for UNUM Provident's claim practice. It will be dealt with accordingly, by the trier of fact, Such egregious behavior is the purpose for which punitive damages will be assessed.

Sanctions are available equally to plaintiff and defendant. Defendants are under a duty to not frustrate discovery and the orderly course of litigation. ***B & H Mfg., Inc. v. Foster-Forbes Glass Co.***, 143 F.R.D. 664 (N.D.Ind. 1992), illustrates this point well. In ***B & H Mfg.***, the defendant did not disclose to the plaintiff that discovery directed to defendant's shell corporation

-10-

was unnecessary.  The defendant knew that the plaintiff had made a reasonable mistake, but the defendant failed to disclose the truth. Time and money were wasted. The plaintiff moved for Rule 11 sanctions when he later discovered the shell game.  The court held that the plaintiff was entitled to Rule 11 sanctions for defendant's abuse of the discovery process by harassment, delay, and wasting attorney's fees. Plaintiff was awarded the wasted attorney's fees.

The signature of the attorney, and in verifications of, the client, is the statement to the court that the pleading is well founded.  It is difficult to improve on the language employed by Justice O'Connor, "The essence of Rule 11 is that signing is no longer a meaningless act; it denotes merit. A signature sends a message to the district court that this document is to be taken seriously." ***Business Guides, Inc. v. Chromatic Communications Enterprises, Inc***., 498 U.S. 533, 111 S.Ct. 922, 929, 112 L.Ed.2d 1140 (1991).

Section (b) of Rule 11 states that the presenter (movant) of any pleading represents to the court, that the pleading is presented after a reasonable inquiry, that it is not interposed for an improper purpose, that the claims are supported by existing law (or a credible argument to change the law), that real evidence does or will (through discovery) support the pleadings or the denials.  In light of the evidence revealed in the *Merrick* case, these moving Defendants cannot make such a required statement.  Plaintiffs can.

Based upon the documents that Plaintiffs' counsel has exposed and reviewed in the *Merrick* case, it becomes apparent that the parties who are making motions to this Court for an improper purpose are the Defendants, most notably Concentra Corp and the American Federation of Government Employees.

This Honorable Court would not abuse its discretion in imposing sanctions against these

Defendants for filing their motions for sanctions. The Motions filed by Provident UNUM in this case is part of a pattern and practice of UNUM Provident, as a continuation of the practice engaged in during the *Merrick*, case, and practiced in other cases as well.

*Patterson v. Aiken*, 841 F.2d 386, 387 (11th Cir. 1988) held that the imposition of sanctions was supported by evidence that litigant brought action based on allegations which had been adversely decided against him previously. The Merrick verdict and subsequent affirmation on appeal supports this ground for imposition of sanctions against these moving Defendants. When Defendants UNUM Provident made its motion for Rule 11 Sanctions, the counsel and the client knew of the verdict and the documents filed in the *Merrick* case. They both should be sanctioned for their bad faith for requiring this Court to deal with this matter.

A sanction imposed for a violation of Rule 11 must be "limited to what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated." Fed. R. Civ. P. 11(c)(2). Although the sanctions most commonly imposed are costs and attorney's fees, the selection of the type of sanction to be imposed lies with the district court's sound exercise of discretion. See *Donaldson v. Clark*, 819 F.2d 1551, 1557 (11th Cir. 1987).

A monetary sanction would be insufficient to deter Defendants UNUM Provident and its counsel from future baseless, bad-faith filings and therefore would be insufficient to protect the court's ability to carry out its judicial functions. Injunctive relief may the only means that offers any chance of preventing further harassment of Plaintiffs, and further clogging of the judicial machinery with meritless pleadings, and further overloading of already overloaded court dockets." UNUM Provident must be sanctioned with a means of preventing their conduct in the future. That is best left to a jury, in assessing punitive damages.

At this time, the scope of the injunction must prohibit UNUM Provident from filing any more pleadings that are inconsistent with the verdict rendered in *Merrick*, and upheld on appeal.

Rule 11(b) is not a strict liability provision. It prohibits filings made with "any improper purpose," the offering of "frivolous" arguments, and the assertion of factual allegations without "evidentiary support" or the "likely" prospect of such support. A lawyer who makes an inaccurate factual representation must, at the very least, be culpably careless to commit a violation. See Fed. R. Civ. P. 11(b) (requiring that factual contentions have evidentiary support only "to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances"). The question is whether Plaintiffs' counsel's has made allegations without factual support. The attached documents, at the very least, provide that factual support.

Rule 11(b), creating duties, sets out the substantive obligations of counsel (e.g., that factual claims must have evidentiary support or a likely prospect of it) without in any way suggesting that the substantive obligations differ depending on whether a later claim of violation is raised by opposing counsel or the court. Nor is it obvious why anyone would wish such duties governing "primary conduct" to depend on who might thereafter raise objections in a remedial proceeding. Cf. *Commonwealth of Puerto Rico v. SS Zoe Colocotroni*, 628 F.2d 652, 669 (1st Cir. 1980).

In *Sichel v. UNUM Provident Corporation,*. 230 F. Supp. 2d 325 (S.D. N.Y. 2002), UNUM Provident asked the district court to impose sanctions for attorneys' fees and expenses pursuant to Civ. Rule 11(b)(3) for the costs of their motion. Rule 11(b)(3) is violated where a party falsely represents to the court that "the allegations and other factual contentions [he has made]

have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery." Fed. R. Civ. P. 11(b)(3). Rule 11(b)(3) sanctions are not imposed "'unless a particular allegation is utterly lacking in support.'" ***In re Highgate Equities, Ltd.***, 279 F.3d 148, 154 (2d Cir. 2002) (quoting ***O'Brien v. Alexander****,* 101 F.3d 1479 (2d Cir. 1996)). Courts generally look for "direct falsehood" in a filing. ***Chum Ltd. v. Lisowski,*** *2001 U.S. Dist. LEXIS 2462*, No. 98 Civ. 5060, 2001 WL 243541, at 14 (S.D.N.Y. Mar. 12, 2001).

The court held that sanctions were not appropriate for failure to state a cause of action. Though Sichel offered no evidentiary support for such a violation, the court held that this does not mean, however, that Sichel he will never be able to properly state such a claim or offer support for it. Rule 11 sanctions, the court found, should be imposed with caution, "even where the violation is clear." citing ***Chauvet v. Local 1199, Drug, Hosp., & Health Care Employees Union,*** *1996 U.S. Dist. LEXIS 17080*, No. 96 Civ. 2934, 1996 WL 665610, (S.D.N.Y. Nov. 18, 1996). The court held that awarding sanctions against Sichel at the time of UNUM Provident's motion would be premature.

### III. CONCLUSION

Because Defendants Concentra Corporation's and American Federation of Government Employees' denial of valid claims for benefits was accomplished in concert with UNUM Provident, and because of UNUM Provident's repeated pattern and practice of bad-faith denial of valid claims was permitted to control and manipulate the process of assessing the validity of Plaintiff's properly filed claim, these moving Defendants are acting in bad faith. Plaintiffs have filed their complaint supported by the facts and the evidence, which is demonstrated by the

exhibits attached.

Based upon the authorities cited, and for the reasons fully stated above, Plaintiffs have stated a cause of action which is well-grounded in fact and is based upon reasonable facts. Plaintiffs' claims are legally tenable, as the Merrick case demonstrates. Plaintiffs' claims are submitted in good faith and for the purpose of addressing Defendants' improper and illegal conduct. Accordingly, under the objective standard for assessing conduct under Rule 11, which is "reasonableness under the circumstances" and "what [it] was reasonable to believe at the time", Defendants' Motions For Sanctions should be denied

Dated: November 28, 2007

Respectfully submitted,

/s/ James Q. Butler
James Q. Butler
Attorney for Plaintiff
818 18th Street - 10th Floor
Washington, D.C.  20006
Ph. 202-223-6767