UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

<table>
<tr><td>

EDNA MCMANUS, *et al.*

   Plaintiffs,

    v.

DISTRICT OF COLUMBIA, *et al.*

   Defendants.

</td><td>

Civil Action No. 07-252 (CKK)

</td></tr>
</table>

**MEMORANDUM OPINION**
(December 31, 2007)

The Plaintiffs in this action are sixteen[1] current and former employees of various District

of Columbia government agencies, who bring an amalgam of claims against fourteen

Defendants: the District of Columbia (the "District"), five labor unions (the "Labor Union

Defendants"),[2] five health care management companies (the "Health Care Defendants"),[3] two

insurance companies,[4] and one physician (collectively, "Defendants"). Plaintiffs' Amended

_____

[1] Although Plaintiffs assert that their Amended Complaint is brought on behalf of "13 Plaintiffs," it in fact identifies sixteen Plaintiffs. *Compare* Am. Compl. ¶ 1 *with* Caption.

[2] The Labor Union Defendants include the American Federation of State, County, and Municipal Employees, District Council 20, AFL-CIO ("AFSCME"); the American Federation of Government Employees ("AFGE"); the International Brotherhood of Teamsters Local Union No. 639 ("Teamsters"); the Washington Teachers Union ("WTU"); and the Department of Corrections/Fraternal Order of Police ("FOP").

[3] The Health Care Defendants named in the Amended Complaint include Concentra Incorporated ("Concentra"), Corvel Healthcare ("Corvel"), CLW/CDM, Aon Risk Services Incorporated ("Aon"), and CMI/Sedgwick (improperly spelled as "CMI/Segwick" in the caption of the Amended Complaint, and hereinafter "Sedgwick"). As discussed *infra* at note 6, some of the Health Care Defendants assert that they are improperly identified in the Amended Complaint.

[4] The insurance companies named in the Amended Complaint are Unum Group, a.k.a. Unum Provident Insurance Company ("Unum"), and Genex Services Incorporated, a Subsidiary

Complaint is rather opaque, but generally appears to allege that the Defendants engaged in a conspiracy to violate Plaintiffs' rights by depriving them of administrative relief in connection with a "benefit derived from [their] employment."  Although Plaintiffs' Amended Complaint includes eight Counts, four of those Counts are more properly described as prayers for relief than legal causes of action (Counts 5-8).  The four substantive Counts of Plaintiffs' Amended Complaint allege that all of the Defendants breached the employment contract and collective bargaining agreements in place among the District, its employees, and the Labor Union Defendants (Counts 1 and 2), that the Labor Union Defendants breached their duties of fair representation to Plaintiffs (Count 3), and that the District and the Labor Union Defendants deprived Plaintiffs of due process of law (Count 4).

Twelve of the Defendants have now moved to dismiss Plaintiffs' claims by filing motions to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(5), and 12(b)(6).  Upon a searching review of the filings currently before the Court in connection with those motions to dismiss, the attachments thereto, the relevant statutes and case law, and the entire record herein, the Court shall GRANT each of the currently pending motions to dismiss, and shall dismiss this action in its entirety.  Two of the Defendants to this action–AFGE and Concentra–have also filed separate motions for sanctions pursuant to Federal Rule of Civil Procedure 11(c).  The Court concludes that Plaintiffs' Amended Complaint and Oppositions are devoid of factual or legal merit, but declines to impose sanctions on the grounds that Plaintiffs' counsel was aware of the Amended Complaint's deficiencies before filing it.  In contrast, the Court shall grant Concentra's motion for sanctions insofar as it is based on Plaintiff's counsel's filing of an inaccurate Return

―――――――――――――――

of Unum Provident ("Genex").

2

of Service with respect to Concentra while on notice that Concentra had not been validly served with process in this action.  The Court shall therefore DENY AFGE's Motion for Sanctions, and shall GRANT Concentra's Motion for Sanctions.

## I: BACKGROUND

### A.    Parties

The Amended Complaint contains two boilerplate allegations regarding each Plaintiff: (1) that he or she was "at all times set forth herein an employee of an agency of the District of Columbia;" and (2) that he or she "has filed appropriate notice of claim at various times, with the appropriate agencies during the events of this matter, and has exhausted all 'KNOWN' administrative remedies."  *See* Am. Compl. ¶¶ 2-17.  In addition, the Amended Complaint includes the following particularized allegations as to the individual Plaintiffs:

- Plaintiff Edna McManus was employed by the Department of Corrections as a Correctional Officer and was a member of a local affiliated with Defendant FOP. McManus suffered an unidentified work-related job injury on February 26, 2002, was subsequently diagnosed with bi-lateral carpal tunnel syndrome, and filed a workers' compensation claim on March 27, 2002.  McManus alleges that her claim was improperly denied on April 8, 2002 and that she was denied "monetary, medical, Cost of Living Adjustments (2003, 2004, 2005, 2006), transportation mileage, medical prescriptions, and life insurance benefits" on January 30, 2006. McManus further alleges that on July 27, 2006 she was denied medical expenses for a claim processed by CLW/CDM, on the ground that no injury existed. McManus also alleges that subsequent claims were denied on April 5, 2005; July 25, 2006; January 3, 2007; March 6, 2007; and March 29, 2007.  *Id.* ¶ 2.

- Plaintiff Gaynell Nixon was employed as an Assistant Housing Manager by the

Housing Authority and was a member of a local affiliated with Defendant AFGE. Nixon filed a claim for a work-related injury to her right foot and ankle on January 23, 1996, which was initially denied on or about October 31, 1996. That denial was subsequently reversed by an Administrative Law Judge on October 8, 1997, and then denied again on September 28, 1998 by a claims examiner for "Cor Vel Corp." Nixon's claim was denied again on September 2, 2004 under a new claim number. Nixon filed a second claim on or about March 5, 2001 relating to a February 21, 2001 injury, which was denied on October 4, 2005; January 6, 2006, and January 23, 2006. *Id.* ¶ 3.

- Plaintiff Shirley Massey was employed as a Secretary/Administrative Assistant by the University of the District of Columbia and was a member of a local affiliated with AFSCME. Plaintiffs do not allege that Massey filed any workers' compensation claims or that her employment was terminated. *Id.* ¶ 4.

- Plaintiff Sandra Mitchner was employed as a Position Classification Specialist for the Office of Personnel and was not a member of any labor union. Mitchner incurred an injury on February 12, 1990 from inhaling a mist in the air near her workspace and was taken to Providence Hospital. "After filing claims, and suffering a series of denials, [Mitchner] was terminated in 2004." *Id.* ¶ 5.

- Plaintiff William Workcuff was employed as a Maintenance Mechanic by the Housing Authority and was a member of a local affiliated with AFGE. Workcuff was injured on the job on February 21, 2002, and was treated by a doctor on March 13, 2002. Workcuff "filed an authorized claim," which "was improperly denied by Defendants, acting through [a doctor] at Providence Hospital, on or about June 13, 2002, based upon an unsubstantiated determination that the subjective complaints of Workcuff were not causally related to the work-related accident." *Id.* ¶ 6.

4

- Plaintiff Edward Clark was employed as a School Bus Driver by the District of Columbia Public Schools for approximately 10 years, and was a member of a local affiliated with AFSCME.  On June 23, 2005, Clark was terminated for allegedly having residue of illegal drugs in a urine test.  Clark attempted to appeal his termination, but on October 19, 2006 "was denied to be heard and never received any termination papers."  *Id.* ¶ 7.

- Plaintiff Slatel Dillon was employed as an Electrical Repair Mechanic by the Water and Sewer Authority for eighteen years, and was a member of a local affiliated with AFSCME.  Dillon incurred injury to his lower back in the course of his employment on or about September 15, 2003.  Although a medical report dated February 3, 2006 determined that Dillon had suffered injury to his lower back and required vocational rehabilitation, "[Dillon]'s claim was denied, and [Dillon] was terminated."  Dillon was previously injured in June 27, 2002, and asserts that each of his claims was "unjustifiably denied."  *Id.* ¶ 8.

- Plaintiff Audrey Tucker was employed as a School Bus Attendant and was a current dues paying member of Teamsters Local 639.  "Tucker's Union records have been destroyed, and the Union has denied Tucker representation."  Tucker alleges that she "has been repeatedly denied employee benefits for injuries suffered and incurred related to employment," but does not provide further details as to the nature of her injuries or the claims she filed, and does not detail the context in which she was denied union representation.  *Id.* ¶ 9.

- Plaintiff Arzella Smith was employed as a School Bus Driver by the District of Columbia Public Schools and was a member of a local affiliated with AFSCME.  Smith was served with a traffic citation on March 20, 2006 for being involved in a traffic accident, and was terminated on April 5, 2006.  Smith alleges that she "had

previously been suspended based upon an allegation which physically could not have occurred, as she was not present, on October 3, 2005," and that her "union representatives had abandoned her, in violation of her union contract." *Id.* ¶ 10.

•    Plaintiff Geraldine Talley Hobby was employed as an Art Teacher by the District of Columbia Public Schools and was a member of a local affiliated with WTU. Plaintiffs allege that Hobby filed a claim on March 1, 1997, but do not indicate the nature of Hobby's claim or whether it involved a work-related injury. *Id.* ¶ 11.[5]

•    Plaintiff Erwin Diggs was employed as a School Bus Driver by the District of Columbia Public Schools and was a member of a local affiliated with AFSCME. Diggs filed disability claims in May 2000 and April 2006, which were denied. Diggs "was then subjected to a wrongful termination and his medical and dental benefits were extinguished. The local union failed to represent him." *Id.* ¶ 12.

•    Plaintiff John Lewis was employed as an Engineer by the District of Columbia

---

[5] In its Reply in support of its Motion to Dismiss, AFGE notes that in 2003, a District of Columbia Public Schools Art Teacher by the name of Geraldine T. Hobby brought an action against the District and other defendants, "seeking punitive damages and restoration of disability benefits she had received between 1990 and 1997 based on an injury suffered while she was a teacher in the District of Columbia Public Schools." *See* AFGE Reply at 3 n.1, Ex. 1 (Slip Op., *Hobby v. District of Columbia*, Civil Action No. 03-272 (D.D.C. Nov. 18, 2003)) at 1. On November 18, 2003, Judge James Robertson granted two motions to dismiss that action, *see id.*, and AFGE asserts that "[t]o the extent that the Geraldine T. Hobby who was the plaintiff in that case is the same Geraldine T. Hobby who is a plaintiff in this action, plaintiff Hobby's disability related claims in this action should also be dismissed as barred by *res judicata*," *id.* at 3 n.1. The District concurs in AFGE's assertion. *See* District Reply at 4 n.3. Plaintiffs have not moved to file a sur-reply in response to AFGE's assertion regarding Plaintiff Hobby. The Court cannot determine from the current record whether the plaintiffs in the two actions are in fact one and the same, but it is entirely possible that Plaintiff Hobby's disability related claims in this action are barred by *res judicata*. The Court need not resolve this factual issue, however, because all of Plaintiffs' claims shall be dismissed on the merits for reasons set forth below.

Public Schools and was a member of a local affiliated with AFSCME. Lewis
alleges that he filed a claim as a result of an injury on August 26, 1998, but also
alleges that he "had initially been injured on October 1, 1975 when he stepped
into an open floor drain. Since that time, the symptoms have remained, and his
claim(s) and requests for benefits have been denied." *Id.* ¶ 13.

- Plaintiff Velerie Jones Coe was employed as a Staff Assistant by the Department
  of Mental Health and was a member of a local affiliated with AFGE. Coe alleges
  that she suffered an injury to her neck and upper thoracic area on or about August
  14, 1989, as well as a left shoulder strain and carpal tunnel of the left wrist and
  hand on or about August 30, 1996, her claim for which was denied on December
  11, 1997. Coe alleges that her additional claims were denied without justification
  on May 29, 1998, and "again on January 6, 2003, as it was again determined that
  this injury was not caused, nor related to, [Coe's] employment." Coe was
  apparently thereafter determined to have fully recovered from her injury and to be
  able to return to work. *Id.* ¶ 14.

- Plaintiff Fletcher Scott was employed as an Industrial Arts Teacher by the District
  of Columbia Public Schools and was a member of a local affiliated with AFGE.
  Scott alleges that "he had filed claims, which are based upon work related
  injuries, and which claims are in the possession of the Defendants. His claims
  have been systematically and unjustifiably denied." Scott does not provide further
  details regarding the nature of his alleged injuries or claims. *Id.* ¶ 15.

- Plaintiff Ronald Minor was employed as an Investigator by the Attorney General
  of the District of Columbia and was a member of a local affiliated with AFSCME.
  Minor alleges that he "filed claims based upon work related injuries," that the
  "information relating to each specific claims [sic] are in the possession of the
  Defendants," and that his "claims have been systematically and unjustifiably

denied."  Minor does not provide further details regarding the nature of his alleged injuries or claims.  *Id.* ¶ 16.

- Plaintiff Otis Mahoney, Sr. was employed as a Maintenance Mechanic/Laborer by the Housing Authority and was a member of a local affiliated with AFGE. Mahoney alleges that "he was paid less than the wages of a person in his position, and is due and owing back pay.  Forms have been allegedly lost which document his improper pay checks."  Mahoney alleges that he complained about his improper paychecks and was fired on August 29, 2003.  Mahoney further alleges that his local union, "of which he was a current dues paying member, ignored his complaints and abandoned representation . . . . Since that time, the Union has failed to represent him."  *Id.* ¶ 17.

Plaintiffs also include boilerplate allegations as to all Defendants (other than the District of Columbia), alleging that each is "licensed to transact business within the jurisdiction of this Court, and is . . . involved in claims and actions which are a part of the foundational elements of the conspiracy pled herein."  *Id.* ¶¶ 18-31.  As to the Labor Union Defendants, Plaintiffs further allege that each is "located in the District of Columbia."  *Id.* ¶¶ 18-23.  As to the Health Care Defendants, Plaintiffs further allege that each "is believed to have offices and/or agents located in the District of Columbia, or have employees who carry on transactions within the District of Columbia."  *Id.* ¶¶ 24-28.[6]  As to Genex, Plaintiffs add only that it is a subsidiary of Unum Provident "and is believed to be located in the District of Columbia, or have employees who

---

[6] Some of the Health Care Defendants assert that they have not been properly identified in the Amended Complaint.  In particular, Sedgwick asserts that its proper name is CMI Octagon "A Sedgwick CMS Company," *see* Sedgwick MTD at 1 n.1, and Aon Risk Services, Inc. of Washington, D.C. notes that it is improperly identified as "Aon Risk Services, Inc."  *See* Aon MTD at 1 n.1.

carry on transactions within the District of Columbia." *Id.* ¶ 29.[7]

Plaintiffs recite the same boilerplate allegations as to Unum, and further allege that Unum is a party to legal actions in other jurisdictions "wherein injunctions and settlement decrees, have been entered into with various States Attorney's General [sic], which called for cessation of illegal activities, which are the same as the facts pled in this complaint." *Id.* ¶ 30. Plaintiffs provide detail for this allegation later in the Amended Complaint, under two headings: "Unum Provident Criminal Enterprise Claim" and "Outline of Unum Provident Settlement Agreement." *Id.* ¶¶ 44-54. Most of the allegations under those headings appear to be lifted verbatim from the New York State Attorney General's press release announcing the settlement agreement at issue. *See* New York State Attorney General, Press Release, *available at* http://www.oag.state.ny.us/ press/2004/nov/nov18a_04.html. In sum, Plaintiffs assert that Unum and five of its subsidiaries (not including Genex) entered into a settlement agreement with certain state insurance regulators regarding allegations that Unum had inappropriately denied claims for benefits under individual and group long-term disability insurance policies (hereinafter the "RSA"). *Id.* ¶¶ 45-47.[8] The RSA required Unum to reassess approximately 200,000 long-term disability claims that had

---

[7] The Amended Complaint also includes allegations as to Robert A. Smith, MD, alleging that while he served as a consulting physician to Plaintiffs he "would certify injuries, certify surgical necessity, and certify continuing care to enrich himself," but that Smith subsequently "changed sides and began working for the Defendants," whereafter he "had the utter audacity to completely alter the previous diagnosis . . . and state in writing . . . that the [Plaintiffs] claims should now be denied." Am. Compl. ¶ 31. These allegations are irrelevant, however, because as discussed below Dr. Smith has not been served with process and is therefore not a Defendant to this action.

[8] Although Plaintiffs do not name the Unum subsidiaries that are parties to the RSA, the New York State Attorney General's press release lists the subsidiaries, and the Court notes that they do not include Genex. *See* http://www.oag.state.ny.us/press/2004/nov/nov18a_04.html.

previously been denied, as well as to restructure its claim handling procedures to ensure objectivity and fairness.  *Id.* ¶ 48.

In the context of Count 7 of the Amended Complaint, Plaintiffs further allege that it is "obvious" that Unum and Genex "have breached the previous settlement" and that Plaintiffs "are suffering irreparable injury because of Defendants' failures to comply with the law and the applicable agreements and related obligations."  *Id.* ¶¶ 88, 90.  However, as Unum points out, Plaintiffs do not plead that any of them was insured under one of the long-term disability insurance policies issued by Unum (or a subsidiary) that were at issue in the RSA.  *See* Unum Reply at 4.  Rather, the Amended Complaint appears to relate solely to workers' compensation claims submitted pursuant to the District of Columbia's Comprehensive Merit Personnel Act ("CMPA"), D.C. Code §§ 1-601.1 *et seq.*  Moreover, Unum asserts that after receiving Plaintiffs' Opposition to its Motion to Dismiss, it "looked for and could find no record that any of these Plaintiffs ever filed a disability claim or sought review of a denied claim under the RSA.  Indeed, it appears from Unum's records that is has never even insured these Plaintiffs."  *Id.* at 4-5 n.1.  Plaintiffs have not moved to file a sur-reply in response to Unum's assertion, and the Court notes that Unum's statement is not inconsistent with the allegations in the Amended Complaint, which does not assert that Plaintiffs were insured under long-term disability plans issued by Unum.  Thus, accepting the allegations of the Amended Complaint as true, Plaintiffs allege that Unum and its subsidiaries entered into the RSA but do not demonstrate how the RSA is in any way relevant to the workers' compensation claims that Plaintiffs allegedly filed with the District.  *See* Am. Compl. ¶¶ 44-54, 86-90.  In addition, the Court notes that the Amended Complaint does not

allege that any Defendants other than Unum were parties to the RSA.  *Id.*[9]

        B.      *Plaintiffs' Conspiracy Allegations*

The "Facts" section of the Amended Complaint serves two purposes: describing the RSA, as detailed above, and alleging that Defendants "have and are engaging in a conspiracy, combination and agreement, wherein the rights of the Plaintiffs . . . have been and continue to be violated."  *Id.* ¶ 32.  In support of this allegation, Plaintiffs assert they "were and are entitled to administrative remedies and notice as to what administrative remedies are available to [them]," but were "denied the benefit of cognizable administrative relief as the Defendants have engaged in a pattern and practice" designed to prevent Plaintiffs from exhausting their administrative remedies.  *Id.* ¶¶ 33[C]-[L].  Plaintiffs further assert that Defendants substituted "a singular city wide formal administrative remedy" with "a series of agency controlled administrative remedy procedures for each individual agency" and failed "to inform the Plaintiffs in writing as to what the administrative remedy process is."  *Id.* ¶¶ 33[D]-[E].  Plaintiffs next allege that "[w]hen administrative law judges or judges of the Superior Court of the District of Columbia or United States District Court Judges, enter orders or take actions that are adverse to these Defendants, the Defendants simply ignore the orders, as if the courts lack any power of enforcement."  *Id.* ¶ 33[M].  Plaintiffs do not, however, point to any specific orders allegedly ignored by Defendants.

---

[9] Plaintiffs devote the bulk of their Oppositions to an extended discussion of *Merrick v. Paul Revere Life Insurance Co.*, __ F.3d ___, 2007 WL 2458503 (9th Cir. 2007), a case in which the Ninth Circuit addressed Nevada state law claims related to an Unum subsidiary's (not Genex) denial of a long-term disability claim.  Plaintiffs appear to believe that *Merrick* substantiates their nebulous allegations of a vast conspiracy between Unum and the other Defendants to violate the RSA and to deny Plaintiffs of their disability benefits.  *Merrick*, however, is entirely inapposite, because Plaintiffs' Amended Complaint is devoid of allegations that any Plaintiff was insured under a long-term disability insurance policy issued by Unum or any of its subsidiaries.

Finally, Plaintiffs allege that the "primary reasoning" for Defendants' actions "is a plan created by the Defendants to circumvent judicial scrutiny and review by the Attorney Generals [sic] of the States [with whom] Defendant Unum Provident" entered into the RSA. *Id.* ¶ 33[N].

Plaintiffs also allege that Defendants agreed: (1) that the Labor Union Defendants would not challenge the "maze of unpublished regulations . . . in violation of the collective bargaining agreement between the Union Defendants and the city," *id.* ¶ 34; and (2) "to employ the health care Defendants as third parties, who will create policies and procedures, which are impossible to comply with, and that the Defendants . . . knew or should have known [would] violat[e] the civil rights and due process rights of the Plaintiffs," *id.* ¶ 35. Plaintiffs do not provide further factual allegations as to either of these agreements. Similarly, Plaintiffs allege that the Health Care Defendants "are engaged in a fraud wherein [they] randomly change corporate names and transfer assets of one another to other third parties to avoid a Federal Court order issued in the State of New York," *id.* ¶ 36, but do not specify which Defendants are alleged to have engaged in such activity, or how any Defendant is actually alleged to have perpetrated a fraud.

The Amended Complaint also contains a number of allegations more specifically addressed to the Labor Union Defendants and to the District. In particular, Plaintiffs assert that the Labor Union Defendants collect union dues for union representation which does not exist, because Plaintiffs (with the exception of Mitchner, who is not a member of a labor union) "are entitled to fair, competent representation in all matters relating to their employment with the City, which is being denied by the Union Defendants who have shut their collective eyes to the city's tampering with the administrative and benefit systems which have been previously agreed to . . . ." *Id.* ¶¶ 36, 37. Plaintiffs continue to allege that they have "filed timely grievances,

12

requested arbitration hearings in accordance with set policy and have been subjected to denials

based upon fathom [sic] reasoning, without due process of law." *Id.* ¶ 38. Plaintiffs assert that

"neither the Unions nor the City have been complying with either the Collective Bargaining

Agreements or the Personnel Rules and Regulations," because they have "failed to investigate

employee grievance claims in a timely manner" and to keep adequate records, which has resulted

in delayed arbitrations; have collaborated to dismiss or settle pending grievance cases without the

knowledge or approval of the employees concerned; and have tampered with Plaintiffs' files by

inserting forged documents or removing documents favorable to Plaintiffs. *Id.* ¶¶ 39-40.

According to Plaintiffs, the Labor Union Defendants and the District "have treated employee

claims in a perfunctory manner, acted arbitrarily, negligently, incompetently, and have willfully

delayed and/or failed to provide fair, prompt, and effective representation and hearing." *Id.* ¶ 41.

Finally, Plaintiffs assert that they "have attempted to raise their claims and concerns

before the City's Personnel Board and the City's Labor Board and have exhausted such claims as

the faux system set in place by the Defendants permit." *Id.* ¶ 42. Plaintiffs do not, however,

specify which, if any, administrative remedies each Plaintiff has pursued. Similarly, Plaintiffs

allege that Defendants' actions have "resulted in poverty, homelessness, economic disadvantage

and suffering both emotionally and physically based upon unlawful termination, unlawful

transfer, unlawful demotion, unlawful denial of benefits, and unlawful cancellation of benefits,"

but do not specify which, if any, of these alleged injuries each Plaintiff has suffered. *Id.* ¶ 43.

### C.    *Plaintiffs' Asserted Claims for Relief*

Based upon the foregoing allegations, Plaintiffs assert eight "Claims for Relief." Count 1

is styled as a claim for breach of employment contract and alleges that the District "and its

employees have an employment contract, consisting in part of a Collective Bargaining

Agreement between the City and the Unions, and present and past employment practices," and

that all Defendants' "failures to engage in meaningful mediation, other dispute resolution efforts,

or arbitration, and the denial of prompt grievance hearings violate the employment contracts."

*Id.* ¶¶ 56-59.  Count 2 asserts a claim for breach of collective bargaining agreement, alleges that

Plaintiffs are third party beneficiaries of the collective bargaining agreements between the

District and the Labor Union Defendants, and asserts that all Defendants conspired to violate the

collective bargaining agreements by denying prompt disciplinary and contract grievance

hearings.  *Id.* ¶¶ 60-63.  Count 3 asserts a claim for breach of duty of fair representation, and

alleges, *inter alia*, that the Labor Union Defendants breached their duties "to engage in

negotiations in good faith and to represent and advance the rights and interests of the Plaintiffs in

meritorious grievance claims," as well as fraudulently collected union dues that the Labor Union

Defendants knew they had not earned  *Id.* ¶¶ 64-72.  Count 4 asserts a claim for violation of right

to due process against the Labor Union Defendants and the District, alleging that Plaintiffs "have

a property interest in their employment, [] can only be disciplined, refused benefits and/or fired

for good cause, [] are entitled to pre-termination and post-termination hearings and process," and

"have been denied their constitutional rights to substantive and procedural due process of law."

*Id.* ¶¶ 73-76.

The remainder of Plaintiffs' Counts are more properly described as prayers for relief than

legal causes of action.  In Count 5, Plaintiffs assert a claim for declaratory judgment, alleging that

all Defendants "are engaging in criminal and civil wrongdoing," and requesting "declaratory

rulings to determine the respective contractual and constitutional rights and obligations of the

parties." *Id.* ¶¶ 77-79.  In Count 6, Plaintiffs request injunctive relief against all Defendants,

asserting that "[w]ithout issuance of an injunctive order and/or a Writ of Mandamus, Defendants

will continue to refuse or delay compliance with the law, and will continue to deny and

compromise Plaintiffs' rights and interests." *Id.* ¶¶ 80-85.  Count 7 is framed as a "special

request for judicial notice, injunctive relief, temporary restraining order and pendant

jurisdictional ruling over Defendant Unum Provident's failure to comply with the New York

settlement agreement already in place, with a request for a criminal referral to the individual

Attorneys General who are part of the previous settlement referenced herein." *Id.*, Count 7.  In

support of this "special request," Plaintiffs allege that Unum and Genex have breached the RSA

and that "[w]ithout issuance of an injunctive order and referral from this court these Defendants

will be free to continue to defraud U.S. citizens nationwide." *Id.* ¶¶ 86-90.  Finally, in Count 8,

Plaintiffs seek a "restraining order as to retaliation," alleging that "Defendants have a history of

retaliatory conduct" against whistleblowers, which is prohibited under the Constitution and

various federal laws, and asserting that "Plaintiffs anticipate the Defendants or parties affiliated

with the Defendants will seek retribution and punish these Plaintiffs for their assistance in this

litigation." *Id.* ¶¶ 91-100.

> D.    *Procedural History*

Plaintiffs filed their initial Complaint in this action on February 1, 2007, naming as

Defendants all of the entities discussed above.  Nine (9) of these Defendants subsequently filed a

total of seven (7) motions seeking to dismiss Plaintiffs' Complaint.[10]  On June 11, 2007,

---

[10] Genex and Unum filed a joint motion to dismiss Plaintiffs' original Complaint, as did
WTU and AFSCME.  Thus, a total of seven motions to dismiss were filed before Plaintiffs
moved to amend their Complaint.

Plaintiffs moved to amend their original Complaint.  Thereafter, six (6) Defendants filed a total

of five motions to dismiss Plaintiffs' Amended Complaint.[11]  On June 28, 2007, the Court

granted Plaintiffs' motion to amend, denied without prejudice all of the motions to dismiss filed

with respect to Plaintiffs' original Complaint, and ordered all Defendants who had not yet

responded to Plaintiffs' Amended Complaint to do so on or before July 27, 2007.  *See* Order,

Docket No. 36.  Thereafter, the remaining six (6) Defendants filed a total of five motions to

dismiss.[12]

On August 1, 2007, the Court issued a Minute Order noting the ten pending motions to

dismiss, and directing Plaintiffs to file "an INDIVIDUAL Opposition" to each of those pending

motions to dismiss, on or before September 5, 2007.  *See* Minute Order (D.D.C. Aug. 1, 2007).

On September 6, 2007, Plaintiffs filed ten separate Oppositions to the pending motions to

dismiss.  *See* Docket Nos. [58]-[67].[13]  As various Defendants note in their reply memoranda,

---

[11] AFSCME and the WTU filed a joint motion to dismiss Plaintiffs' Amended Complaint.
*See* AFSCME/WTU MTD, Docket No. [25].  Other motions to dismiss were filed by Corvel, *see*
Corvel MTD, Docket No. [31]; Concentra, *see* Concentra MTD, Docket No. [32]; and AFGE,
*see* AFGE MTD, Docket No. [35].  Sedgwick filed a motion to dismiss in the alternative, along
with an opposition to Plaintiffs' motion to amend their Complaint.  *See* Docket Nos. [27] and
[29].  After the Court granted Plaintiffs' motion to amend, Sedgwick filed another motion to
dismiss as to the Amended Complaint, which the Court assumes supersedes its previous filing.
*See* Sedgwick MTD Am. Compl., Docket No. [38].

[12] Genex and Unum filed a joint motion to dismiss Plaintiffs' Amended Complaint.  *See*
Genex/Unum MTD, Docket No. [39].  Other motions to dismiss were filed by the District,
*see* District MTD, Docket No. [40]; the Teamsters, *see* Teamsters MTD, Docket No. [41]; Aon,
*see* Aon MTD, Docket No. [42]; and CLW/CDM, *see* CLW/CDM MTD, Docket No. [43].  In
addition, Concentra filed a supplemental motion to dismiss, *see* Concentra Supp. MTD, Docket
No. [44].

[13] Plaintiffs erroneously filed their oppositions as replies on September 5, 2007, and were
instructed to refile the documents as oppositions on September 6, 2007.

despite the Court's instruction that Plaintiffs file "INDIVIDUAL" oppositions, Plaintiffs' ten

Oppositions are largely identical (with the exception of a few introductory paragraphs).

*See* Corvel Reply at 2 & n.2 (describing minimal differences between Oppositions).  Each

Opposition nominally responds to a separate motion to dismiss, but none of them substantively

addresses the various arguments made by the individual Defendants in their respective motions to

dismiss.  Furthermore, in response to the AFSCME/WTU joint motion to dismiss, Plaintiffs filed

an "Opposition to Defendant Washington Teachers' Union Local No. 6 Motion to Dismiss,"

which does not mention AFSCME's motion.  In a Notice of Plaintiffs' Failure to File Opposition,

AFSCME argues that its motion to dismiss should be deemed conceded pursuant to Local Civil

Rule 7(b).  The Court agrees that Plaintiffs have not opposed AFSCME's motion to dismiss, and

shall therefore grant that motion as conceded.  In addition, for all of the reasons discussed in

detail below, the Court shall grant AFSCME's motion to dismiss on the merits.

Each of the Defendants (with the exception of CLW/CDM) filed their reply memoranda

on or before September 28, 2007.  Defendant CLW/CDM has not filed a reply memorandum in

support of its Motion to Dismiss.  Nevertheless, the ten pending motions to dismiss are now ripe

for consideration.

## II:  LEGAL STANDARD

### A.    *Federal Rule of Civil Procedure 12(b)(1)*

A court must dismiss a case when it lacks subject matter jurisdiction pursuant to Rule

12(b)(1).  "At the motion to dismiss stage, counseled complaints, as well as *pro se* complaints,

are to be construed with sufficient liberality to afford all possible inferences favorable to the

pleader on allegations of fact."  *Settles v. U.S. Parole Comm'n*, 429 F.3d 1098, 1106 (D.C. Cir.

2005).  In spite of the favorable inferences that a plaintiff receives on a motion to dismiss, it

remains the plaintiff's burden to prove subject matter jurisdiction by a preponderance of the

evidence.  *Am. Farm Bureau v. Environmental Prot. Agency*, 121 F. Supp. 2d 84, 90 (D.D.C.

2000).  In addressing a motion to dismiss pursuant to Rule 12(b)(1), the Court may "consider the

complaint supplemented by undisputed facts evidenced in the record, or the complaint

supplemented by undisputed facts plus the court's resolution of disputed facts."  *Coalition for*

*Underground Expansion v. Mineta*, 333 F.3d 193, 198 (D.C. Cir. 2003) (citations omitted).  *See*

*also Jerome Stevens Pharm., Inc. v. Food & Drug Admin.*, 402 F.3d 1249, 1253 (D.C. Cir. 2005)

("[T]he district court may consider materials outside the pleadings in deciding whether to grant a

motion to dismiss for lack of jurisdiction."); *Artis v. Greenspan*, 223 F. Supp. 2d 149, 152 n.1

(D.D.C. 2002) ("A court may consider material outside of the pleadings in ruling on a motion to

dismiss for lack of venue, personal jurisdiction or subject matter jurisdiction.").

     B.    *Federal Rule of Civil Procedure 12(b)(5)*

A court ordinarily may not exercise personal jurisdiction over a party named as a

defendant in the absence of service of process (or waiver of service by the defendant).  *See*

*Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 350 (1999) (citing *Omni*

*Capital Int'l, Ltd. v. Rudolf Wolff & Co.,* 484 U.S. 97, 104 (1987) ("Before a . . . court may

exercise personal jurisdiction over a defendant, the procedural requirement of service of

summons must be satisfied."); *Mississippi Publishing Corp. v. Murphree,* 326 U.S. 438, 444-445

(1946) ("[S]ervice of summons is the procedure by which a court . . . asserts jurisdiction over the

person of the party served.")).

Pursuant to Rule 12(b)(5), "if the plaintiff does not properly effect service on a defendant,

18

then the defendant may move to dismiss the complaint" without prejudice.  *Hilska v. Jones*, 217 F.R.D. 16, 20 (D.D.C. 2003); *see also Simpkins v. District of Columbia*, 108 F.3d 366, 369 (D.C. Cir. 1997).  "The party on whose behalf service is made has the burden of establishing its validity when challenged; to do so, he must demonstrate that the procedure employed satisfied the requirements of the relevant portions of Rule 4 and any other applicable provision of law."  *Light v. Wolf*, 816 F.2d 745, 750 (D.C. Cir. 1987) (internal quotation omitted).

C.    *Federal Rule of Civil Procedure 12(b)(6)*

The Federal Rules of Civil Procedure require that a complaint contain "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Bell Atl. Corp. v. Twombly*, 550 U.S. ___, 127 S. Ct. 1955, 1964 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)); *accord Erickson v. Pardus*, 551 U.S. ___, 127 S. Ct. 2197, 2200 (2007) (per curiam).  Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion to dismiss, to provide the "grounds" of "entitle[ment] to relief," a plaintiff must furnish "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action."  *Id*. at 1964-65; *see also Papasan v. Allain*, 478 U.S. 265, 286 (1986).  The complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  *Bell Atl.*, 127 S. Ct. at 1965 (citations omitted).[14]

---

[14] The Court notes that Plaintiffs and some Defendants erroneously state that a district court should dismiss a complaint for failure to state a claim "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations."  *See, e.g.*, Pls' Opp'n to WTU MTD at 3.  The Supreme Court rejected this "no set of facts" standard, which derives from *Conley*, in *Bell Atlantic*, stating that it was "best forgotten as an incomplete,

In evaluating a Rule 12(b)(6) motion to dismiss for failure to state a claim, the court must construe the complaint in a light most favorable to the plaintiff and must accept as true all reasonable factual inferences drawn from well-pleaded factual allegations. *In re United Mine Workers of Am. Employee Benefit Plans Litig.*, 854 F. Supp. 914, 915 (D.D.C. 1994); *see also Schuler v. United States*, 617 F.2d 605, 608 (D.C. Cir. 1979) ("The complaint must be 'liberally construed in favor of the plaintiff,' who must be granted the benefit of all inferences that can be derived from the facts alleged."). While the court must construe the Complaint in the Plaintiff's favor, it "need not accept inferences drawn by the plaintiff[] if such inferences are unsupported by the facts set out in the complaint." *Kowal v. MCI Comm'cns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994). Moreover, the court is not bound to accept the legal conclusions of the non-moving party. *See Taylor v. FDIC*, 132 F.3d 753, 762 (D.C. Cir. 1997). The court is limited to considering facts alleged in the complaint, any documents attached to or incorporated in the complaint, matters of which the court may take judicial notice, and matters of public record. *See E.E.O.C. v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997); *Marshall County Health Care Auth. v. Shalala*, 988 F.2d 1221, 1226 n.6 (D.C. Cir. 1993). Factual allegations in briefs of memoranda of law may not be considered when deciding a Rule 12(b)(6) motion, particularly when the facts they contain contradict those alleged in the complaint. *Henthorn v. Dep't of Navy*, 29 F.3d 682, 688 (D.C. Cir. 1994); *cf. Behrens v. Pelletier*, 516 U.S. 299, 309 (1996) (when a motion to dismiss is based on the complaint, the facts alleged in the

---

negative gloss on an accepted pleading standard: once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Id.*, 127 S. Ct. at 1969. According to the Supreme Court, *Conley* "described the breadth of opportunity to prove what an adequate complaint claims, not the minimum standard of adequate pleading to govern a complaint's survival." *Id.*

complaint control).

## III:  DISCUSSION

The ten pending motions to dismiss Plaintiffs' Amended Complaint contain largely overlapping arguments pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Defendants collectively argue that the Court lacks subject matter jurisdiction over Counts 1 through 3 of Plaintiffs' Amended Complaint because all of those claims are within the exclusive jurisdiction of the District of Columbia's Public Employee Relations Board ("PERB") and that, in any event, those Counts fail to state a claim for relief as to any Defendants other than the District and the Labor Union Defendants.  Defendants further argue that Plaintiffs' due process Count and generalized conspiracy allegations fail to state claims for relief against any Defendants.  In order to avoid repetition the Court does not address each Defendant's motion to dismiss individually, but rather addresses Defendants' overlapping arguments below by considering in turn each of the Counts included in Plaintiffs' Amended Complaint.  Before turning to Defendants' overlapping arguments, however, the Court briefly addresses Plaintiffs' failure to serve Defendants Smith and FOP, and then addresses Concentra, AFGE, and Sedgwick's arguments for dismissal due to improper service of process.[15]

> *A.*     *Plaintiffs Have Failed to Serve Defendants Smith and FOP*

---

[15] The Court notes that certain Defendants–AFGE, Genex/Unum, and the District–argue that the Amended Complaint should be dismissed because Plaintiffs lack Article III standing to assert various claims, an argument that ordinarily would be treated as jurisdictional and addressed at the outset.  However, while AFGE couches its argument that "AFGE cannot be said to have any connection to plaintiffs' disability compensation based claims" in terms of Article III standing, *see* AFGE Reply at 2-3, its argument more precisely claims that Plaintiffs fail to state a claim against AFGE because they do not plead causation.  In contrast, Genex/Unum and the District raise legitimate arguments concerning Plaintiffs' Article III standing to assert particular claims, which the Court addresses in the context of the individual Counts below.

On December 13, 2007, the Court issued an Order pursuant to Federal Rule of Civil Procedure 4(m), noting that more than ten months had passed since the filing of Plaintiffs' original Complaint, and that more than five months had passed since the filing of Plaintiffs' Amended Complaint.  Nevertheless, the Court noted that the record contained no evidence that a copy of either document had been served on Defendant Robert A. Smith.  In addition, the Court noted that the record was insufficient to establish that Plaintiffs had properly served Defendant FOP because Plaintiffs' Return of Service did not indicate whether service upon FOP was actually made to any individual, as required to effectively serve an organization pursuant to Federal Rule of Civil Procedure 4(h) and Local Civil Rule 4(h).  *See* Rule 4(m) Order, Docket No. [82] (citing Return of Service, Docket No. [9]; Fed. R. Civ. P. 4(h); LCvR 4(h)).

Pursuant to the Court's Rule 4(m) Order, Plaintiffs were required, on or before December 27, 2007, to cause process to be properly served upon Defendants Smith and FOP and to file proof of such service with the Court.  The Court's Rule 4(m) Order warned Plaintiffs that "'[i]f proof of service is not filed with the Court on or before December 27, 2007, the instant case shall be dismissed without prejudice as to Defendants Robert A. Smith and Department of Corrections/Fraternal Order of Police." *See* Rule 4(m) Order, Docket No. [82].  Plaintiffs have failed to respond in any way to the Court's December 13, 2007 Rule 4(m) Order.

Federal Rule of Civil Procedure 4(m) provides in pertinent part, "[i]f a defendant is not served within 120 days after the complaint is filed, the court–on motion or on its own after notice to the plaintiff–must dismiss the action without prejudice against that defendant or order that

service be made within a specified time." Fed. R. Civ. P. 4(m).[16]  Accordingly, in light of

Plaintiffs' failure to serve Defendants Smith and FOP, or to show good cause for that failure, the

Court shall dismiss this action against Defendants Smith and FOP without prejudice.

　　　B.　　Motions to Dismiss for Insufficient Service of Process

　　　AFGE, Concentra, and Sedgwick each argue that Plaintiffs' Amended Complaint must be

dismissed as against them pursuant to Federal Rule of Civil Procedure 12(b)(5) because they

were not properly served with process in this action.  As Concentra and Sedgwick are both

corporations and AFGE is an unincorporated association, service upon all three must be effected

pursuant to Federal Rule of Civil Procedure 4(h).  That Rule requires that service be effected in

the manner prescribed by Rule 4(e)(1) for serving an individual or "by delivering a copy of the

summons and of the complaint to an officer, a managing or general agent, or any other agent

authorized by appointment or by law to receive service of process . . . ."  *See* Fed. R. Civ. P.

4(h)(1).  In turn, Rule 4(e)(1) provides that service upon an individual in a judicial district of the

United States may be effected "following state law for serving a summons in an action brought in

courts of general jurisdiction in the state where the district court is located or where service is

made."  Fed. R. Civ. P. 4(e)(1).[17]  Rule 4(h) of the District of Columbia Superior Court Civil

Rules does not alter Plaintiffs' service obligations, as it is almost identical to Federal Rule of

Civil Procedure 4(h).  *See* Sup. Ct. R. Civ. P. 4(h).  Thus, to validly serve AFGE, Concentra, and

Sedgwick, Plaintiffs were required to deliver a copy of the summons and complaint "to an

---

　　　[16] The language cited by the Court reflects the non-substantive changes to Rule 4 that took effect on December 1, 2007.

　　　[17] The language cited by the Court reflects the non-substantive changes to Rule 4 that took effect on December 1, 2007.

officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process." Fed. R. Civ. P. 4(h).

As noted above, the Court may not exercise personal jurisdiction over a party named as a defendant in the absence of proper service of process, *see Murphy Bros.*, 526 U.S. at 350, and "[t]he party on whose behalf service is made has the burden of establishing its validity when challenged." *Light*, 816 F.2d at 750. Thus, Plaintiffs are required to respond to AFGE, Concentra, and Sedgwick's challenges by demonstrating that each was validly served. "To do so, [Plaintiffs] must demonstrate that the procedure employed satisfied the requirements of the relevant portions of Rule 4 and any other applicable provision of law." *Id.* Although each of the relevant Defendants clearly challenged service of process in their respective motion to dismiss Plaintiffs' Amended Complaint, Plaintiffs' Oppositions do not substantively address AFGE or Concentra's service challenges, and essentially admit Plaintiffs' failure to properly serve Sedgwick. *See* AFGE MTD Compl. at 17-19 (incorporated by reference in AFGE's Motion to Dismiss Plaintiffs' Amended Complaint, *see* AFGE MTD Am. Compl. at 5); Concentra MTD at 3-5, Sedgwick MTD Am. Compl. at 6-8; Pls' Opp'n to Sedgwick MTD at 2 ("If true, then the insufficiency of service of process would warrant a court's dismissing the Complaint, and Amended Complaint without prejudice"). The Court therefore concludes that Plaintiffs have conceded the motions to dismiss for improper service made by AFGE, Concentra, and Sedgwick. Moreover, because Plaintiffs have failed to shoulder their burden of demonstrating that AFGE, Concentra, and Sedgwick were properly served, the Court concludes that each of those Defendants' motions to dismiss pursuant to Rule 12(b)(5) should be granted on the merits.

     *1.    AFGE*

24

AFGE asserts that it "received the summons and complaint in this matter on April 2, 2007, when an unknown male personally delivered a copy of the summons and complaint to AFGE employee Carolyn Williams." AFGE MTD Compl. at 18. In her April 23, 2007 Affidavit (attached as Exhibit 1 to AFGE's Motion to Dismiss Plaintiffs' original Complaint), Ms. Williams avers that she is a Labor Relations Assistant for AFGE, and further avers "I am not, nor have I ever been, authorized to receive service of process on behalf of [AFGE]." *See* AFGE MTD Compl., Ex. 1 (4/23/07 Williams' Aff.) ¶¶ 3, 6. As Plaintiffs present no evidence to indicate that they have validly served AFGE by serving an officer, agent, or individual authorized to accept service,[18] the Court shall grant AFGE's motion to dismiss pursuant to Rule 12(b)(5).[19]

### 2.    Concentra

Concentra asserts that on "April 3, 2007, Plaintiffs had a process server deliver to Corporation Service Company ('CSC'), a Summons directed to 'Concentra Incorporated' with a copy of the Complaint." Concentra MTD at 2. However, Concentra asserts that "CSC is not an authorized registered agent for Concentra in the District of Columbia" and "[f]or that reason, on April 5, 2007, CSC returned service of process to Plaintiffs' attorney." *Id.* Concentra supports

---

[18] Plaintiffs' Opposition to AFGE's Motion to Dismiss appears to be largely a carbon copy of their Opposition to Sedgwick's Motion to Dismiss, because Plaintiffs inexplicably assert that dismissal of their Amended Complaint without prejudice "would allow Plaintiffs to file against this Defendant, under the name of CMI Octagon, A AFGE CMI Company." *See* Pls' Opp'n to AFGE MTD at 2.

[19] AFGE's Motion to Dismiss Plaintiffs' Amended Complaint also argues for dismissal pursuant to Rule 12(b)(6) "because there is no conceivable reading of the Amended Complaint under which Plaintiffs assert a claim against AFGE National," as opposed to the AFGE local unions to which Plaintiffs may have belonged. *See* AFGE MTD Am. Compl. at 12-13. The Court need not address this argument because, as discussed below, each of Plaintiffs' legal claims shall be dismissed on the merits on other grounds.

these assertions with the June 25, 2007 Declaration of Eleanor J. Thompson, Assistant Corporate Secretary of Concentra. *See* Concentra MTD, Ex. A (6/25/07 Thompson Decl.). Ms. Thompson avers that "Concentra does not have an appointed registered agent for acceptance of service of process in the District of Columbia. Corporation Service Company ("CSC") is not Concentra's authorized agent for service of process in the District of Columbia." *Id.* ¶ 6. Ms. Thompson further avers that when "CSC advised Concentra that Plaintiffs had attempted to serve a Summons and Complaint in [this] case on Concentra in Washington, D.C. through CSC, Concentra informed CSC that it was not authorized to accept service on behalf of Concentra[,]" and "CSC immediately thereafter advised Plaintiffs that CSC was not authorized to accept service for Concentra and rejected service." *Id.* ¶¶ 7-8 (citing Ex. A, 4/5/07 Letter from CSC to Plaintiffs' Counsel).

Plaintiffs make no response whatsoever to Concentra's service challenge.[20] Nor do Plaintiffs proffer any explanation for–as Concentra notes–submitting documentation to this Court indicating that Concentra was personally served with the Summons and Complaint in this matter on April 3, 2007. *See* Return of Service, Docket No. [9]. Based on Ms. Thompson's Declaration

---

[20] Plaintiffs likewise fail to respond to Concentra's argument that, absent proper service of process, this Court lacks personal jurisdiction over Concentra because it does not do business in the District of Columbia. *See* Concentra MTD at 2. Concentra's assertion is supported by Ms. Thompson's Declaration, in which she states "Concentra cannot be found within the federal judicial district of the District of Columbia. Concentra does not transact business in Washington, D.C., and has not entered into any contracts to supply services in the District of Columbia. Concentra does not have a license to do business in the District of Columbia. Concentra does not hold or own property in the District of Columbia. Concentra does not have any employees in the District of Columbia." Concentra MTD, Ex. A ¶ 5. Under Federal Rule of Civil Procedure 12(b)(2), a plaintiff bears the burden of establishing a factual basis for personal jurisdiction over the defendant(s). *See Crane v. N.Y. Zoological Soc'y*, 894 F.2d 454, 456 (D.C. Cir. 1990). As such, the plaintiff must allege specific acts connecting the defendant(s) with the forum. *See Second Amendment Found. v. U.S. Conference of Mayors*, 274 F.3d 521, 524 (D.C. Cir. 2001).

and the accompanying Exhibit A, it appears clear that Plaintiffs' process server attempted to serve Concentra by delivering a copy of the Summons and Complaint to CSC, and not by individually serving Concentra.  As such, it further appears that Plaintiffs misled this Court by filing an inaccurate Return of Service indicating that Concentra had been personally served with process.  For the foregoing reasons, the Court shall grant Concentra's motion to dismiss pursuant to Rule 12(b)(5).

3.    *Sedgwick*

Sedgwick asserts that "the Summons and original Complaint [in this matter] were left with Diane Willkins ('Ms. Willkins'), a Customer Service Representative for CMI Octagon 'A Sedgwick CMS Company,' by an unknown male who handed them to her at [Sedgwick's] reception desk on April 3, 2007."  Sedgwick MTD Am. Compl. at 8.  However, according to Sedgwick, Ms. Willkins is not authorized to receive service of process on behalf of Sedgwick. *Id.*  This assertion is supported by Ms. Willkins' May 17, 2007 Affidavit, in which she avers that she is employed as a Customer Service Representative and further avers, "I am not, nor have I ever been, an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process on behalf of my employer."  *See* Sedgwick MTD Am. Compl., Ex. 1 (5/17/07 Willkins Aff.) ¶ 5.  As noted above, Plaintiffs appear to concede that they have not validly served Sedgwick.  *See* Pls' Opp'n to Sedgwick MTD at 2.  In any event, as Plaintiffs present no evidence to indicate that they have validly served Sedgwick, the Court shall grant Sedgwick's motion to dismiss pursuant to Rule 12(b)(5).

Plaintiffs' insufficient service upon AFGE, Concentra, and Sedgwick warrants the Court's dismissing Plaintiffs' Amended Complaint as against those Defendants without

prejudice. *See Simpkins*, 108 F.3d at 369. Nevertheless, the Court considers AFGE, Concentra, and Sedgwick's arguments pursuant to Rules 12(b)(1) and 12(b)(6) because those arguments overlap with, and are largely indistinguishable from, the arguments raised by other Defendants. Insofar as the Court ultimately concludes that Plaintiffs' claims must be dismissed pursuant to Rules 12(b)(1) and 12(b)(6), those conclusions apply equally to Plaintiffs' claims against AFGE, Concentra, and Sedgwick. Moreover, the Court notes that the interest of judicial economy is served by reaching the merits of Plaintiffs' claims against AFGE, Concentra, and Sedgwick at this time, rather than delaying the inevitable by allowing Plaintiffs to file another lawsuit against those Defendants containing the same meritless claims. *Cf. Simpkins*, 108 F.3d at 369-70 (affirming district court's dismissal of *Bivens* action on the merits, notwithstanding the district court's conclusion that the plaintiff had failed to properly serve the defendant).

C.     *Plaintiffs' Purported Federal Law Claims*

The Court now turns to considering Defendants' arguments for dismissal of Counts 1 through 4–the substantive Counts–of the Amended Complaint. In so doing, the Court first addresses Count 4, Plaintiffs' due process claim, as well as the scattered allegations in the Amended Complaint of other federal law violations. Counts 1 through 3 of the Amended Complaint assert claims for breach of contract, breach of collective bargaining agreement, and breach of duty of fair representation in connection with Plaintiffs' employment by the District. Plaintiffs do not dispute that these claims arise out of local and common law, rather they assert that the "State claims are proper in this Honorable Court based upon Supplemental Jurisdiction." Am. Compl. ¶ 1. Plaintiffs are correct that a federal district court may exercise supplemental jurisdiction over state law claims if they are "so related to the claims in the action within such

original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367(a). However, the decision to exercise supplemental jurisdiction is discretionary. *Shekoyan v. Sibley Int'l*, 409 F.3d 414, 423 (D.C. Cir. 2005) (citing *United Mine Workers Ass'n v. Gibbs*, 383 U.S. 715, 726 (1966)). Furthermore, pursuant to 28 U.S.C. § 1367(c)(3), a district court "may decline to exercise supplemental jurisdiction over a claim [that forms part of the same case or controversy] if . . . the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3).[21] The Court therefore considers the merits of Plaintiffs' purported federal law claims before turning to Counts 1 through 3 of the Amended Complaint.

As an initial matter, the Court addresses AFSCME's argument that this Court lacks jurisdiction over Plaintiffs' claims under federal law because those claims fall within the exclusive jurisdiction of the PERB. In support of this argument, AFSCME cites to *Johnson v. District of Columbia*, 368 F. Supp. 2d 30 (D.D.C. 2005), in which the court concluded that a plaintiff was required to exhaust the remedies available to him before the PERB prior to filing a lawsuit asserting a constitutional claim. *Id.* at 44. In *Johnson*, however, the court noted that such an exhaustion requirement is appropriate where "the administrative process is fully capable of granting full relief." *Id.* (citing *Andrade v. Lauer*, 729 F.2d 1475, 1493 (D.C. Cir. 1984)). To that end, the D.C. Circuit has found that the CMPA did not preclude a plaintiff from bringing a federal law claim in district court where the D.C. system was unable to "grant appellant the full relief requested in connection with his federal claims," i.e., punitive damages. *See Bridges v. Kelly*, 84 F.3d 470, 476-77 (1996); *Crockett v. District of Columbia Metro. Police Dep't*, 293 F.

---

[21] Plaintiffs do not attempt to ground jurisdiction over this action in diversity of citizenship pursuant to 28 U.S.C. § 1332.

Supp. 2d 63 (D.D.C. 2003) (applying *Bridges*). Like the plaintiff in *Bridges*, Plaintiffs herein

seek punitive damages, which the D.C. administrative process cannot grant. As such, it does not

appear that the CMPA deprives this Court of jurisdiction over Plaintiffs' constitutional claim.

*See also Am. Fed. of Gov't Employees, Local 3721 v. District of Columbia*, No. Civ. A. 05-0472

(JDB), 2005 WL 1017877, at * 5 (D.D.C. May 2, 2005) (concluding that the CMPA does not

preempt federal constitutional claims).

### 1. *Count 4 of the Amended Complaint*

While the Amended Complaint contains numerous references to various provisions of

federal law, Count 4 is the only delineated substantive Count of the Amended Complaint that

arises under federal law. In Count 4, Plaintiffs assert that they are "City employees who have a

property interest in their employment, who can only be disciplined, refused benefits and/or fired

for good cause, and who are entitled to pre-termination and post-termination hearings and

process," and allege that the District and the Labor Union Defendants violated Plaintiffs'

substantive and procedural due process rights through unspecified "acts and omissions." Am.

Compl. ¶¶ 74-75.[22] The District and the Labor Union Defendants all argue that Count 4 must be

---

[22] Although Plaintiffs do not include such allegations within the scope of Count 4, the Amended Complaint also claims that "Plaintiffs were and are entitled to administrative remedies and notice as to what administrative remedies are available to [them]," and that the District's various "agencies have failed to inform the Plaintiffs in writing as to what the administrative remedy process is." Am. Compl. ¶¶ 33[C], [E]. The Court notes that Plaintiffs cannot make out a due process claim based on the District's alleged failure to adopt and apply sufficient written standards and guidelines. *See Lightfoot v. District of Columbia*, 448 F.3d 392, 398 (D.C. Cir. 2006) (rejecting "claim that the Due Process Clause may impose a requirement of substantive standards-independent of statutory standards-that may be used to restrict an administrative agency's decision to terminate or modify a protected liberty or property interest" because "the CMPA and D.C. court of appeals decisions themselves provide ample standards that would satisfy any such due process claim.").

dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim.

Plaintiffs do not offer a substantive response to Defendants' arguments, but simply assert that

they "meet the constitutional standards required to state a claim under 42 U.S.C. § 1983." *See,*

*e.g.*, Pls' Opp'n to District MTD at 2.

a.    *Identifying the Legal Basis for Count 4*

Although Count 4 does not identify the legal basis for Plaintiffs' due process claim,

elsewhere in the Amended Complaint Plaintiffs refer to both the Fourteenth Amendment to the

United States Constitution and 42 U.S.C. § 1983. *See* Am. Compl.¶ 1. As will be seen below,

Plaintiffs' due process claim is deficient in numerous respects, the first of which is that Section

1983–the federal law grounds on which Plaintiffs appear to base their entire action–does not

actually create any substantive rights. *See Chapman v. Houston Welfare Rights Org.*, 441 U.S.

600, 617 (1989). Section 1983 provides a cause of action for constitutional violations committed

by those acting under the color of State law, but "one cannot go into court and claim a 'violation

of § 1983'-for § 1983 by itself does not protect anyone against anything." *Id.* Thus, while

Section 1983 might provide Plaintiffs with a means by which to vindicate a violation of their

constitutional rights, Plaintiffs must also identify the basis for the alleged constitutional

violation.

Plaintiffs apparently base their claim of a constitutional violation in the Fourteenth

Amendment, but this allegation is equally flawed because the Fourteenth Amendment does not

apply to the District of Columbia. *See Bolling v. Sharpe*, 347 U.S. 497, 498-99 (1954).

Moreover, even assuming *arguendo* that Plaintiffs properly brought an action pursuant to 42

U.S.C. § 1983 alleging a violation of the due process clause of the Fifth Amendment, the

31

Amended Complaint does not establish that the Labor Union Defendants would be proper

Defendants to that action.  In order for an action to fall within the rubric of 42 U.S.C. § 1983,

such action must be taken "under color of any statute, ordinance, regulation, custom, or usage, of

any State or Territory or the District of Columbia."  42 U.S.C. § 1983.  A person acts under

"color of law" if he exercises power "possessed by virtue of state law and made possible only

because the wrongdoer is clothed with the authority of state law."  *United States v. Classic*, 313

U.S. 299, 326 (1941).  An individual alleging a violation of Section 1983 must demonstrate that

the alleged deprivation of constitutional rights was committed by a person or entity acting under

color of state law.  *West v. Atkins*, 487 U.S. 42, 48 (1988); *Hoai v. Vo*, 935 F.2d 308, 312 (D.C.

Cir. 1991).  Plaintiffs' Amended Complaint does not allege that the Labor Union Defendants are

or were state actors in the context of Plaintiffs' terminations or the denials of their workers'

compensation claims.  Nor does the Amended Complaint–in Count 4 or elsewhere–proffer

factual allegations sufficient to demonstrate that the Labor Union Defendants are or were state

actors.  *See Brug v. Nat'l Coalition For The Homeless*, 45 F. Supp. 2d 33, 42-43 (1999) ("it is

well-settled that the existence of state action is a highly fact-based inquiry") (citing *Burton v.

Wilmington Parking Authority*, 365 U.S. 715, 726 (1961)).  As such, the Court concludes that,

even if Plaintiffs actually alleged a violation of the Fifth Amendment's due process clause, they

have not established that the Labor Union Defendants could be properly named as Defendants in

such an action.

> b.    *Plaintiffs' Due Process Claim Against the District*

The Court turns, then, to Plaintiffs' amorphous allegations that the District violated their

procedural and substantive due process rights in connection with their terminations and the

denials of their workers' compensation claims.  Count 4 does not specify the basis of either

allegation, and the Court addresses each in turn.

i.      *Substantive Due Process*

The Court easily dispenses with Plaintiffs' substantive due process claim.  As the D.C.

Circuit has recently reiterated, "the Due Process Clause specially protects those fundamental

rights and liberties which are, objectively, deeply rooted in this Nation's history and tradition and

implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they

were sacrificed." *Abigail Alliance for Better Access to Developmental Drugs v. von Eschenbach*,

495 F.3d 695, 702 (D.C. Cir. 2007) (en banc) (citing *Washington v. Glucksberg*, 521 U.S. 702,

720 (1997)).  However, in substantive due process cases, courts require "a careful description of

the asserted fundamental liberty interest," *id.*, and courts have consistently held that "there is no

fundamental right to government employment," *United Bldg. & Constr. Trades Council v. Mayor

& Council of Camden,* 465 U.S. 208, 219 (1984).  *See also Am. Federation of Gov't Employees,

AFL-CIO v. United States,* 330 F.3d 513, 523 (D.C. Cir.2003).

Furthermore, "[t]o assert a substantive due process violation . . . the plaintiff must []

show that the District of Columbia's conduct was 'so egregious, so outrageous, that it may fairly

be said to shock the contemporary conscience.'" *Butera v. District of Columbia*, 235 F.3d 637,

651 (D.C. Cir. 2001) (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 845 (1998)).  And,

to succeed in a § 1983 suit for damages for a substantive due process violation, Plaintiffs "must

at least show that state officials are guilty of grave unfairness in the discharge of their legal

responsibilities." *Silverman v. Barry*, 845 F.2d 1072, 1080 (D.C. Cir. 1988).  Indeed, "a mere

violation of law does not give rise to a due process claim." *Am. Fed. of Gov't Employees, AFL-*

33

*CIO, Local 446 v. Nicholson*, 475 F.3d 341, 353 (D.C. Cir. 2007). Here, the Amended

Complaint does not even claim that the District violated the CMPA in allegedly terminating

Plaintiffs and denying their workers' compensation claims. Nor do Plaintiffs allege facts

sufficient to demonstrate any violation of the CMPA. As such, it is clear that Plaintiffs do not

allege the type of conduct that shocks the conscience, which is required to state a claim for a

substantive due process violation.

*ii.    Procedural Due Process*

Plaintiffs' procedural due process claim is similarly infirm, because Plaintiffs do not

actually identify the process of which they were allegedly deprived. "Procedural due process

imposes constraints on governmental decisions which deprive individuals of 'liberty' or

'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth

Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 323 (1976). As an initial matter, the Court

addresses the District's suggestion that Plaintiffs' procedural due process claim fails because

Plaintiffs do not sufficiently allege that they have been deprived of a legitimate property interest.

*See* District MTD at 5. The District is correct that "[t]o have a property interest in a benefit, a

person clearly must have more than an abstract need or desire for it. He must have more than a

unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Board

of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972). Moreover, property interests are

not created by the Constitution. *Id.* Instead, "they are created and their dimensions are defined

by existing rules or understandings that stem from an independent source such as state law-rules

or understandings that secure certain benefits and that support claims of entitlement to those

benefits." *Id.*

34

"For a plaintiff to survive a motion to dismiss under Rule 12(b)(6), he must allege, at a minimum, that he has been deprived of either a life, liberty, or property interest protected by the due process clause." *Save Our Schools-Southeast & Northeast v. District of Columbia Bd. of Educ.*, Civil Action No. 04-1500 (HHK), 2006 WL 1827654, *14 (D.D.C. Jul. 3, 2006) (citing *Mathews*, 424 U.S. at 333; *Roth*, 408 U.S. at 570-72); *see also McCain v. United States*, Civil Action No. 06-1701, 2007 WL 1127883, *3 (D.D.C. Apr. 16, 2007). Here, Plaintiffs simply allege that they are "City employees who have a property interest in their employment." Am. Compl. ¶ 74. This bare allegation does not actually indicate the provenance of Plaintiffs' alleged property interest or establish that they have a "legitimate claim of entitlement to it." *Roth*, 408 U.S. at 577. However, the Court is well aware that the "CMPA establishes a merit personnel system that, among other things, provides for . . . employee discipline through 'adverse action' proceedings[,] . . . prompt handling of employee 'grievances[,]'" and disability compensation for District employees. *District of Columbia v. Thompson*, 593 A.2d 621, 625 (D.C. 1991); *see also* D.C. Code §§ 1-616.51 to -616.53 and 1.623.01 *et seq.* While Plaintiffs would be better served by identifying the CMPA as the source of their property interest, "[i]t is undisputed that the Comprehensive Merit Protection Act creates a property interest for employees governed by it." *Fonville v. District of Columbia*, 448 F. Supp. 2d 21, 26 (D.D.C. 2006).

As such, the Court assumes *arguendo* that Plaintiffs have a legitimate property interest in their continued employment by the District or in the receipt of the disability compensation benefits provided in the CMPA. Plaintiffs' procedural due process claim nevertheless fails, because Plaintiffs do not allege facts which, if taken as true, suggest that Plaintiffs were deprived of any process due them under the CMPA. Plaintiffs broadly assert that they "can only be

35

disciplined, refused benefits and/or fired for good cause, and [] are entitled to pre-termination

and post-termination hearings and process." Am. Compl. ¶ 74. Plaintiffs do not, however,

identify the specific process that the District allegedly failed to afford each of them. Plaintiff

Massey does not even allege that she was terminated by the District or filed a workers'

compensation claim. *Id.* ¶ 4. With respect to those Plaintiffs who allegedly filed workers'

compensation claims, the Amended Complaint includes varying levels of detail as to the nature

of their claims and alleges that all of Plaintiffs' claims were unjustifiably denied, but across the

board fails to specify any procedural safeguards to which Plaintiffs were entitled but failed to

receive. *See* Am. Compl. ¶¶ 2, 3, 6, 8, 9, 11-15 (allegations regarding Plaintiffs McManus,

Nixon, Workcuff, Dillon, Tucker, Hobby, Diggs, Lewis, Coe, and Scott). Similarly, Plaintiffs

Mitchner, Clark, Smith, Diggs, and Mahoney challenge their terminations by the District, without

identifying the pre- or post-termination process of which they were allegedly deprived. *See id.* ¶¶

5, 7, 10, 12, 17.[23] As the Supreme Court has recently reiterated, "[f]actual allegations must be

enough to raise a right to relief above the speculative level, on the assumption that all the

allegations in the complaint are true (even if doubtful in fact)." *Bell Atl.*, 127 S. Ct. at 1965

(citations omitted). Because it is devoid of allegations as to the actual process purportedly

denied particular Plaintiffs, the Amended Complaint does not raise Plaintiffs' procedural due

---

[23] The most specific allegation made is Plaintiff Clark's allegation that he attempted to appeal his termination but "was denied to be heard and never received any termination papers." Am. Compl. ¶ 7. Even Plaintiff Clark, however, fails to allege specific facts regarding the denial of his appeal, such that it is impossible to determine whether that alleged denial violated either the CMPA or Plaintiff Clark's procedural due process rights.

36

process claim "above the speculative level" to the realm of plausibility. *Id.*[24]

In sum, Count 4 of Plaintiffs' Amended Complaint simply lacks sufficient factual allegations to substantiate their conclusory claim that the District has violated their substantive and procedural due process rights. The Court shall therefore dismiss Count 4 pursuant to Federal Rule of Civil Procedure 12(b)(6).

### 2.    *Plaintiffs' Other References to Federal Law*

Count 4 is the only actual Count of the Amended Complaint predicated on federal law. In addition, the first paragraph of the Amended Complaint asserts that Plaintiffs' claims are brought pursuant to a number of federal laws, including 42 U.S.C. §§ 1981, 1983, 1986, 1988, 2000(e), and generally alleges that Defendants engaged a conspiracy to deprive Plaintiffs of their constitutional rights under color of law. *See* Am. Compl. ¶ 1. The Court therefore briefly addresses Plaintiffs' constitutional conspiracy claim as well as their other purported federal law bases for this action.

---

[24] Plaintiffs likewise fail to identify the injury that each of them suffered as a result of the District's alleged due process violation. As the District notes, Plaintiffs "set forth collective and generalized injuries such as poverty, homelessness, economic disadvantage and emotional and physical suffering . . . none of which have been plead with even modest detail." District MTD. at 7. The District asserts that this failure deprives Plaintiffs of Article III standing because they allege only a generalized grievance, but do not demonstrate a concrete, actual, or imminent injury. *Id.* at 8. In response, Plaintiffs correctly note that the Amended Complaint alleges that they have been denied due process, *see* Am. Compl. ¶ 76, and assert that the "denial of due process IS damage, and has led to further damages." *See* Pls' Opp'n to District MTD at 7. Although Plaintiffs do not argue as much, the Court concludes that their failure to indicate specific injuries as a result of the District's alleged denial of procedural due process would not, in and of itself, deprive them of Article III standing because the Supreme Court has found that "the denial of procedural due process should be actionable for nominal damages without proof of actual injury." *Carey v. Piphus*, 435 U.S. 247, 266 (1978). Nevertheless, even if Plaintiffs have Article III standing to challenge the District's alleged denial of due process, because Plaintiffs fail to state a claim to that effect, the Court shall dismiss Count 4 of the Amended Complaint.

a.     *Plaintiffs' Conspiracy Allegations*

Plaintiffs generally allege that Defendants engaged in a conspiracy to deprive Plaintiffs of access to administrative remedies in connection with their terminations or the denials of their workers' compensation claims, in violation of their due process rights.  *See* Am. Compl. ¶¶ 32-35.[25]  While Plaintiffs do not identify the legal basis of their conspiracy allegations, the Court assumes that they purport to rely upon 42 U.S.C. § 1985, which creates a civil cause of action for conspiracy to interfere with civil rights.  *See* 42 U.S.C. § 1985.  An essential element of any conspiracy claim is the existence of some actual conspiracy.  *See id.*; *Halberstam v. Welch*, 705 F.2d 472, 477 (D.C. Cir. 1983).  A conspiracy is a "combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal

---

[25] In their Oppositions, Plaintiffs assert that "Count I of the Amended Complaint states the conduct by which [each Defendant] and its conspirator UNUM Provident employed their policy and practice to deny [Plaintiffs'] valid claims for disability insurance." *See, e.g.*, Pls' Opp'n to District MTD at 7.  This assertion is absolutely devoid of merit for a number of reasons. Most fundamentally, Count I of the Amended Complaint does not allege that Defendants denied Plaintiffs' valid claims for disability insurance, rather it alleges that Defendants breached the employment contract between the District and its employees by failing "to engage in meaningful mediation, other dispute resolution efforts, or arbitration, and the denial of prompt grievance hearings." Am. Compl. ¶¶ 56-59.  Plaintiffs have not sought to amend the Amended Complaint, and "[i]t is axiomatic that a complaint may not be amended by the briefs in opposition to a motion to dismiss." *Arbitraje Casa de Cambio, S.A. v. United Postal Serv.*, 297 F. Supp. 2d 165, 170 (D.D.C. 2003) (citing *Coleman v. Pension Benefit Guar. Corp.*, 94 F. Supp. 2d 18, 24 n. 8 (D.D.C. 2000)).  Furthermore, as discussed above, Plaintiffs' assertion that Defendants conspired with Unum to deny valid disability insurance claims is entirely unsupported by factual allegations because Plaintiffs do not allege either that they were insured under long-term disability insurance plans issued by Unum or its subsidiaries, or that Unum was in any way involved in administering the District's workers' compensation disability benefits. *See supra* at 8-10.  Finally, to the extent that Plaintiffs' Oppositions suggest that Defendants conspired with Unum to violate the RSA, *see* Pls' Opp'n to District MTD at 5-6, this allegation is meritless because Plaintiffs do not demonstrate how the RSA is relevant to their alleged workers' compensation claims against the District or allege that any Defendant other than Unum was a party to the RSA. *See supra* at 8-10.

element of which is an *agreement* between the parties to inflict a wrong against or injury upon another, and an overt act that results in damage." *Brady v. Livingood*, 360 F. Supp. 2d 94, 104 (D.D.C. 2004) (quoting *Graves v. United States*, 961 F. Supp. 314, 319-20 (D.D.C. 1997)). To survive a motion to dismiss for failure to state a claim, a plaintiff must set forth more than just conclusory allegations of an agreement. *See Bell Atl.*, 127 S. Ct. at 1965-66 (holding in the context of an antitrust claim that "stating a [conspiracy] claim requires a complaint with enough factual matter (taken as true) to suggest that an agreement was made," and noting that "a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality.").

Here, Plaintiffs generally allege that the Defendants entered into an agreement to violate Plaintiffs' rights.[26]  The most specific allegations of an agreement are contained in paragraphs 34 and 35 of the Amended Complaint, which allege that Defendants agreed (1) that the Labor Union Defendants would not challenge the "maze of unpublished regulations . . . in violation of the collective bargaining agreement between the Union Defendants and the city," *id.* ¶ 34; and (2) "to employ the health care Defendants as third parties, who will create policies and procedures, which are impossible to comply with, and that the Defendants . . . knew or should have known [would] violat[e] the civil rights and due process rights of the Plaintiffs," *id.* ¶ 35.  Even these allegations, however, fail to raise Plaintiffs' allegation of an agreement beyond the speculative and into the level of plausible. *See Bell Atl.*, 127 S. Ct. at 1965.  Plaintiffs fail to allege "the

---

[26] In their Opposition to the District's Motion to Dismiss, Plaintiffs argue that the District may be named as a Defendant in connection with Plaintiffs' conspiracy allegations.  *See* Pls' Opp'n to District MTD at 3-4.  This argument is inapposite because the District does not dispute that it may properly be named as a Defendant, rather it asserts that Plaintiffs fail to state a claim for conspiracy.

existence of any events, conversations, or documents indicating that there was ever an agreement or 'meeting of the minds' between any of the defendants" to violate Plaintiffs' due process rights or any other civil or constitutional rights. *McCreary v. Heath*, No. Civ. A. 04-0623 (PLF), 2005 WL 3276257, at *5 (D.D.C. Sept. 26, 2005). In the absence of such allegations, Plaintiffs' Amended Complaint boils down to a conclusory and purely speculative assertion that Defendants entered into a conspiracy.[27]

Plaintiffs' conspiracy allegations also fail to state a claim for relief for two additional reasons. First, to the extent that Plaintiffs' conspiracy claim may be based upon 42 U.S.C. § 1985(3), Plaintiffs do not allege that Defendants' purported conspiracy was motivated by some class-based, invidiously discriminatory animus, an essential element of a conspiracy claim under that section. *United Bhd. of Carpenters and Joiners of America v. Scott*, 463 U.S. 825, 835 (1983). This element is required in order to avoid converting Section 1985 into a general federal tort law claim, *see Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 267-68 (1993), but the Amended Complaint does not identify Plaintiffs' races, or provide any other basis on which to conclude that they are united in a single protected class. Second, because conspiracy is not an independent cause of action, "liability for civil conspiracy depends upon performance of some underlying tortious act." *Halberstam*, 704 F.2d at 479. As discussed above, Plaintiffs fail to state a claim for a due process violation, and they provide no allegations as to any other civil or constitutional right allegedly violated by Defendants. For all of the foregoing reasons, the Court

---

[27] In some of their Oppositions, Plaintiffs point to paragraphs 56, 57, 60, 61, and 73 as alleging facts sufficient to demonstrate the existence of a conspiracy. *See, e.g.*, Pls' Opp'n to Sedgwick MTD at 6. Those paragraphs are entirely irrelevant to Plaintiffs' conspiracy allegation as they either incorporate by reference other paragraphs of the Amended Complaint or allege a breach of contract or collective bargaining agreement.

concludes that Plaintiffs fail to state a conspiracy claim.  Moreover, because Plaintiffs do not state a claim for relief under 42 U.S.C. § 1985, they cannot make out a claim pursuant to 42 U.S.C. § 1986.  *See McCreary*, 2005 WL 3276257, at *6 (citing *Thomas v. New World Communications*, 681 F. Supp. 55, 72 (D.D.C. 1988), for the proposition that a plaintiff cannot state a claim under Section 1986 unless he can state a valid claim under Section 1985).

> b.    *Other Federal Statutes*

While the first paragraph of the Amended Complaint asserts that it is brought pursuant to 42 U.S.C. §§ 1981, 1983, 1986, 1988, and 2000(e), the remainder of the Amended Complaint does not proffer further allegations as to any of these purported grounds for relief.  Am. Compl. ¶ 1.  As an initial matter, the Court notes that various Defendants assert challenges to Plaintiffs' assorted federal law claims in their motions to dismiss, and that Plaintiffs do not respond to these challenges in their Oppositions.  *See, e.g.*, Corvel MTD at 8-9.  Plaintiffs thus appear to concede that they cannot state a claim for relief pursuant to 42 U.S.C. §§ 1981, 1983, 1986, 1988, or 2000(e).  Nevertheless, the Court briefly addresses Plaintiffs' invocation of the foregoing statutes, concluding that Plaintiffs cannot state a claim for relief pursuant to any of them.

First, Plaintiffs cannot state a claim pursuant to Section 1981, which prohibits racial discrimination in the making and enforcement of private contracts, because they do not allege that Defendants' conduct was in any way connected to their race (and do not even state their individual races).  *See* 42 U.S.C. § 1981; *see also Runyon v. McCrary*, 427 U.S. 160, 167-169 (1976).  Similarly, Plaintiffs cannot state a claim pursuant to Section 2000e, *et seq.* (Title VII of the Civil Rights Act of 1964), which governs equal employment opportunities, because they do not allege that they are members of any of the classes protected by that statute.  *See* 42 U.S.C. §

2000e-2 (listing race, color, religion, sex, and national origin).  To reiterate, Section 1983 does

not create any substantive rights, and Plaintiffs do not identify any alleged constitutional or

statutory violations (other than the due process claim discussed above) that could be pursued via

42 U.S.C. § 1983.  *See Chapman*, 441 U.S. at 617.  Finally, Plaintiffs' reliance upon 42 U.S.C. §

1988 is inapposite, as that statute governs the jurisdiction and procedure of federal courts with

respect to civil rights claims and does not create a cause of action.  42 U.S.C. § 1988.

Based on the foregoing, the Court concludes that Plaintiffs fail to state a claim for relief

pursuant to any federal law and shall dismiss Count 4 of the Amended Complaint as well as all

other allegations based on federal law.

D.      *Plaintiffs' Other Substantive Claims–Counts 1 Through 3*

Counts 1, 2, and 3 of Plaintiffs' Amended Complaint respectively allege claims for

breach of contract, breach of collective bargaining agreement, and breach of duty of fair

representation, predicated on common law and local law.  However, as a number of Defendants

correctly argue, the Court is bound to conclude that it lacks subject matter jurisdiction over those

claims because they lie within the exclusive jurisdiction of the District of Columbia's Public

Employee Relations Board.[28]

Count 1 is brought against all Defendants, alleging a violation of the District's

employment contract with its employees, "consisting in part of a Collective Bargaining

Agreement between the City and the Unions, and present and past employment practices," in the

_____

[28] Even if the Court could assert subject matter jurisdiction over Plaintiffs' claims for
breach of contract, breach of collective bargaining agreement, and breach of fair duty of
representation, in light of the Court's dismissal of Plaintiffs' federal law claim, it would be
entirely appropriate for the Court to decline to exercise supplemental jurisdiction over Plaintiffs'
local law claims.  *See* 28 U.S.C. § 1367(c)(3).

form of Defendants' "failures to engage in meaningful mediation, other dispute resolution

efforts, or arbitration, and the denial of prompt grievance hearings."  Am. Compl. ¶¶ 56-59.

Count 2 alleges that all Defendants conspired to violate the collective bargaining agreements in

effect between the Labor Union Defendants and the District by denying prompt disciplinary and

contract grievance hearings.  *Id.* ¶¶ 60-63.  Finally, Count 3 is brought against the Labor Union

Defendants, alleging that they breached their duties "to engage in negotiations in good faith and

to represent and advance the rights and interests of the Plaintiffs in meritorious grievance claims"

and fraudulently collected union dues that they knew they had not earned  *Id.* ¶¶ 64-72.  As an

initial matter, although Counts 1 and 2 are brought against all of Defendants, they fail to allege

that any Defendants other than the Labor Union Defendants and the District are parties to or

otherwise bound by the employment contracts and collective bargaining agreements at issue.

The Court therefore concludes that Counts 1 and 2 of the Amended Complaint fail to state claims

against the Defendants other than the Labor Union Defendants and the District.  *Cf. Baker v.*

*Newspaper and Graphic Comm'ns Union, Local 6*, 628 F.2d 156, 165 (D.C. Cir. 1980)

(international union could not be held responsible for local's alleged violation of its duty of fair

representation because it was not a party to the collective bargaining agreement).

　　　　Furthermore, as noted above, the "CMPA establishes a merit personnel system that,

among other things, provides for . . . employee discipline through 'adverse action' proceedings[,]

. . . prompt handling of employee 'grievances[,]'" and disability compensation for District

employees.  *District of Columbia v. Thompson*, 593 A.2d at 625.  The CMPA is "plainly

intended" to "create a mechanism for addressing virtually every conceivable personnel issue

among the District, its employees, and their unions-with a reviewing role for the courts as a last

43

resort, not a supplementary role for the courts as an alternative forum." *Id.* at 634. Under the CMPA, employees may appeal an adverse action resulting in removal to the District of Columbia's Office of Employee Appeals, with a right of review in the District of Columbia Superior Court. *See* D.C. Code §§ 1-606.03, -616.62. The CMPA also provides that an employee who is dissatisfied with an initial decision regarding the payment of disability compensation may request reconsideration, as well as a hearing on the claim before a Department of Employment Services ("DOES") Disability Compensation Administrative Law Judge. *See* D.C. Code § 1-623.24. In addition, a claimant may apply for review by the DOES Director, and may then appeal to the District of Columbia Court of Appeals. *Id.* § 1-623.28.

The District of Columbia Court of Appeals has consistently held that the CMPA provides the exclusive avenue for aggrieved District employees to pursue work-related complaints. *See Holman v. Williams*, 436 F. Supp. 2d 68, 74 (D.D.C. 2006) (citing, *inter alia*, *Stockard v. Moss*, 706 A.2d 561, 567 (D.C. 1997) ("[T]he CMPA provides the exclusive remedy for claims falling within its ambit")). Notably, none of the CMPA provisions discussed above provide ultimate recourse in this Court; District employees must pursue adverse actions before the OEA and then in Superior Court, and must pursue workers' compensation claims before DOES and then in the District of Columbia Court of Appeals. As a result, numerous courts in this Circuit have concluded that they lack jurisdiction to entertain employment-related claims brought by District employees that fall within the province of the CMPA. *See Thompson v. District of Columbia*, 428 F.3d 283, 288 (D.C. Cir. 2005) ("the CMPA strips the court of jurisdiction over [plaintiff's] claims"); *Holman*, 436 F. Supp. 2d 74, 76 ("Preemption by the CMPA divests the trial court-whether it be the Superior Court or this Court-of subject matter jurisdiction"); *Jackson v. District*

44

*of Columbia*, Civ. A. No. 06-1347 (EGS), 2007 WL 1307891, at *2 (same).  Thus, to the extent

that Counts 1 through 2 purport to substantively challenge Plaintiffs' alleged terminations or the

denial of their workers' compensation claims, those claims may only be asserted via the

mechanisms provided by the CMPA, and not in an action before this Court.

Similarly, insofar as Counts 1, 2, and 3 of the Amended Complaint claim that the Labor

Union Defendants breached their duties of fair representations to Plaintiffs, that claim falls

within the CMPA and the Court is deprived of jurisdiction to entertain it.  The CMPA makes a

union's breach of its duty of fair representation an unfair labor practice, and grants the PERB

exclusive jurisdiction over allegations of unfair labor practices.  *See* D.C. Code §§ 1-605.02(3);

-617.04(b)(1).  Thus, the District of Columbia Court of Appeals has consistently concluded that

the "PERB retains exclusive, original jurisdiction to determine 'whether a particular breach (or

alleged breach) of the duty of fair representation is also an unfair labor practice.'" *Cooper v.*

*AFSCME, Local 1033*, 656 A.2d 1141, 1142-43 (D.C. 1995) (citing *Hawkins v. Hall*, 537 A.2d

571, 575 n.8 (D.C. 1988)).  Moreover, "where PERB has jurisdiction over a claim, a litigant

cannot bypass PERB's jurisdiction by bringing the same action as a common law claim." *Id.* at

1144.  As a result, the District of Columbia courts have rejected plaintiffs' efforts to avoid

PERB's exclusive jurisdiction by resorting to artful pleading.  *See Thompson*, 593 A.2d at 635

(CMPA precludes tort claims arising out of disputes with plaintiff's supervisor relating to

personnel ratings, grievances, and adverse actions); *Wilson v. District of Columbia*, 608 A.2d

161, 161 (D.C. 1992) (CMPA precludes action alleging breach of collective bargaining

agreement); *Board of Trustees, University of the District of Columbia v. Myers*, 652 A.2d 642,

646 (D.C. 1995) (allegations that union refused to investigate or pursue arbitration of grievances

must be brought before the PERB).  Indeed, CMPA preemption is so extensive that even if a

"substantial question exist[s] as to whether a claim . . . [falls] within the ambit of the CMPA, [a

plaintiff is] still required in the first instance to invoke the CMPA's . . . procedure" because

"[t]he determination whether the OEA has jurisdiction is 'quintessentially a decision for the OEA

to make in the first instance.'"  *White v. District of Columbia*, 852 A.2d 922, 925-26 (D.C. 2004)

(quoting *Armstead v. District of Columbia*, 810 A.2d 398 (D.C. 2002)).

     Plaintiffs respond to Defendants' arguments regarding CMPA preemption by asserting

that "where a federal claim is based upon a basic constitutional violation, this 'preemption' does

not apply.  The District of Columbia Comprehensive Merit Personnel Act does not present an

obstacle to Plaintiffs' constitutional causes of action in this case or to this Court."  *See, e.g.*, Pls'

Opp'n to AFGE MTD at 5.  In support of this assertion, Plaintiffs cite to *Trollinger v. Tyson*

*Foods, Inc.*, 370 F.3d 602 (6th Cir. 2004), in which the Sixth Circuit–addressing the issue of

*Garmon* preemption of state law claims arguably subject to the provisions of the National Labor

Relations Act ("NLRA")–stated that "federal courts may decide labor law questions that emerge

as collateral issues in suits brought under independent federal remedies."  *Id.* at 609 (quoting

*Connell Constr. Co. v. Plumbers & Steamfitters Local Union No. 100*, 421 U.S. 616, 626

(1975)).  Plaintiffs' argument is unavailing, however, even putting aside the fact that

*Trollinger* involves preemption as a result of the NLRA, rather than the CMPA.  As discussed

above, Plaintiffs do not proffer sufficient factual allegations to sustain their due process claim

against the District.  Rather, the factual allegations of the Amended Complaint–which are limited

to asserting that Plaintiffs were improperly terminated or denied workers' compensation–suggest

that Plaintiffs are largely dissatisfied with the outcomes in their cases and not the process each

46

they received.  Such claims fall within the exclusive ambit of the CMPA, and as

*Trollinger* implicitly recognizes, Plaintiffs cannot dress their CMPA claims up in federal garb to

secure federal court jurisdiction.  *See* 470 F.3d at 611 ("a litigant may not 'cast statutory claims'

under the NLRA as violations of RICO, [because] a claim that depends entirely upon the ability

to prosecute and prove a violation of the NLRA would represent nothing more than a NLRA

claim masquerading as a RICO one."  370 F.3d at 611 (citing *Tamburello v. Comm-Tract Corp.*,

67 F.3d 973, 979 (1st Cir. 1995)).

Moreover, Plaintiffs' argument that their constitutional claim prevents CMPA preclusion

of Counts 1 through 3 of their Amended Complaint fails for the more basic reason that, as

discussed in detail above, Plaintiffs do not state a claim pursuant to the Constitution or any other

federal law.  Plaintiffs therefore cannot use a constitutional hook to reel their CMPA-precluded

claims into this Court.  Instead, the Court easily concludes that it lacks jurisdiction over Counts

1, 2, and 3 of the Amended Complaint because those Counts substantively challenge Plaintiffs'

terminations and the denials of their workers' compensation claims or allege that the Labor

Union Defendants violated their duties of fair representation, and thus present claims that fall

within the ambit of the CMPA.

> **E.      Plaintiffs' Prayers for Relief Styled as Counts 5 Through 8**

In addition to the substantive Counts discussed above, Plaintiffs' Amended Complaint

includes four Counts more properly described as prayers for relief than as legal claims.  The

Court addresses each in turn, ultimately concluding that they all fail to state claims for relief.

> **1.      Count 5–Declaratory Judgment Action**

In their declaratory judgment claim, Plaintiffs allege that all Defendants "are engaging in

criminal and civil wrongdoing," and request "declaratory rulings to determine the respective contractual and constitutional rights and obligations of the parties." *Id.* ¶¶ 77-79.  Although the Declaratory Judgment Act allows the Court to "declare the rights and other legal relations of any interested party seeking such declaration," 28 U.S.C. § 2201, it "is not an independent source of federal subject matter jurisdiction," *Schilling v. Rogers*, 363 U.S. 666, 677 (1960) (citing *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671 (1950)).  The Declaratory Judgment Act presupposes "the existence of a judicially remediable right."  *C&E Services, Inc. of Washington v. District of Columbia Water and Sewer Auth.*, 310 F.3d 197, 201-02 (D.C. Cir. 2002) (quoting *Schilling*, 363 U.S. at 677).  Furthermore, to invoke the Declaratory Judgment Act, Plaintiffs must demonstrate that "there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Atlas Air, Inc. v. Air Line Pilots Ass'n, Int'l*, 69 F. Supp. 2d 155, 162 (D.D.C. 1999) (citing *Maryland Casualty Co. v. Pacific Coal & Co.*, 312 U.S. 270, 273 (1941)).

Count 5 of the Amended Complaint does not identify any specific (let alone actual) controversy between the parties.  Furthermore, because Plaintiffs' substantive Counts (1 through 4) fail to state claims for relief, they cannot form the basis for a declaratory judgment.  The Court shall therefore dismiss Count 5 of the Amended Complaint for failure to state a claim.

2.    *Count 6–Request for Injunctive Relief*

In Count 6, Plaintiffs request injunctive relief against all Defendants, asserting that "[w]ithout issuance of an injunctive order and/or a Writ of Mandamus, Defendants will continue to refuse or delay compliance with the law, and will continue to deny and compromise Plaintiffs' rights and interests."  Am. Compl. ¶¶ 80-85.  "According to well-established principles of equity,

a plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief." *eBay, Inc. v. MercExchange L.L.C.*, --- U.S. ---, 126 S. Ct. 1837, 1839 (2006). Thus, Plaintiffs must demonstrate: (1) that they have suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between Plaintiffs and Defendants, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction. *Id.* Count 6 alleges that Plaintiffs are suffering injury as a result of Defendants' alleged failure to maintain and protect a performance-based merit system and Labor-Management relations system. Am. Compl. ¶ 84. However, because these allegations fall directly within the ambit of the CMPA, they are not cognizable by this Court and Plaintiffs fail to allege any other injury–let alone an irreparable one–that could be remedied by this Court. Plaintiffs also do not substantively address the remaining factors applicable to a request for injunctive relief, and the Court concludes that Count 6 fails to state a claim for relief.

### 3. *Count 7–Special Request Relating to Unum Settlement Agreement*

Count 7 is framed as a "special request for judicial notice, injunctive relief, temporary restraining order and pendant jurisdictional ruling over Defendant Unum Provident's failure to comply with the New York settlement agreement already in place, with a request for a criminal referral to the individual Attorneys General who are part of the previous settlement referenced herein." Am. Compl., Count 7. In support of this "special request," Plaintiffs allege that Unum and Genex have breached the RSA and that "[w]ithout issuance of an injunctive order and referral from this court these Defendants will be free to continue to defraud U.S. citizens nationwide." *Id.* ¶¶ 86-90. However, as Unum points out, what Plaintiffs list in the heading of

Count 7 are remedies, not causes of action, and Plaintiffs fail to plead an underlying claim on which those remedies could be based. Unum MTD at 3-4. Moreover, for reasons discussed in great detail above, Plaintiffs' Amended Complaint (and Opposition) fail to allege that Unum has actually violated the RSA, or that Unum is in any way connected with the District's administration of its workers' compensation program. In addition, Unum correctly argues that even if it had violated the RSA, Plaintiffs would lack standing to pursue a claim based on that violation because Plaintiffs do not allege that they are insured under the long-term disability insurance policies contemplated by the RSA. As such, Plaintiffs plead no injury-in-fact stemming from Unum's alleged violation of the RSA and fail to allege a causal connection between Unum's alleged violation of the RSA and Plaintiffs' alleged injuries. The Court therefore concludes that Count 7 must be dismissed for failure to state a claim, and that even if Plaintiffs properly stated a claim, they would lack standing to assert it.

### 4. *Count 8–Restraining Order as Applied to Retaliation*

Finally, in Count 8, Plaintiffs seek a "restraining order as to retaliation," alleging that "Defendants have a history of retaliatory conduct" against whistleblowers, which is prohibited under the Constitution and various federal laws, and asserting that "Plaintiffs anticipate the Defendants or parties affiliated with the Defendants will seek retribution and punish these Plaintiffs for their assistance in this litigation." Am. Compl. ¶¶ 91-100. Count 8 requests equitable relief, and is therefore subject to the same four-factor test discussed above. *See eBay*, 126 S. Ct. 1839. Furthermore, in seeking to obtain prospective injunctive relief, Plaintiffs must show a real and immediate threat of future injury in order to establish a viable case or controversy. *City of Los Angeles v. Lyons*, 461 U.S. 95, 103-04 (1983). Here, Plaintiffs broadly

allege that Defendants have a history of retaliatory conduct, and that they anticipate being punished for their participation in this litigation. Plaintiffs fail, however, to include any factual allegations demonstrating Defendants' "history of retaliatory conduct" or suggesting that any Plaintiff is actually at risk of retributive conduct. As Count 8 therefore does not move beyond the realm of the speculative into the plausible, *see Bell Atl.*, 127 S. Ct. at 1965, the Court concludes that it must be dismissed for failure to state a claim.

F.      *AFGE and Concentra's Motions for Rule 11 Sanctions*

Having resolved that each of Plaintiffs' claims lacks merit and that Plaintiffs' Amended Complaint must therefore be dismissed in its entirety, the Court turns to the motions for sanctions pursuant to Federal Rule of Civil Procedure Rule 11(c) filed by AFGE and Concentra.[29] Rule 11 provides that in presenting to the Court a pleading, written motion, or other paper, an attorney certifies that the pleading or motion "is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needless increase the cost of litigation," that "the claims, defenses, and other legal contentions [therein] are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law," and that "the factual contentions [therein] have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further

---

[29] The Court notes that, in passing in the Conclusion of its Motion to Dismiss, Corvel requests that the Court "award CorVel its attorneys' fees and costs for having to respond to a plainly frivolous and vexatious Complaint and Amended Complaint." *See* Corvel MTD at 9-10. The Court declines to consider Corvel's request because it does not comply with Rule 11(c)(2)'s requirement that a "motion for sanctions must be made separately from any other motion and must describe the specific conduct that allegedly violates Rule 11(b)." *See* Fed. R. Civ. P. 11(c)(2) (the same language was included in Rule 11(c)(1)(A) prior to the December 1, 2007 revisions to the Federal Rules of Civil Procedure).

investigation or discovery." Fed. R. Civ. P. 11(b)(1)-(3).  Where a pleading or motion is filed in violation of the Rule, the court may sanction the signatory attorney appropriately.  Fed. R. Civ. P. 11(c).

The "central purpose of Rule 11 is to deter baseless filings in district court and thus . . . streamline the administration and procedure of the federal courts." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990).  Since the 1993 amendments, the language of Rule 11 indicates that the imposition of sanctions is left to the discretion of the district court judge.  *See Rafferty v. Nynex Corp.*, 60 F.3d 844, 852 n.12 (D.C. Cir. 1995); Fed. R. Civ. P. 11(c) (noting that when the rule has been violated, a court *may* impose an appropriate sanction); *see also* 5A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1336 (2d ed. Supp. 2000) (commenting that the scope of the Advisory Committee's list of factors to consider when deciding whether or not to impose a sanction suggests that "the district court is given the widest possible latitude under the new" version of Rule 11).

At the outset, the Court notes that Plaintiffs' filings in this action are universally deficient; Plaintiffs' Amended Complaint is entirely devoid of merit, and Plaintiffs' Oppositions fail to address the majority of arguments raised by Defendants in their motions to dismiss and provide a dearth of legal support for Plaintiffs' positions.  Moreover, Plaintiffs' largely identical Oppositions ignore the Court's Order requiring Plaintiffs to file individual oppositions to Defendants' motions to dismiss.  The Court certainly does not condone the type of slipshod filings presented in this case, but focuses its attention on the grounds for sanctions raised by AFGE and Concentra in their motions.

1.    *AFGE's Motion for Sanctions*

AFGE moves for sanctions against Plaintiffs' counsel, arguing that he violated Rule 11(b)(2) by filing the Amended Complaint "when he knew that the claims therein are unwarranted under existing law," and violated Rule 11(b)(3) by failing to conduct "a reasonable legal or factual inquiry into the claims raised by Plaintiffs" in the Amended Complaint.  *See* AFGE Sanctions Mot. at 1.  AFGE's two assertions boil down to an argument that Plaintiffs' claims lack legal and factual merit, and that Plaintiffs' counsel was aware of the infirmities in Plaintiffs' claims when he filed the Amended Complaint because of, *inter alia*, the motions to dismiss the original Complaint in this action filed by AFGE and other Defendants.  As AFGE notes, Plaintiffs' Amended Complaint added only a few factual details regarding particular Plaintiffs' disability claims, without addressing the legal failings in the original Complaint noted in the motions to dismiss.

The Court agrees with AFGE that Plaintiffs' Amended Complaint is meritless, and it is true that the Amended Complaint's deficiencies were highlighted in the motions to dismiss the original Complaint.  Nevertheless, there is a difference between meritless and sanctionable filings, and it is not clear that the filing of Plaintiffs' Amended Complaint was entirely unwarranted under existing law.  In particular, AFGE argues that sanctions are appropriate because Plaintiffs claims are clearly precluded by the CMPA.  AFGE Sanctions Mot. at 18-20. AFGE is correct that Counts 1 through 3 of the Amended Complaint are preempted by the CMPA; however, it does not appear that the CMPA preempts Plaintiffs' federal constitutional claim.  *See Bridges*, 84 F.3d at 476-77 (1996); *Crockett*, 293 F. Supp. 2d 63*; Am. Fed. of Gov't Employees, Local 3721*, 2005 WL 1017877, at * 5.  Thus, existing law does not appear to

53

preclude Plaintiffs from filing their constitutional claim in this Court, and asking the Court to exercise supplemental jurisdiction over their remaining claims. To be sure, Plaintiffs do not argue as much in their Opposition to Defendants' Motions for Sanctions, which again focuses primarily upon the entirely irrelevant *Merrick* case. However, giving Plaintiffs' counsel the greatest benefit of the doubt, it is possible that he believed he could invoke this Court's jurisdiction over all of Plaintiffs' claims by virtue of Plaintiffs' constitutional claim. The problem, of course, is that Plaintiffs' constitutional claim (and the other federal law claims) is entirely devoid of merit and therefore cannot withstand a motion to dismiss pursuant to Rule 12(b)(6). Even so, the Court does not find that Plaintiffs' meritless filings rise to the level of sanctionable conduct under Rule 11.

2.    *Concentra's Motion for Sanctions*

Concentra similarly argues that Plaintiff's counsel violated Rule 11(b)(2) and (b)(3) by filing the meritless Amended Complaint in the face of the motions to dismiss the original Complaint. In addition, however, Concentra raises two other arguments for sanctions. First, Concentra argues that Plaintiff's counsel also violated Rule 11(b)(1) by "needlessly increas[ing] the cost of litigation by choosing to rest on conclusory allegations rather than cooperate with counsel for Concentra's efforts to discern the factual and legal basis for his claims." Concentra Sanctions Mot. at 5-7 (describing phone call by Concentra counsel to Plaintiff's counsel). The Court declines to impose sanctions on this basis because Concentra's motion is not supported by an affidavit as to the precise efforts made by Concentra's counsel and Plaintiffs' counsel's response thereto.

Of far graver concern to the Court is Concentra's argument that sanctions are warranted

54

because Plaintiffs' counsel filed an inaccurate or false Return of Service indicating that

Concentra had been personally served with process in this action.  As discussed above, Plaintiffs

attempted to serve Concentra by delivering a copy of the Summons and Complaint to CSC.

Concentra Sanctions Mot. at 2 (citing Concentra MTD at 2).  However, because CSC is not an

authorized registered agent for Concentra in the District of Columbia, on April 5, 2007, CSC

returned service of process to Plaintiffs' attorney.  Concentra MTD at 2, Ex. 1 (6/25/07

Thompson Decl. ¶ 7, Ex. A (4/5/07 Letter from CSC to Plaintiffs' counsel)).  Upon receipt of the

letter from CSC, Plaintiffs' counsel was clearly on notice that Concentra had not been served

with process.  At that point, Plaintiff's counsel should have either investigated why his attempted

service failed, or attempted to validly re-serve Concentra.  Instead, on April 23, 2007, Plaintiffs'

counsel filed a Return of Service with this Court indicating that Concentra was personally served

with the Summons and Complaint on April 3, 2007.  *See* Return of Service, Docket No. [9].

Although Concentra raised the issue of improper service in its motion to dismiss,

Plaintiffs' Opposition does not argue that Concentra was validly served, and thus implicitly

concedes that the Return of Service filed with the Court is inaccurate.  Moreover, Plaintiffs'

Opposition to Concentra's motion for sanctions does not challenge Concentra's argument

regarding the accuracy of the Return of Service filed with the Court.  The Court therefore must

conclude that Plaintiffs' counsel was on notice that CSC was not Concentra's agent for service in

the District of Columbia, but altogether failed to investigate the failure of service or to attempt to

validly re-serve Concentra.  Instead, Plaintiff's counsel knowingly filed a false Return of Service

with the Court indicating that Concentra had been served via CSC, and then opposed Concentra's

motion to dismiss.  Plaintiffs' counsel's filing of the Return of Service, as well as Plaintiffs'

Opposition to Concentra's motion to dismiss violates Rule 11(b)(3)'s requirement that at attorney certify that the factual contentions contained in a filing "have evidentiary support." As such, the Court finds that sanctions are warranted against Plaintiff's counsel pursuant to Rule 11(c)(1). The Court shall therefore grant Concentra's motion for sanctions on those grounds and shall order Plaintiff's counsel to pay Concentra's reasonable attorneys' fees and expenses.[30]

## IV:  CONCLUSION

For the foregoing reasons, the Court shall dismiss this action against Defendants Smith and FOP without prejudice, shall grant the pending motions to dismiss filed by the other Defendants to this action, and shall dismiss this action in its entirety. In addition, the Court shall deny AFGE's motion for sanctions, and shall grant Concentra's motion for sanctions. An appropriate Order accompanies this Memorandum Opinion.

Date:   December 31, 2007

_____            _/s/_____

                                                 COLLEEN KOLLAR-KOTELLY
                                                 United States District Judge

---

[30] The Court notes that, in compliance with Rule 11(c)(2), Concentra served a copy of its motions for sanctions upon Plaintiffs' counsel 21 days before filing it with the Court. *See* Fed. R. Civ. P. 11(c)(2).